UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------X
BENOÎT ROLLAND                              )
                                            )
              Plaintiff,                    )   Civil Action Number: 04 CV 11491 RWZ
                                            )
         v.                                 )   MEMORANDUM IN SUPPORT OF
                                            )   MOTION TO DISMISS UNDER
PETER PRIER & SONS VIOLINS, INC.,           )   RULES 12(b)(2) AND (3) AS TO
SPICCATO FRENCH AMERICAN BOWS,              )   PETER PRIER & SONS VIOLINS,
INC., PETER PAUL PRIER, PAUL STEWART        )   INC. FOR LACK OF PERSONAL
PRIER, and JON HATCH,                       )   JURISDICTION AND IMPROPER
                                            )   VENUE
              Defendants.                   )
---------------------------------------------------------X

This memorandum is in support of the Motion to Dismiss Under Rules 12(b)(2) and (3) as to Defendant Peter Prier & Sons Violins, Inc. ("PPS") for lack of Personal Jurisdiction and Improper Venue.

## I. INTRODUCTION

The present action apparently relates to disputes among the Plaintiff, Benoît Rolland ("Rolland") and Defendants, PPS, Spiccato French American Bows, Inc., Peter Paul Stewart, Paul Stewart Prier and Jon Hatch, over business associations, an alleged "partnership at will" and infringement of certain trademarks. PPS is named as a corporate defendant in this action. PPS has inadequate connection to the Commonwealth of Massachusetts to support the exercise of personal jurisdiction and improper venue.

## II. STATEMENT OF FACTS

The pertinent facts respecting the Motion to Dismiss as to PPS for lack of personal jurisdiction and improper venue (the "Motion") are supported by the following facts:

1.   Jon Hatch ("Jon") is a son-in-law of Peter Paul Prier ("Peter") and the brother-in-law of Paul Stewart Prier ("Paul").

2.     Peter Paul Prier, Inc. ("PPPI") was formed as a Utah corporation and has at all times remained a Utah corporation. At all times relevant, Peter has been the President of PPPI and has operated it on a day to day basis. PPPI has always operated in Salt Lake City, Utah.¶ 4, Paul Declaration. ¶ 4, Jon Declaration. ¶ 3, Peter Declaration.

3.     The name was changed on October 18, 1999 from PPPI to Peter Prier & Sons Violins, Inc. ("PPS"), to reflect the fact that Peter's sons joined him in this business. ¶ 5, Paul Declaration. ¶ 5, Jon Declaration. ¶ 4, Peter Declaration.

4.     PPPI/PPS was created and operated for the purpose of making violins and teaching others to make violins. The name "Violin Making School of America" has been used, as a dba under auspice of PPPI/PPS, to identify the school for teaching the art of making violins. ¶ 7, Paul Declaration. ¶ 7, Jon Declaration. ¶ 7, Peter Declaration.

5.     Mr. Rolland was never a partner in any business involving any of the defendants. ¶s 20,24,43,70,71,73, Paul Declaration. ¶s 8,13,34,61,62,64, Jon Declaration. ¶s 8,20,24,43,49,56,57, Peter Declaration.

6.     All synthetic bow manufacturing and sales since about December, 1997 in Salt Lake City have taken place exclusively under the auspices of SFAB. ¶ 27, Paul Declaration. ¶ 19, Jon Declaration.

7.     Mr. Rolland claimed he personally owned intellectual property in the form of trademarks, trade secrets, and patents. Mr. Rolland licensed or sold, those rights exclusively first to PPPI/PPS and then to SFAB. ¶'s 30-38, 44, 46, Paul Declaration. ¶ 23(z), Paul Supp. Declaration.

8. Peter became aware of Mr. Rolland and his French company, SARL Benoit Rolland ("SBR"), also known as La Socièté Benoit Rolland, in about 1992. ¶ 9, Peter Declaration.

9. At least as early as 1993, PPPI purchased, at wholesale, a number of Spiccato Bows from Mr. Rolland. True copies of representative invoices to PPPI are attached as Exhibit "C," Peter Declaration. ¶ 11, Paul Declaration.

10. PPPI, thereafter, sold the Spiccato bows at retail. True copies of representative retail invoices are attached as Exhibits "D" and "V" and ¶ 12, Peter Declaration.

11. Later, PPPI invested $40,000.00 in SBR and became a shareholder (owner) of an undivided thirteen percent (13%). See Exhibits "E" and "F", Peter Declaration., true copies of documents prepared by Mr. Rolland. ¶ 13, Peter Declaration.

12. Later, when other investors or prospective investors withdrew, PPPI's ownership interest in SBR rose to about 45%. See Exhibit "G," and ¶ 14, Peter Declaration.

13. In 1996 and 1997, Mr. Rolland wanted to close his shop in France and agreed to help establish a shop in Salt Lake City for making synthetic bows. With Mr. Rolland's help, building the Salt Lake City shop started in 1997. In June 1997, Mr. Rolland visited and approved the shop in Salt Lake City and informed his vendors of the transfer of manufacturing to Salt Lake City. The shop in Salt Lake City was finished about mid-July 1997. ¶ 45, Peter Declaration.

