UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
-----------------------------------------------X
BENOÎT ROLLAND                              )
                                            )
              Plaintiff,                    )   Civil Action Number: 04 CV 11491 RWZ
                                            )
       v.                                   )   MEMORANDUM IN SUPPORT OF
                                            )   MOTION TO DISMISS UNDER
PETER PRIER & SONS VIOLINS, INC.,           )   RULES 12(b)(2) AND (3) AS TO
SPICCATO FRENCH AMERICAN BOWS,              )   SPICCATO FRENCH AMERICAN
INC., PETER PAUL PRIER, PAUL STEWART        )   BOWS, INC. FOR LACK OF
PRIER, and JON HATCH,                       )   PERSONAL JURISDICTION AND
                                            )   IMPROPER VENUE
              Defendants.                   )
-----------------------------------------------X
```

This memorandum is in support of the Motion to Dismiss Under Rules 12(b)(2) and (3) as to Defendant Spiccato French American Bows, Inc. ("SFAB") for lack of Personal Jurisdiction and Improper Venue.

## I. INTRODUCTION

The present action apparently relates to disputes among the Plaintiff, Benoît Rolland ("Rolland") and Defendants, Peter Prier & Sons Violins, Inc., SFAB, Peter Paul Prier, Paul Stewart Prier and Jon Hatch, over business associations, an alleged "partnership at will" and infringement of certain trademarks. SFAB is named as a corporate defendant in this action. SFAB has inadequate connection to the Commonwealth of Massachusetts to support the exercise of personal jurisdiction and improper venue.

## II. STATEMENT OF FACTS

The following facts are pertinent to both the present Motion of SPICCATO French American Bows, Inc. ("SFAB") to Dismiss for Lack of Personal Jurisdiction and Improper Venue (the "Motion") and the later to be filed Motion of SFAB for Summary Judgement are supported by the following facts.

1.   Jon Hatch ("Jon") is a son-in-law of Peter Paul Prier ("Peter") and the brother-in-law of Paul Stewart Prier ("Paul").

2.   Peter Paul Prier, Inc. ("PPPI") was formed as a Utah corporation and has at all times remained a Utah corporation. At all times relevant, Peter has been the President of PPPI and has operated it on a day to day basis. PPPI has always operated in Salt Lake City, Utah. ¶ 4, Paul Declaration. ¶ 4, Jon Declaration. ¶ 3, Peter Declaration.

3.   The name was changed on October 18, 1999 from PPPI to Peter Prier & Sons Violins, Inc. (PPS), to reflect the fact that Peter's sons joined him in this business. ¶ 5, Paul Declaration. ¶ 5, Jon Declaration. ¶ 4, Peter Declaration.

4.   PPPI/PPS was created and operated for the purpose of making violins and teaching others to make violins. The name "Violin Making School of America" has been used, as a dba under auspice of PPPI/PPS, to identify the school for teaching the art of making violins. ¶ 7, Paul Declaration. ¶ 7, Jon Declaration. ¶ 7, Peter Declaration.

5.   Peter became aware of Mr. Rolland and his French company, SARL Benoit Rolland (SBR), also known as La Sociète Benoit Rolland, in about 1992. ¶ 9, Peter Declaration.

6.   At least as early as 1993, PPPI purchased, at wholesale, a number of Spiccato Bows from Mr. Rolland. True copies of representative invoices to PPPI are attached as Exhibit "C," Peter Declaration. ¶ 11, Paul Declaration.

7.   PPPI, thereafter, sold the Spiccato bows at retail. True copies of representative retail invoices are attached as Exhibits "D" and "V" and ¶ 12, Peter Declaration.

8.   Later, PPPI invested $40,000.00 in SBR and became a shareholder (owner) of an undivided thirteen percent (13%). See Exhibits "E" and "F", Peter Declaration., true copies of documents prepared by Mr. Rolland. ¶ 13, Peter Declaration.

9. Later, when other investors or prospective investors withdrew, PPPI's ownership interest in SBR rose to about 45%. See Exhibit "G" and ¶ 14, Peter Declaration.

10. PPPI received authorization and approval of Mr. Rolland to start, and in fact, started production of SPICCATO bows in Salt Lake City factory about mid-year 1997. ¶ 14(p), Peter Supp. Declaration.

