# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOIT ROLLAND,<br><br>    Plaintiff,<br><br>vs.<br><br>PETER PRIER & SONS VIOLINS, INC., SPICCATO FRENCH AMERICAN BOWS, INC., PETER PAUL PRIER, PAUL STEWART PRIER, and JON HATCH,<br><br>    Defendants. | SUPPLEMENTAL DECLARATION OF PETER PAUL PRIER<br><br><br>Civil No. 04CV11491 RWZ |

I, Peter Paul Prier, declare as follows:

1. I reaffirm the truthfulness of my initial declaration in this matter.

2. Peter Prier and Sons, Inc. (PPS), formerly Peter Paul Prier, Inc. (PPPI) is in all ways independently operated. Spiccato French American Bows, Inc. (SFAB) operates in all ways independent. Since its incorporation in December 1997, at that time, PPPI/PPS discontinued making and selling synthetic bows.

3. I am not and have never been involved in the manufacturing, marketing or advertising of synthetic bows by SFAB. I do not control the quality of synthetic bows produced by SFAB and never have, although I know the quality of these bows has never been higher going all the way back to the ones made by Mr. Rolland in France.

4. I have personally performed no service, solicited no business, sold no goods and engaged in no act in Massachusetts or elsewhere for any partnership, including but not limited to one in which Mr. Rolland was a partner.

1

5.      On behalf of PPPI/PPS, I have performed no service, solicited no business, sold no goods and engaged in no act in Massachusetts since 1994.

6.      On behalf of SFAB, I have performed no serviced, solicited no business, sold no goods and engaged in no act in Massachusetts since 1994.

7.      The technology and customers of SBR, also known as La Sociéte Benoit Rolland, and and Mr. Rolland's technical assistance were purchased and paid for, not licensed. See Exhibit "P," Peter Declaration.

8.      The websites of PPS (prierviolins.com) and SFAB (spiccato.com) are entirely passive. The earlier limited references to Mr. Rolland on prierviolins.com concerned only the bow making school, where Mr. Rolland agreed to work for five years, were truthful and were approved by Mr. Rolland. Shortly after receiving Mr. Rolland's Complaint, all references to Mr. Rolland have been deleted from the webpage of prierviolins.com

9.      If there was somehow an at will partnership, which there was not, I am informed it would have been a Utah partnership, governed by Utah law with all of the activities having occurred in Utah.

10.     Attached as Exhibit "W" is a document obtained from the French Trademark Office showing ownership of the French Registration of SPICCATO as vested in SBR, not Mr. Rolland.

11.     Attached as Exhibit "X" is a copy of a letter from Mr. Rolland disparaging SPICCATO bows from Salt Lake City, contrary, I am informed, to Mr. Rolland's duty of good faith and fair dealing to SFAB, from which Mr. Rolland claims royalties.

12.     Attached Exhibit "Y" demonstrates that Mr. Rolland initially intended to own 50% of what became SFAB, but decided not to be an owner.

13.     Attached Exhibit "Z" shows clearly that SBR was not very profitable, if profitable at all.

2

14. In regard to the Complaint, I declare as follows:

| | Complaint Paragraph | Declaration |
|---|---|---|
| (a) | 2 | Mr. Rolland is not owner of French Reg. SPICCATO. See Exhibit "W." Mr. Rolland has not used personally in the United States the mark SPICCATO and, I am informed, has no common law rights in SPICCATO for synthetic bows. Use in the United States has been exclusively by PPPI/PPS and SFAB. |
| (b) | 4 | Independent of whether Mr. Rolland had the right to do so, he consented to all uses by PPPI/PPS and SFAB of SPICCATO, Benoit Rolland, B. Rolland and Mr. Rolland's image. The first notice was the complaint. |
| (c) | 4, 6, 7 | No false statements or misleading use by any defendant ever occurred. None of the defendants compete with the plaintiff because Mr. Rolland does not make and sell synthetic bows. |
| (d) | 8 | Each individual defendant has always acted within the scope of his authority as an agent and representative of PPPI/PPS and/or SFAB. Benoit Rolland and B. Rolland domain registrations were not used in commerce and were cancelled shortly after the first notice (complaint). See Exhibit "AA". |
| (e) | 9 | There has been no commingling of assets, liabilities or business by PPPI/PPS and SFAB. |
| (f) | 10 | There has never been such a partnership at will. |

3

(g) 11 Business venture regarding synthetic bows involving Mr. Rolland was not one where Mr. Rolland had an ownership, but he was only a proclaimed licensor of intellectual property (I.P.), first exclusively with PPPI/PPS until December 1997 and thereafter exclusively with SFAB.