14. Manufacturing and marketing of synthetic bows in Salt Lake City started in September 1997 under auspices of PPPI, while Mr. Rolland unexpectedly remained in France. Mr. Rolland stated earlier he would close his shop in France in December 1997, which he did not. ¶ 46, Peter Declaration.

15. Based upon the representations of Mr. Rolland and the making available to first PPPI/PPS and later to SFAB his intellectual property, something on the order of one half million

3

dollars has been expended in the formation and operation of SFAB, with the cooperation, active long term assistance of and non-owner participation by Mr. Rolland for the sole purpose of making synthetic musical bows. Such a large investment would not have been made in an oral at-will partnership nor in the absence of the clear availability of Mr. Rolland's intellectual property. Mr. Rolland declined an invitation to be part owner (shareholder) of SFAB. ¶ 26, Peter Declaration.

16.     The synthetic bow business done in Salt Lake City after about December 4, 1997, when SFAB was formed, has been done by SFAB, and not by PPPI/PPS. All synthetic bow manufacturing and sales since about December, 1997, in Salt Lake City have taken place exclusively under the auspices of SFAB. ¶ 27, Peter Declaration.

17.     Effective on the date SFAB was formed (December 4, 1997), PPS assigned to SFAB all of its rights concerning the synthetic bow, Mr. Rolland and SPICCATO. See Exhibit "U," Peter Declaration. At about that time or shortly thereafter, all synthetic bow manufacturing and marketing has been done in Salt Lake City by SFAB, to the exclusion of PPPI/PPS. ¶ 38, Peter Declaration.

18.     In a proposal made to SFAB by Mr. Babineau of Fish and Richardson on behalf of Mr. Rolland after Mr. Rolland moved to Boston Mr. Rolland acknowledges that SFAB was the successor in interest to PPS as to synthetic bows. See ¶ 2 of Exhibit "BB," Paul Declaration. which states:

> Spiccato French-American Bows, Inc., a corporation existing under the laws of State of Utah with a principal place of business in Salt Lake City, Utah ("SFAB"), successor in interest with respect to the subject matter of this Agreement to Peter Prier & Sons Inc., a corporation existing under the laws of State of Utah with a principal place of business in Salt Lake City, Utah ("PP&S"), and

4

Benoit Rolland, an individual residing at 21 Prescott Street, Charlestown, Massachusetts 02129 ("Rolland"). (Emphasized.)

19. Mr. Rolland, while in Salt Lake City, was a W4 employee of PPS and SFAB. See ¶ 20 and Exhibits "M," "N," and "O," Peter Declaration.

20. In the last 25 years, PPPI/PPS has not transacted any business of any type in the State of Massachusetts including but not limited to the sale of musical bows and violins, with one exception mentioned below. ¶ 23, Peter Declaration.

21. The only sale made by PPPI into Massachusetts was of a SPICCATO bow made in France by Mr. Rolland in 1994, which is not at issue in the above-identified litigation. Exhibit "V" and ¶ 39, Peter Declaration.

22. Upon or shortly after the creation of SFAB in December 1997, based upon Mr. Rolland's promise to close his shop in France, PPPI/PPS discontinued manufacture and sale of synthetic bows. Mr. Rolland does not complain about the manufacturing of synthetic bows by PPPI/PPS between September and December 1997, nor of synthetic bows made by SFAB while he was in Salt Lake City. ¶ 47, Peter Declaration.

23. The website of PPS (prierviolins.com) is passive. ¶ 8, Peter Supp. Declaration.

24. Nothing complained of by Mr. Rolland in the relationship between Mr. Rolland and PPPI/PPS and/or SFAB pertaining to the making and selling of synthetic bows has anything whatsoever to do with the Commonwealth of Massachusetts. The only event touching the Commonwealth of Massachusetts is that Mr. Rolland chose to move here. ¶ 41, Jon Declaration., ¶ 51, Peter Declaration.

## III. ARGUMENT

### A. The Court Lacks Personal Jurisdiction Over Peter

#### 1. Personal Jurisdiction Burden of Proof

In a Fed. R. Civ. P. 12(b)(2) motion, as here, the plaintiff bears the burden of establishing long arm and constitutionally justified jurisdiction over a defendant. *Boit v. Gor-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992).

The plaintiff cannot rest on the pleading but must "adduce evidence of specific facts" showing the defendant has a personal jurisdictional presence in the forum. *Foster-Miller, Inc. v. Babcock & Wilson Canada* 46 F.3d 138, 145 (1st Cir. 1995).

#### 2. The Long Arm Statute

The Massachusetts long arm statute [Mass. Gen. Law 223A § 3] in pertinent part authorizes personal jurisdiction if the person acts as to a cause of action arising from the person:

(a) transacting any business in this commonwealth;

(b) contracting to supply services or things in the commonwealth; or

(c) causing tortious injury by an act or omission in this commonwealth.

PPS has no, directly or by an agent, transacted business in the Commonwealth of Massachusetts or contracted to supply services or things in the Commonwealth sufficient to to satisfy the long arm statute.