11. In 1996 and 1997, Mr. Rolland wanted to close his shop in France and agreed to help establish a shop in Salt Lake City for making synthetic bows. With Mr. Rolland's help, building the Salt Lake City shop started in 1997. In June 1997, Mr. Rolland visited and approved the shop in Salt Lake City and informed his vendors of the transfer of manufacturing to Salt Lake City. The shop in Salt Lake City was finished about mid-July 1997. ¶ 45, Peter Declaration.

12. Manufacturing and marketing of synthetic bows in Salt Lake City started in September 1997 under auspices of PPPI, while Mr. Rolland unexpectedly remained in France. Mr. Rolland stated earlier that he would close his shop in France in December 1997, which he did not. ¶ 46, Peter Declaration.

13. SFAB is a Utah corporation, formed in December 1997, and at all times has operated in Utah. Exhibit "K," Peter Declaration.

14. Upon or shortly after the creation of SFAB in December 1997, based upon Mr. Rolland's promise to close his shop in France, PPPI/PPS discontinued manufacture and sale of synthetic bows. Mr. Rolland does not complain about the manufacturing of synthetic bows by PPPI/PPS between September and December 1997, nor of synthetic bows made by SFAB while he was in Salt Lake City. ¶ 47, Peter Declaration.

15. The synthetic bow business done in Salt Lake City after about December 4, 1997, when SFAB was formed, has been done by SFAB, and not by PPPI/PPS. All synthetic bow

3

manufacturing and sales since about December, 1997, in Salt Lake City have taken place exclusively under the auspices of SFAB. ¶ 27, Peter Declaration.

16. Effective on the date SFAB was formed (December 4, 1997), PPS assigned to SFAB all of its rights concerning the synthetic bow, Mr. Rolland and SPICCATO. Exhibit "U," Peter Declaration. At about that time or shortly thereafter, all synthetic bow manufacturing and marketing has been done in Salt Lake City by SFAB, to the exclusion of PPPI/PPS. ¶ 38, Peter Declaration.

17. In a proposal made to SFAB by Mr. Babineau of Fish and Richardson on behalf of Mr. Rolland after Mr. Rolland moved to Boston Mr. Rolland acknowledges that SFAB was the successor in interest to PPS as to synthetic bows. See ¶ 2 of Exhibit "BB," Paul Declaration. which states:

> Spiccato French-American Bows, Inc., a corporation existing under the laws of State of Utah with a principal place of business in Salt Lake City, Utah ("SFAB"), successor in interest with respect to the subject matter of this Agreement to Peter Prier & Sons Inc., a corporation existing under the laws of State of Utah with a principal place of business in Salt Lake City, Utah ("PP&S"), and Benoit Rolland, an individual residing at 21 Prescott Street, Charlestown, Massachusetts 02129 ("Rolland"). (Emphasized.)

See also Exhibit "V," Peter Declaration.

18. Mr. Rolland was never a partner in any business involving any of the defendants.¶s 20,24,43,70,71,73, Paul Declaration. ¶s 8,13,34,61,62,64, Jon Declaration. ¶s 8,20,24,43,49,56,57, Peter Declaration.

19. Mr. Rolland, while in Salt Lake City, was a W4 employee of PPS and SFAB. ¶ 20 and Exhibits "M," "N," and "O," Peter Declaration.

4

20. Mr. Rolland claimed he personally owned intellectual property in the form of trademarks, trade secrets, and patents. Mr. Rolland licensed or sold, those rights exclusively first to PPPI/PPS and then to SFAB as to synthetic bows. ¶'s 30-38, 44, 46, Paul Declaration. ¶ 23(z), Paul Supp. Declaration.

21. Based upon the representations of Mr. Rolland and the making available to first PPPI/PPS and later to SFAB his intellectual property, something on the order of one half million dollars has been expended in the formation and operation of SFAB, with the cooperation, active long term assistance of and non-owner participation by Mr. Rolland for the sole purpose of making synthetic musical bows. Such a large investment would not have been made in an oral at-will partnership nor in the absence of the clear availability of Mr. Rolland's intellectual property. Mr. Rolland declined an invitation to be part owner (shareholder) of SFAB. ¶ 26, Peter Declaration.