(h) 12 If a partnership existed it was in Utah. Defendants individually and collectively don't have significant contacts with Massachusetts and defendants collectively do not sell into Massachusetts. Only SFAB sells within the scope of the IP license from Mr. Rolland, which I am advised, is immunity from infringements. None of the defendants make false and misleading statements in any state. All synthetic bows business done is with consent from Mr. Rolland. Only SFAB promotes synthetic bows. There is no partnership to be dissolved.

(i) 13 There has been no profit by SFAB. No royalties are due until $40,000 has accrued and SFAB is profitable. Thereafter, Mr. Rolland is to receive 6% of invoice.

(j) 27 Good will associated with synthetic bows, originated with SBR, not Mr. Rolland. SPICCATO Reg. in France not to Benoit Rolland, but to SBR.

(k) 28 The statement "incredibly commercial success" is false. The SPICCATO bow is expected to become commercially profitable. It was not so with SBR in France and to date SFAB is still not yet profitable. The lack of success of SBR is documented in Exhibit "BB". However, progress is being made, manufacturing issues have been overcome, and commercial profitability for SFAB is expected within the next two years.

(l) 31 The ownership investment was by PPPI, not Peter Paul Prier,

4

although for purposes of this suit it doesn't seem to matter.

(m)  34, 39, 42, 56, 57    The parties always required a written agreement to define compensation to Mr. Rolland. Exchanges of proposals (offers) were non-binding. When the factory in Salt Lake City began production in mid-1997, PPPI understood no royalties would be paid on the first $40,000 royalties due, no royalties would be due until SPICCATO production in Salt Lake City became profitable and thereafter six percent (6%) of net invoice would be paid.

No royalties are due because the Salt Lake City SPICCATO production, while approaching profitability, is not yet there and once it is profitable the first $40,000 is exempt.

(n)  35    These recitations, to the extent true, were non-binding negotiations because the parties required a written contract.

(o)  36    The incorporation of SFAB in December 1997 was a public act not a secret act. It was not concealed from Mr. Rolland. It was done in anticipation of his promised arrival in the United States upon the closing of his shop in France at the end of 1997. Mr. Rolland delayed the closing of his shop until late summer or early fall 1999, leaving SFAB without his assistance for nearly two years.

(p)  37    PPPI received authorization and approval of Mr. Rolland to start, and in fact, started production of SPICCATO bows in Salt Lake City factory about mid-year 1997. There are no trade secrets in the formula since reverse engineer spectralysis reveals the composition. The method used by Mr. Rolland was a conventional, very old compression (squish), non-pressure, clamshell, non-heat form of molding, which does not involve

5

trade secrets and turned out to be a poor way of producing bows of high quality. SFAB has abandoned the squish molding approach and now uses a different pressurized injection molding technology. Also, SFAB uses a different resin formula to produce synthetic bows of higher quality than those made by Mr. Rolland in France.

(q)   38, 40   Mr. Rolland closed his shop in France because it was either insolvent or not sufficiently profitable. See Exhibit "BB."

(r)   41   Mr. Rolland was late for the start of the bow making school in the fall of 1999, causing PPPI/PPS to lose several students earlier enrolled in the first year of the bow making school.

(s)   43   The SPICCATO Business Plan was only a projection. Mr. Rolland had earlier projections of profitability for the SPICCATO bow, which turned out to be erroneous.

(z)   44   Mr. Rolland admits granting permission to use name, likeness, ARPÉGE and SPICCATO. He also admits the physical squish (compression) molds were his from France. There was no notice of default until complaint. No opportunity was given to cure any alleged default.

Neither PPPI/PPS and SFAB ever agreed that Mr. Rolland would have sole control over quality. Instead quality control by either Paul or Mr. Rolland was implemented. See Exhibit "CC."