#### 3. The U.S. Constitutional Restraints

A defendant may be subjected to jurisdiction in a given forum only if the defendant has

> ...minimum contacts with the forum state so that the exercise of jurisdiction does not offend 'traditional notion of fair play and substantial justice. *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed 95 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed 278 (1940)).

6

The "minimum contacts" standard involves three prongs, i.e. (1) relatedness, (2) personal availment, and (3) reasonableness. *Northern Lights Technology, Inc. v. Northern Lights Club et al.*, 97 F.Supp. 2d 96 (D. Mass 2000).

To establish relatedness the claim must directly arise out of or relate to the defendant's forum-state activities. Id.

Personal availment requires that the defendant's in-state contact must represent a purposeful availment of the conducting of activities in the forum state thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Id.

Reasonableness is assessed on the basis of five gestalt factors, i.e.

> (1) The defendant's burden in appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interested of all interested states in promoting substantive social politics. Id.

In applying the gesalt factors: (1) Defendant PPS would be burdened in appearing in a Court in the Commonwealth of Massachusetts; and (2) the Commonwealth of Massachusetts has little interest in hearing the suit since insufficient business was transacted in the Commonwealth and the Commonwealth was not contracted to supply services by PPS.

### 4. General and Specific Personal Jurisdiction

General jurisdiction exists when litigation is not directly founded on the defendant's forum-based contacts, but the defendant has, nonetheless, engaged in continuous and systematic activity, unrelated to the suit, in the foreign state. *See, United Elec., Radio And Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st. Cir. 1992) (citing *Helicopteros*

*Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 & n.9 (1984)). Clearly, no basis for general jurisdiction over Peter has been alleged by Plaintiff Rolland and none exists.

With respect to specific jurisdiction, the Court of Appeals for the Federal Circuit in <u>Akro Corp. v. Luker</u>, 45 F.3d 1541, 1545-46, 33 U.S.P.Q. 2d 1505, 1508-09 (Fed.Cir.1995), outlined a three prong test for determining if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at the residence of the forum; (2) whether the claim arises or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. The assertion of personal jurisdiction be fair and reasonable under the circumstances thereby not satisfying the third prong of the <u>Akro</u> test. <u>Id.</u>

### 5. This Court Lacks Personal Jurisdiction over Peter Prier & Sons Violins, Inc.

PPS satisfies none of the foregoing criteria mandated for personal jurisdiction in Massachusetts. PPS is a resident of Utah and all of its activities are in Utah. PPS has never done business in Massachusetts, except for one transaction in 1994, or caused tortious injury by an act or omission in that state. All synthetic bow business in Massachusetts and elsewhere has been by SFAB since 1997 under license from the Plaintiff, and not by PPS.

PPPI/PPS was involved in the manufacture and marketing of synthetic bows in Salt Lake City only from September 1997 until December 1997. PPS has not been involved in the synthetic bow business since December 1997 and none of the synthetic bow business pre-December 1997 is at issue in this suit.

PPS is not a partner in any partnership, including the alleged one in which Rolland claims to be a partner. Nothing related to the causes of action asserted in the Complaint happened in Massachusetts, except Mr. Rolland moved there. Rolland has admitted that SFAB is the successor to the Salt Lake City synthetic bow business of PPS.

B. <u>Venue is Improper in Massachusetts</u>

28 U.S.C. § 1391(b) states:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

All of the Defendants in this action reside in the State of Utah. The Commonwealth of Massachusetts is not a judicial district in which a substantial part of events giving rise to this action occurred. The Commonwealth of Massachusetts is not a judicial district in which any of the Defendants can be found since there is another venue, Utah, in which this action may be brought. Clearly, venue is not proper pursuant to 28 U.S.C. § 1391(b).

## IV. CONCLUSION

PPS has done no business in Massachusetts, with the exception of one transaction in 1994, and has caused no tortious injury in Massachusetts. PPS has done no synthetic bow business anywhere since 1997. PPS has no contacts at all with Massachusetts, and, therefore, does not have minimum contacts. Accordingly, there is no relatedness, no personal availments and continuing to involve PPS in litigation in Massachusetts would be unreasonable under the five gestalt factors. There is no general or specific personal jurisdiction over PPS in Massachusetts. The complaint should be dismissed as to PPS because this Court clearly lacks personal jurisdiction over PPS.

The action should also be dismissed under Rule 12(b)(3) because venue is improper under 28 U.S.C. § 1391(b).

If the Court determines, however, that there is personal jurisdiction over Defendant PPS, the action should be transferred to Utah pursuant to 28 U.S.C. § 1404 because venue is proper in Utah, for the convenience of the parties and witnesses and interests of justice support such a transfer.

Dated: July 30, 2004

Respectfully Submitted,
PETER PRIER & SONS VIOLINS, INC., et al.
By their attorneys,

John L. DuPré (BBO #549659)
Mary K. Murray (BBO #654194)
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, MA 01742-9133
Telephone: (617)341-0036
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on July 30, 2004.

Mary K. Murray

@PFDesktop\::ODMA/MHODMA/HBSR05;iManage;490216;1