32. Because Mr. Rolland is known in the art of bow making, there came a time when Mr. Rolland decided his name should be on all SPICCATO bows and on advertising concerning SPICCATO bows. ¶ 33 and Exhibit "R," Peter Declaration.

33. The initial and continuing usage of the marks SPICCATO, B. Rolland and Benoit Rolland on the synthetic bows and on related literature, was at Mr. Rolland's insistence. ¶ 35 and Exhibit "S," Peter Declaration.

34. Mr. Rolland's image and curriculum vitae were removed from the website "spiccato.com" before this suit was filed and the domain names comprising Mr. Rolland's name have been relinquished to make the dispute smaller. Exhibit "AA" and ¶ 14(bj), Peter Supp. Declaration.

35. In the past all uses of SPICCATO, B. Rolland, Benoit Rolland, and Mr. Rolland's countenance on synthetic bows, advertising, and on web pages were not just with his approval, but due to his insistence. To reduce the size of this dispute all reference to Mr. Rolland has been deleted from all web pages under the control of any defendant. Progress is being made and will soon be completed on deleting his name from newly manufactured synthetic bows made in Salt Lake City. ¶ 16, Peter Supp. Declaration.

36. Business venture regarding synthetic bows involving Mr. Rolland was not one where Mr. Rolland had ownership in SFAB, but he was only a proclaimed licensor of intellectual property (I.P.), first exclusively with PPPI/PPS until December 1997 and thereafter exclusively with SFAB. ¶ 14(g), Peter Supp. Declaration.

37. Only SFAB sells within the scope of the I.P. license from Mr. Rolland, which is immunity from infringements. None of the defendants make false and misleading statements in any state. All synthetic bow business done is in Salt Lake City with consent from Mr. Rolland. ¶ 14(h), Peter Supp. Declaration.

38. In early October 1999, Mr. Rolland began his W4 employment with: a) SFAB in the manufacture of synthetic bows; and b) PPS in teaching at the bow making school. Mr. Rolland's teaching commitment was oral, but was for five years. ¶ 49, Peter Declaration. ¶ 20 and Exhibits "K" and "L," Paul Declaration.

39. The website (www.spiccato.com) is passive. There remains no reference to Mr. Rolland on www.spiccato.com. Exhibit "HH" and ¶ 10, Paul Supp. Declaration.

40. Nothing legitimately complained of by Mr. Rolland in the relationship between Mr. Rolland and PPPI/PPS and/or SFAB pertaining to the making and selling of synthetic bows has anything whatsoever to do with the State of Massachusetts. The only event touching

6

Massachusetts is that Mr. Rolland chose to move there. ¶ 41, Jon Declaration., ¶ 51, Peter Declaration.

41.     In a letter, Exhibit "DD," Paul Declaration. to Mr. Babineau of Fish & Richardson counsel for Mr. Rolland, SFAB made it clear that settlement communications sent into Massachusetts concerning the Utah dispute would not create a basis for jurisdiction or venue in Massachusetts. Specifically, see the last paragraph which states:

> This letter is written not to create a basis for jurisdiction and/or venue in Massachusetts but only as a response to your letter of 3 May 2002.

42.     Attempting to settle a Utah based dispute by use of counsel communicating a settlement proposal is not like negotiating a business contract. There is no other way to endeavor to settle the Utah dispute between SFAB and Mr. Rolland, where Mr. Rolland has relocated to Massachusetts. ¶ 65, Paul Declaration.

43.     The intermittent synthetic bow business done in Massachusetts by SFAB since Mr. Rolland left Utah has not been continuous, symmetric, or substantial. ¶ 66, Paul Declaration.

44.     Further, the synthetic bow business done in Massachusetts by SFAB since Mr. Rolland left Utah does not correlate to any claim asserted by Mr. Rolland in the Complaint. ¶ 67, Paul Declaration.

### III. ARGUMENT

#### A. The Court Lacks Personal Jurisdiction Over SFAB

##### 1. Personal Jurisdiction Burden of Proof

In a Fed. R. Civ. P. 12(b)(2) motion, as here, the plaintiff bears the burden of establishing long arm and constitutionally justified jurisdiction over a defendant. *Boit v. Gor-Tec Products, Inc.*, 967 F.2d 671 (1st Cir. 1992).