As a practical matter, Mr. Rolland was absent from Salt Lake City and the SPICCATO factory and did not and could not have supervised quality from mid-1997 until October 1999, from May 2000 until October 2000 and not at all after May 2001. So, the idea of Mr. Rolland providing personal oversight and quality control over synthetic bows produced in Salt

6

|      |    |   |
|------|----|---|
|      |    | Lake City is an absolute fiction. So, likewise, is the assertion that his SPICCATO bows were flawless and always of high quality an absolute fairy tale. |
| (aa) | 45 | Mr. Rolland insisted that certain endorsements be used. He does not own or have the right to control endorsements. |
| (bb) | 46 | Assistance was provided for Mr. Rolland to obtain a suitable apartment and to pursue a visa using an INS attorney. Mr. Rolland had full access to records of SFAB. |
| (ac) | 47 | PPPI/PPS made no obligation to allow Mr. Rolland to control the manner the bow making school was run. It was not his school. He was a valued teacher, but a W4 employee. PPPI/PPS at all times has run the school in a thoroughly professional and business-like manner. |
| (ad) | 48 | There were no problems of any consequence to fix in the bow making school except Mr. Rolland's tardiness. Mr. Rolland was given no promises of any material change in the bow making school. Mr. Rolland was late for the commencement of both the first and second school years, causing PPS to lose previously registered students on both occasions. |

Negotiations were between Mr. Rolland and SFAB and were limited to resolving the synthetic bow compensation issue. Mr. Rolland was not an owner of the bow making school so there was nothing to buy out. Mr. Rolland simply terminated as a W4 employee three years prior to the end of his oral promise to teach five years at the PPS bow making school.

| | | |
|---|---|---|
| (ae) | 49 | Mr. Rolland had access to SFAB business records from fall 1999 until he moved to Boston in the spring of 2001. So, the claim of entitlement to an accounting is more feigned than real. |
| (af) | 51, 57 | Mr. Rolland's assertion that SFAB secretly and under the table filed a U. S. Trademark Application for SPICCATO is false and Mr. Rolland knows it to be false. Mr. Rolland authorized the filing which, by operation of law, I am informed, shows ownership by SFAB. See Exhibit "L" Peter Decl. Further, Mr. Rolland owns no trademark in the United States, as he, in a personal capacity, has never used on synthetic bows the marks he claims he owns. |
| (ag) | 52 | Use by the claimant of a mark is essential to ownership, I am advised. The users have been SBR in France and PPPI/PPS and SFAB in the United States.<br><br>The proposal claimed to be made in May 2001 was from SFAB, not from each of the five defendants, and represented only a proposal, not a binding contract, which Mr. Rolland rejected. |
| (ah) | 54, 55 | "Profits from the venture" is misleading unless venture means SFAB and Mr. Rolland has been told repeatedly that SFAB has not made a profit. |
| (ai) | 56 | This was just an offer to fix the compensation due, which has not been fixed in writing at any time, although the making available of intellectual property is apparent. However, it now appears that Mr. Rolland did not own all of the intellectual property he claimed. |
| (aj) | 57 | No royalties are due. |
| (ak) | 58 | SFAB was not a mere licensee of SPICCATO. SFAB received from |

|      |        |                                                                                                                                                                                                                                                                                                       |
|------|--------|---|
|      |        | Mr. Rolland right to register SPICCATO. Registration can only be done by the owner. See Exhibit "L" Peter Decl. |
| (al) | 59, 60 | Mr. Rolland was given oral accounting sufficient to show lack of profit and no royalty payment due. |
| (am) | 61, 62 | Renewal of the domain names occurred before notice and SFAB's right to use Mr. Rolland's name was continuing in all respects in respect to synthetic bows. |
| (an) | 62, 63 | SFAB has never claimed ownership of Benoit Rolland. Only the ongoing right to use exclusively his name on synthetic bows, as mandated by Mr. Rolland himself. Therefore, SFAB had no reason to oppose, since registration inured to the advantage of SFAB in its uses of Rolland and Benoit Rolland. |
| (ao) | 64     | SFAB stipulates ownership, but such is subject to SFAB exclusive right to use on synthetic bows, as mandated by Benoit Rolland. |
| (ap) | 65     | There has been no quality degeneration. SBR's quality was no better than the initial quality of SFAB. Quality is excellent now. |
| (aq) | 66, 67 | Warpage occurred often in bows made by SBR in France. |
| (ar) | 69     | Since Mr. Rolland does not personally make and sell synthetic bows and never has, there is no and never has been competition. Mr. Rolland has authorized, indeed mandated, use of his name on and in conjunction with SPICCATO bows. There, are not separate undertakings and can be no likelihood of public confusion because there is only one source of SPICCATO bows, i.e. SFAB |
| (as) | 70, 71 | Mr. Rolland has no rights in the mark ARPÉGE nor power to control |