7

The plaintiff cannot rest on the pleading but must "adduce evidence of specific facts" showing the defendant has a personal jurisdictional presence in the forum. *Foster-Miller, Inc. v. Babcock & Wilson Canada* 46 F.3d 138, 145 (1st Cir. 1995).

### 2. Massachusetts Long Arm Statute

The Massachusetts long arm statute [Mass. Gen. Law 223A § 3], in pertinent part, authorizes personal jurisdiction if the person acts as to <u>a cause of action</u> arising from the person:

> (a) transacting any business in the commonwealth;
>
> (b) contracting to supply services or things in the commonwealth; or
>
> (c) causing tortious injury by an act or omission in the commonwealth.

(Emphasized.)

SFAB has intermittently transacted business in the Commonwealth of Massachusetts, contracted to supply services or other things in the Commonwealth of Massachusetts, but such does not relate to bona fide claims of the Plaintiff.

### 3. The U.S. Constitutional Restraints

A defendant may be subjected to jurisdiction in a given forum only if the defendant has

> ...minimum contacts with the forum state so that the exercise of jurisdiction does not offend 'traditional notion of fair play and substantial justice. *International Shoe v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed 95 (1945) (quoting *Miliken v. Meyer*, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed 278 (1940)).

The "minimum contacts" standard involves three prongs, i.e. (1) relatedness, (2) personal availment, and (3) reasonableness. *Northern Lights Technology, Inc. v. Northern Lights Club et al.*, 97 F.Supp. 2d 96 (D. Mass. 2000).

To establish relatedness the claim must directly arise out of or relate to the defendant's forum-state activities. *Id.*

8

Personal availment requires that the defendant's in-state contact must represent a purposeful availment of the conducting of activities in the forum state thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. *Id.*

Reasonableness is assessed on the basis of five gestalt factors, i.e.

> (1) The defendant's burden in appearing in the court; (2) the forum state's interest in hearing the suit; (3) the plaintiff's convenience and interest in effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interested of all interested states in promoting substantive social politics. *Id.*

SFAB has transacted a limited amount of business in the Commonwealth under license rights from the Plaintiff, but has not contracted to supply services, or cause tortuous injury in the Commonwealth of Massachusetts. Therefore, SFAB does not have minimum contacts with the Commonwealth related to a bona fide claim and it would be unreasonable and improper under the United States Constitution to exercise personal jurisdiction over SFAB. In applying the gestalt factors: (1) Defendant SFAB would be burdened in appearing in a Court in the Commonwealth of Massachusetts; and (2) the Commonwealth of Massachusetts has little interest in hearing this action since no actionable business was transacted in the Commonwealth and the Commonwealth was not contracted to supply services by SFAB.

### 4. General and Specific Personal Jurisdiction

General jurisdiction exists when litigation is not directly founded on the defendant's forum-based contacts, but the defendant has, nonetheless, engaged in continuous and systematic activity, unrelated to the suit, in the foreign state. *See, United Elec., Radio And Mach. Workers of America v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st. Cir. 1992) (citing *Helicopteros*

9

*Nacionales De Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 & n.9 (1984)). Clearly, no basis for general jurisdiction over SFAB has been alleged by Plaintiff Rolland and none exists.

With respect to specific jurisdiction, the Court of Appeals for the Federal Circuit in *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46, 33 U.S.P.Q. 2d 1505, 1508-09 (Fed.Cir.1995), outlined a three prong test for determining if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at the residence of the forum; (2) whether the claim arises or is related to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair.