the quality or the design of ARPÉGE bows, although he misrepresented to PPPI/PPS and SFAB that he had such rights and pretended to make these pretended rights available to SFAB. There is no goodwill injury. Mr. Rolland is not the possessor of any goodwill. SFAB is. The assertions in paragraph 70 of the Complaint are inconsistent. The goodwill of ARPÉGE is separate from the goodwill of SPICCATO, as they are different products. The SPICCATO is adjustable and more expensive and the ARPÉGE is not adjustable and less expensive. For Mr. Rolland to say that the claimed defect in the ARPÉGE harms the goodwill of SPICCATO is like saying an alleged defect in a Plymouth automobile detracts from the goodwill of a Mercedes automobile.

(at)   72   The ARPÉGE and SPICCATO bows are excellent products, notwithstanding Mr. Rolland's subjective self-serving comments. Mr. Rolland never personally produced an ARPÉGE bow, to my knowledge.

(au)   73   Mr. Rolland never personally owned the mark SPICCATO because he was not and never has personally been in the synthetic bow business. He never received a veto power as to bow quality nor did he ever monitor, to any material extent, synthetic bows made in Salt Lake City. See Exhibit "BB." The SBR bows from France frequently had flaws and defects. The quality of SPICCATO bows presently exceed the quality of SPICCATO bows made by SBR in France. Mr. Rolland provided no notice with an opportunity to cure the alleged defects. If irreparable injury were really so, why did Mr. Rolland do nothing in 2002 and 2003 (paragraphs 66-68 of the Complaint) and waited until 2004 to file suit? One does not wait for

10

nearly two years to address irreparable harm. There was and is no harm, at all, much less irreparable harm to Mr. Rolland regarding SFAB's SPICCATO mark.

(av) 74  Mr. Rolland has not personally used Benoit Rolland or B. Rolland on synthetic bows in Europe or the United States. Since SBR used these two marks on synthetic bows in France, I believe trademark rights vested in SBR. See Exhibit "W." No conveyance of these trademark rights from SBR to Mr. Rolland was ever approved by the owners (shareholders) of SBR of which PPPI was one, and, therefore, no legal transfer to Mr. Rolland ever occurred. PPPI used these two marks in the United States and Mr. Rolland personally did not. Since use in the United States is a pre- condition to United States trademark registration, it appears that Mr. Rolland obtained the two United States registrations through deception.

(aw) 75  Use of "B. Rolland" and "Paris" by SFAB was at the insistence of Mr. Rolland, who maintains he owned this mark and use by SFAB on synthetic bows was lawful and mandatory.

Mr. Rolland supplied a template with both "B. Rolland" and "Paris" thereon and made the use thereof mandatory on SPICCATO bows, even though he never made his French SPICCATO bows in Paris. See the last page of Exhibit "S."

Mr. Rolland has no reputation in the synthetic bow business as he has never produced a synthetic bow other than through SBR.

(ax) 76  All reference to Benoit Rolland on prierviolins.com has been cancelled from the website.

(ay) 77   There was no passing off. Use of SPICCATO is entirely lawful, as was and is use of Maestro, both falling within the grant given by Mr. Rolland to SFAB, although SBR may have been the owner of Maestro for synthetic bows.

(az) 78   Mr. Rolland has no right to control where or how SFAB advertises its synthetic bows. Mr. Rolland's criticism of <u>Muso</u> lacks justification, but it is irrelevant.

(ba) 80   The alleged general partnership at will is a fiction and the alleged contract by estoppel and reliance is distorted. Mr. Rolland falsely claims himself personally (and not SBR) to have been the owner of trademark rights, trade secret information and to have provided the same to the Salt Lake factory. It is of interest that Mr. Rolland has not sued any partnership per se, but only five of six alleged partners, failing to name himself, an alleged partner, as a Defendant. It is also interesting that Mr. Rolland has not shared the debts of the alleged synthetic bow partnership.