The only contact SFAB has had with the Commonwealth of Massachusetts was a few intermittent sales of synthetic bows under license, granted by purported intellectual property rights owner, Rolland. A license is immunity from infringement of intellectual property rights. This limited contact with the Commonwealth of Massachusetts does not satisfy the second prong of the *Akro* test as it does not involve a causive action arising directly or by an agent relating to SFAB's activities in the Commonwealth of Massachusetts, the forum state in this action. *Id.* In addition, the Defendant SFAB never purposefully directed personal activities at a residence in the Commonwealth of Massachusetts nor would the assertion of personal jurisdiction be fair and reasonable under the circumstances thereby not satisfying the first and third prongs of the Akro test. *Id.*

<u>5. The Website of SFAB is an Insufficient Basis for Personal Jurisdiction</u>

SFAB operates a website at www.spiccato.com. This website should be considered to be closer to passive for purposes of jurisdiction in Massachusetts. Unlike *Hasbro, Inc. v. Clue Computing*, 994 F.Supp. 34 (D. Mass. 1997), where the contact with Massachusetts by the website was directly related to the infringing CLUE mark, the website of SFAB does not relate to

the claims of plaintiff, i.e., an alleged partnership at will and infringement of the alleged BENOIT ROLLAND trademark. Thus, even if it were determined that the website of SFAB has a contact with Massachusetts, the nature of the contact has insufficient relation to the claims asserted in this case to give rise to jurisdiction over SFAB.

The website of SFAB is closer to the sites in *Rosenburg v. PK Graphics*, 71 U.S.P.Q.2d 1223 (S.D.N.Y. 2004) and *NeoMedia Technologies, Inc. v. AirClue, Inc.*, 71 U.S.P.Q.2d 1186 (N.P. Ill. 2004), where the existence of a website presence did not give rise to jurisdiction in a state where there was not otherwise sufficient connection with the defendant.

6. This Court Lacks Personal Jurisdiction over SPICCATO French American Bows, Inc.

SFAB does not satisfy the criteria mandated for personal jurisdiction in Massachusetts. SFAB is a resident of Utah and all of its activities are in Utah. SFAB has conducted intermittent business in Massachusetts under a license agreement with Rolland. SFAB never purposefully directed personal activities at a resident in the Commonwealth of Massachusetts.

The website of SFAB is insufficient to support a claim of jurisdiction over SFAB.

SFAB is not a partner in any partnership, including the alleged one in which Rolland claims to be a partner. Nothing related to the causes of action asserted in the Complaint happened in Massachusetts, except Rolland moved there. Rolland has admitted that SFAB is the successor to the Salt Lake City synthetic bow business of SFAB.

B. Venue is Improper in Massachusetts

28 U.S.C. § 1391(b) states:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving

11

>rise to the claim occurred, or a substantial part of property that is
>the subject of the action is situated, or (3) a judicial district in
>which any defendant may be found, if there is no district in which
>the action may otherwise be brought.

All of the Defendants in this action reside in the State of Utah. The Commonwealth of Massachusetts is not a judicial district in which a substantial part of events giving rise to this action occurred. The Commonwealth of Massachusetts is not a judicial district in which any of the Defendants can be found since there is another venue, Utah, in which this action may be brought. Clearly, venue is not proper pursuant to 28 U.S.C. § 1391(b).

## IV. CONCLUSION

SFAB does not do systematic business in Massachusetts. SFAB does not have sufficient contacts with Massachusetts, and, therefore, does not have minimum contacts. Accordingly, there is not relatedness, no personal availments and continuing to involve SFAB in litigation in Massachusetts would be unreasonable under the five gestalt factors. There is no general or specific personal jurisdiction over SFAB in Massachusetts. The complaint should be dismissed as to SFAB because this Court clearly lacks personal jurisdiction over SFAB.

The action should also be dismissed under Rule 12(b)(3) because venue is improper under 28 U.S.C. § 1391(b).

If the Court determines, however, that there is personal jurisdiction over Defendant SFAB, the action should be transferred to Utah pursuant to 28 U.S.C. § 1404 because venue is proper in Utah, and the convenience of the parties and witnesses and interests of justice support such a transfer.

Dated: July 30, 2004

Respectfully Submitted,
PETER PRIER & SONS VIOLINS, INC., et al.
By their attorneys,

John L. DuPré (BBO #549659)
Mary K. Murray (BBO #654194)
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, MA 01742-9133
Telephone: (617)341-0036
Attorneys for Defendants

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on July 30, 2004.

Mary K. Murray

@PFDesktop\::ODMA/MHODMA/HBSR05;iManage;490317;1

13