Mr. Rolland falsely asserts personal ownership of trademarks, and know-how, which Mr. Rolland seems to contend were contributed to the phantom partnership by Mr. Rolland as his capital contribution to obtain whatever percent interest in the phantom partnership he claims to have obtained, but asks for a restoration of title to the intellectual property, where the synthetic bow business has debts for which Mr. Rolland would be liable. Mr. Rolland does not explain how his claimed intellectual property is both a capital contribution to obtain an interest in a partnership and the subject matter for a compensatory licensee to SFAB.

(bc) 82   Even though in Paragraph 81 of the Complaint Mr. Rolland claims

no agreement, in Paragraph 82 he asserts breaches have occurred, forcing him to discontinue involvement in the phantom partnership. Mr. Rolland asserts from the phantom partnership somehow profits and royalties are owed to him personally, apparently as an inactive partner, who has failed to share the debts of the alleged synthetic bow partnership.

Mr. Rolland, inferring that he has a right to impose quality standards on SFAB in respect to synthetic bows and in the absence of an agreement, claims SFAB bows have "failed to maintain quality standard" which he never imposed and never supervised (ignoring the facts that quality always had problems in France and got considerably better after Mr. Rolland left SFAB Salt Lake City). Either Paul Stewart Prier or Mr. Rolland could control quality. See Exhibit "CC." Mr. Rolland never did.

Mr. Rolland is well aware of previously authorized and indeed mandated usage of his image and the marks SPICCATO, B. Rolland and Benoit Rolland on synthetic bows and, after inducing SFAB to expend over one-half million dollars at the Salt Lake City factory to make synthetic bows using the SPICCATO, ARPÉGE, B. Rolland, Benoit Rolland and a replica of Mr. Rolland's countenance, falsely claims the phantom partnership (but truthfully SFAB) is "without any present good faith claim of right."

(bd)     83     Mr. Rolland claims his unwillingness to continue to be active in the phantom partnership in Salt Lake City automatically terminated the phantom partnership under the common law or because the phantom partnership (really the corporation SFAB) is slowly becoming profitable

but is not yet so. Mr. Rolland, as a pretended partner, claims he may dissolve the phantom partnership (really the corporation SFAB), without regard to the investment of over $500,000 to create and operate SFAB.

(be) 84   Mr. Rolland claims he is entitled to an equitable accounting from the phantom partnership which has no books and records and has made no sale. Mr. Rolland asks for a distribution of non-existing partnership assets, in a setting where jurisdiction over the phantom partnership has not been invoked nor could it be.

Mr. Rolland falsely claims a commingling of assets among the Defendants, knowing first the phantom partnership has no assets and the two corporate entities operate separately and do not co-mingle assets. Mr. Rolland seems to erroneously say that the Prier family can only have one corporation because having more than one corporation under control of the same family creates a de facto merger.

(bf) 86   Mr. Rolland claims breaches by the phantom partnership. Mr. Rolland claims he is entitled to an equitable accounting and a termination of patent, trademark, know-how licenses, which Mr. Rolland seemingly concedes were earlier granted and presently exist, but where SBR owned the trademarks and know-how.

(bg) 87   Mr. Rolland claims an actual controversy and entitlement to a court order terminating the phantom partnership's right to manufacture under the trademarks, patents and know-how.

(bh) 88   Wrongful use by the phantom partnership of Mr. Rolland's image and the federally registered marks Benoit Rolland and B. Rolland never occurred.

(bi) 89 Mr. Rolland claims use of his likeness, though agreed to earlier, now has become a willful violator of Mr. Rolland' rights, and that licensed right has been forfeited by alleged but unclear false statements about Mr. Rolland and lack of quality control. No such false statement was made, quality control is high and Paul Stewart Prier has authority to and in fact controls quality while Mr. Rolland has failed to do so.

(bj) 90 Mr. Rolland seeks injunctive relief as to further use of Benoit Rolland, B. Rolland and Mr. Rolland's likeness, including website removal of the same, discontinuance of endorsements of the synthetic bows by third parties (which Mr. Rolland does not own) and forfeiture of certain domain name registration. Mr. Rolland's image was removed before the suit and the domain names have been relinquished to make the dispute smaller.

(bk) 93 Mr. Rolland falsely claims all the Defendants' are estopped to deny that they owe Mr. Rolland profits and royalties only because SFAB continued to negotiate for a written contract, but did not succeed. I suppose Mr. Rolland is estopped to deny he owes his share for the debts of the synthetic bow business. Collectively, the Defendants owe Mr. Rolland nothing. SFAB owes nothing until it is profitable.

(bl) 94 Mr. Rolland falsely expands on his contention that all Defendants (the phantom partnership) are estopped to deny that net profits are due him because Peter Paul Prier, many years ago, allegedly orally said he would sign a written offer, but never did, and Mr. Rolland, expecting a written agreement, falsely claims to have acted to his prejudice based upon the alleged oral promise to sign the written offer. PPPI/PPS and SFAB acted to that great prejudice on promises by Mr. Rolland, which were not kept.

(bm) 95 Mr. Rolland claims material breaches of a non-existing contract based on IP he never owned.

(bn) 96 Mr. Rolland alleges the phantom partnership has advertised, offered for sale and sold SPICCATO bows in Massachusetts have a quality below Mr. Rolland's standard and claims he has an oral right to arbitrarily control quality even though he has not done so. Only SFAB has sold SPICCATO bows on an intermittent basis, but none of these sales violated any right of Mr. Rolland as they are well within the license granted.

(bo) 97 While Mr. Rolland consented to registration by SFAB of domain names comprising Mr. Rolland's names consistent with his insistence that his name will always be used on or in relationship to SPICCATO bows now alleges the Defendants are without a good faith basis for having done so and continuing to do so. These domain name registrations have been relinquished to reduce the size of this dispute. See Exhibit "AA."

(bp) 98 Mr. Rolland, ignoring that he possesses no ownership of SPICCATO, B. Rolland, Benoit Rolland and his image in respect to synthetic bows, that he consented to the use of the same by SFAB, that he has never exercised and does not have absolute control over quality and that current quality exceeds any quality ever attained by SBR, now erroneously claims false association with inferior bows.

(bq) 99 Mr. Rolland claims unfair and deceptive practices by the phantom partnership in respect to SFAB's business practices which Mr. Rolland admits were with his consent.

15. I have never myself personally or through a personal agent done anything in Massachusetts to injure or harm anyone.

16.     In the past all uses of SPICCATO, B. Rolland, Benoit Rolland, and Mr. Rolland's countenance on synthetic bows, advertising, and on web pages were not just with his approval, but due to his insistence. To reduce the size of this dispute I am advised all reference to Mr. Rolland has been deleted from all web pages under the control of any defendant. His countenance was deleted from www.spiccato.com prior to this lawsuit. Progress is being made and will soon be completed on deleting his name from newly manufactured synthetic bows made in Salt Lake City.

17.     Mr. Rolland's insistence on elimination of all references to him from synthetic bows and advertising is a material breach of his obligation to SFAB, in my opinion.

18.     While only Mr. Rolland is in Massachusetts, the following are known material witnesses who will need to testify at trial:

>   Peter Paul Prier;
>
>   Paul Stewart Prier;
>
>   Jon Hatch;
>
>   Jean Grumberger;
>
>   The book keeper for PPS;
>
>   The accountant for SFAB;
>
>   The accountant for PPS;
>
>   Two persons from Radius engineering;
>
>   An expert from the University of Utah;
>
>   Three synthetic bow making employees of SFAB;
>
>   One violin making employee from PPS; and
>
>   One expert on business organizations.

19.     All relevant documents, of which there are many, exist in Salt Lake City, Utah, in the custody of SFAB.

20. Nearly all relevant things are located in Salt Lake City. These include the factory itself, synthetic bows of low quality made by SBR in France, synthetic bows made in Salt Lake City using the SBR technology, synthetic bows made in Salt Lake City using the new SFAB technology, the resins and other material currently used, the new multi-cavity molds currently used, and the tooling currently used during manufacturing.

21. If this litigation were to be retained in Massachusetts, SFAB would have to shut down its factory and discontinue its business before and during trial, which would cause significant financial injure to SFAB at a time when it is not yet, but becoming profitable.

Under penalty of perjury, I swear the foregoing to be true.

_____
PETER PAUL PRIER

_7-27-04_____
DATE