## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOÎT ROLLAND,<br><br>Plaintiff,<br><br>vs.<br><br>PETER PRIER & SONS VIOLINS, INC.,<br>SPICCATO FRENCH AMERICAN BOWS,<br>INC., PETER PAUL PRIER, PAUL<br>STEWART PRIER, and JON HATCH,<br><br>Defendants. | **SUPPLEMENTAL DECLARATION OF<br>JON HATCH**<br><br><br>Civil No. 04CV11491 RWZ |

I, Jon Hatch, declare as follows:

1.      I reaffirm the truthfulness of my initial declaration in this matter.

2.      Peter Prier and Sons, Inc. (PPS), formerly Peter Paul Prier, Inc. (PPPI) is in all ways independently operated.  Spiccato French American Bows, Inc. (SFAB) operates in all ways independently.  Since incorporation of SFAB in December 1997, PPPI/PPS discontinued making and selling synthetic bows.

3.      I have personally performed no service, solicited no business, sold no goods and engaged in no act in Massachusetts or elsewhere for any partnership, including but not limited to one in which Mr. Rolland is or claims to be a partner.

4.      On behalf of PPPI/PPS, I have performed no service, solicited no business, sold no goods and engaged in no act in Massachusetts.

5.      On behalf of SFAB, only within the scope of my authority, I have not caused SFAB to intermittently sell a few SPICCATO bows into Massachusetts.

6.     The technology and customers of SBR, also known as La Sociéte Benoit Rolland, technology and Mr. Rolland's assistance were purchased and paid for, not licensed.

7.     The flaws and defect experienced by Mr. Rolland in manufacturing SPICCATO bows in France were transferred to Salt Lake City because  Mr. Rolland's manufacturing technique was archaic, inconsistent and often unreliable. This accounts for some defects in some of the Salt Lake SPICCATO bows from 1997-2002. SFAB abandoned Mr. Rolland's compression squish molding technique with the help of a Salt Lake engineering firm converted to injection molding which produced much higher quality synthetic bows with far fewer flaws in the resulting bows.

8. Exhibit "I" Jon Decl. shows  the manner in which Mr. Rolland mandated and consistently approved use of the Benoit Rolland on SPICCATO made in the Salt Lake factory. So use by SFAB of Benoit Rolland was with Mr. Rolland's consent and approval. Nevertheless, all web sites involving the name of Mr. Rolland have been forfeited, not because SFAB did anything wrong, but to reduce the size of the present claims of Mr. Rolland and as a part of the plan of SFAB to be separated from Mr. Rolland so far as possible. See Exhibit "V."

9.     Exhibit "W" shows SBR was consistently in financial trouble and on the verge of insolvency notwithstanding Mr. Rolland's claim that in France SPICCATO was a great financial success.

10.    The websites of PPS (prierviolins.com) and SFAB (spiccato.com) are entirely passive. The earlier limited references to Mr. Rolland on prierviolins.com concerned only the bow making school where Mr. Rolland agreed to work for five years, were truthful and were approved by Mr. Rolland.  Shortly after receiving Mr. Rolland's complaint, all references to Mr. Rolland have been deleted from the webpage of prierviolins.com. See Exhibit "X." For the same reasons, there remains no reference to Mr. Rolland on spicatto.com. See Exhibit "Y."

2

11.    If there was somehow an at will partnership, which there was not, I am informed it would have been a Utah partnership, governed by Utah law with all of the activities having occurred in Utah.

12.    Attached as Exhibit "Z" is a document obtained from the French Trademark Office showing ownership of the French Registration of SPICCATO to be vested in SBR, not Mr. Rolland.

13.    Attached as Exhibit "AA" is a copy of a letter from Mr. Rolland disparaging SPICCATO bows from Salt Lake City, contrary, I am informed, to Mr. Rolland's duty of good faith and fair dealing to SFAB, from which Mr. Rolland claims royalties.

14.    Both Mr. Rolland and SFAB made projections of sales of SPICCATO bows in France and the U.S., which were unrealistically high and not achieved. First royalty was to be after SFAB became profitable and $40,000.00 in royalties had accrued. See Exhibit "BB."

15.    Mr. Rolland's feigned characterization of SPICCATO bows being of low quality contradicts an article in String Magazine of October 2002, copy attached as Exhibit "CC."

16.    While Mr. Rolland erroneously contends that he alone was to oversee quality control in Utah, the arrangement was that either Paul Stewart Prier or Mr. Rolland would do so. See Exhibit "DD."

17.    Exhibit "EE" shows that negotiations were directed toward settlement of a Utah-based dispute. Note also that Mr. Rolland owns the domain name "rollandbows.com."

18.    Attached Exhibit "FF" demonstrates that Mr. Rolland initially intended to own 50% of what became SFAB, but later decided not to be an owner.

19.    Attached Exhibit "W" shows clearly that SBR was not very profitable, if profitable at all.

20.    Attached Exhibit "GG" demonstrated that SFAB did assist Mr. Rolland U.S. alien visa, although SFAB never contracted to do so.

21.     Not that it has any legal duty to do so, SFAB deleted Mr. Rolland's image and curriculum vital from its web site prior to this litigation.

22.     Mr. Rolland's archaic technology for making synthetic bows did not allow for consistence in quality. SFAB began looking for better resins to replace the inferior resins of Mr. Rolland and contracted with Radius Engineering of Salt Lake City to develop multi-cavity molds to be used with injection molding. The process took considerable time because of corrections to the molds, among other things. In about January 2002 testing with the new multi-cavity molds began. Commercial production using the new multi-cavity molds and better resin started in about July 2002. The quality of synthetic bows made with the new molds and the new resin is significantly higher than bows made using Mr. Rolland's resin and squish molds.

23.     In regard to the Complaint, I declare as follows:

| | Complaint Paragraph | Declaration |
|---|---|---|
| (a) | 2 | Mr. Rolland is not owner of French Reg. of SPICCATO. See Exhibit "Z." Mr. Rolland has not used personally in the United States the mark SPICCATO and I am informed has no common law rights in SPICCATO for synthetic bows. Use in the United States has been exclusively by PPPI/PPS and SFAB. |
| (b) | 4 | Independent of whether Mr. Rolland had the right to do so, he consented to all uses by PPPI/PPS and SFAB of SPICCATO, Benoit Rolland, B. Rolland and Mr. Rolland's image. The first notice was complaint. |
| (c) | 4, 6, 7 | No false statements or misleading use by any defendant ever occurred. None of the defendants compete with the plaintiff because Mr. Rolland does not make and sell synthetic bows. |

4

(d)    8    Each individual defendant has always acted within the scope of his authority as an agent and representative of PPPI/PPS and/or SFAB. Benoit Rolland and B. Rolland domain registrations were not used in commerce and were cancelled shortly after the first notice (complaint). See Exhibit "V".

(e)    9    There has been no commingling of assets, liabilities or business by PPPI/PPS and SFAB.

(f)    10    There has never been such a partnership at will.

(g)    11    Business venture in the U.S. regarding synthetic bows involving Mr. Rolland was not one where Mr. Rolland had an ownership, but he was only a proclaimed licensor of intellectual property, first exclusively with PPPI/PPS until December 1997 and thereafter exclusively with SFAB.

(h)    12    If a partnership existed it was in Utah. Defendants individually and collectively don't have significant contacts with Massachusetts and defendants collectively do not sell into Massachusetts. Only SFAB sells within the scope of the IP license from Mr. Rolland, which I am advised, is immunity from infringements. None of the defendants make false and misleading statements in any state. All synthetic bows business done is with consent from Mr. Rolland. Only SFAB promotes synthetic bows. There is no partnership to be dissolved.

(i)    13    There has been no profit by SFAB. No royalties are due until $40,000 in royalties has accrued and after SFAB is profitable. Thereafter, Mr. Rolland is to receive 6% of invoice.

(j)    27        Good will, associated with synthetic bows, originated with SBR, not

Mr. Rolland. SPICCATO Reg. in France does not belong to Benoit

Rolland, but to SBR.

(k)    28        The statement "incredibly commercial success" is false. The

SPICCATO bow is expected to become commercially profitable for

SFAB. It was not so with SBR in France and to date SFAB is still not yet

profitable. The lack of success of SBR is documented in Exhibit "W."

However, progress is being made, manufacturing issues have been

overcome, and commercial profitability for SFAB is expected within the

next two years.

(l)    31        The ownership investment was by PPPI, not Peter Paul Prier,

although for purposes of this suit it doesn't seem to matter.

(m)    34, 39, 42,        The parties always required a written agreement to define

56, 57    compensation to Mr. Rolland. Exchanges of proposals (offers) were non-

binding. When the factory in Salt Lake City began production in mid-

1997, PPPI understood no royalties would be paid on the first $40,000

royalties due, no royalties would be due until SPICCATO production in

Salt Lake City became profitable and thereafter six percent (6%) of net

invoice would be paid.

No royalties are due because the Salt Lake City SPICCATO

production, while approaching profitability, is not yet there and once it is

profitable the first $40,000 in royalties is exempt.

(n)    35        These recitations, to the extent true, were non-binding negotiations

because the parties required a written contract.

(o)   36        The incorporation of SFAB in December 1997 was a public act, not

a secret act. It was not concealed from Mr. Rolland. It was done in

anticipation of his promised arrival in the United States upon the closing of

his shop in France at the end of 1997. Mr. Rolland delayed the closing of

his shop until late summer or early fall 1999, leaving SFAB without his

assistance for nearly two years.

(p)   37        PPPI received authorization and approval of Mr. Rolland to start, and

in fact, started production of SPICCATO bows in Salt Lake City factory

about mid-year 1997. There are no trade secrets in the formula since

reverse spectralysis engineer reveals the composition. The method used by

Mr. Rolland was a conventional, very old compression (squish), non-

pressure, clamshell, non-heat form of molding, which does not involve

trade secrets and turned out to be a poor way of producing bows of high

quality. SFAB has abandoned the squish molding approach and now uses

a different pressurized injection molding technology. Also, SFAB uses a

different resin formula to produce synthetic bows of higher quality than

those made by Mr. Rolland in France.

(q)   38, 40     Mr. Rolland closed his shop in France because it was either

insolvent or not sufficiently profitable. See Exhibit "W."

(r)   41        Mr. Rolland was late for the start of the bow making school in the

fall of 1999, causing PPPI/PPS to lose several students earlier enrolled in

the first year of the bow making school.

7

(s)    43    The SPICCATO Business Plan was only a projection.  Mr. Rolland had earlier projections of profitability for the SPICCATO bow, which turned out to be erroneous.

(z)    44    Mr. Rolland admits granting permission to use his name, his likeness, ARPÉGE and SPICCATO.  He also admits the physical squish (compression) molds were his from France.  There was no notice of default until complaint. No opportunity was given to cure any alleged default.

Neither PPPI/PPS now SFAB ever agreed that Mr. Rolland would have sole control over quality.  Instead quality control by either Paul or Mr. Rolland was implemented.  See Exhibit "DD."

As a practical matter, Mr. Rolland was absent from  Salt Lake City and the SPICCATO factory and did not and could not have supervised quality from mid-1997 until October 1999, from May 2000 until October 2000 and not at all after May 2001.  So, the idea of Mr. Rolland providing personal oversight and quality control over synthetic bows produced in Salt Lake City is an absolute fiction.  So, likewise, is the assertion that his SPICCATO bows were flawless and always of high quality an absolute fairy tale.

(aa)    45    Mr. Rolland insisted that certain endorsements be used. He does not own or have the right to control endorsements.

(bb)    46    Assistance was provided for Mr. Rolland to obtain a suitable apartment and to pursue a visa using an INS attorney.  Mr. Rolland had full access to records of SFAB.

8

(ac)    47         PPPI/PPS made no obligation to allow Mr. Rolland to control the

manner the bow making school was run. It was not his school. He was a

valued teacher, but a W4 employee. PPPI/PPS at all times has run the

school in a thoroughly professional and business-like manner.

(ad)    48         There were no problems of any consequence to fix in the bow

making school, except Mr. Rolland's tardiness. Mr. Rolland was given no

promises of any material change in the bow making school. Mr. Rolland

was late for the commencement of both the first and second school years,

again causing PPS to lose previously registered students on both occasions.

Negotiations were between Mr. Rolland and SFAB and were limited

to resolving the synthetic bow compensation issue. Mr. Rolland was not

an owner of the bow making school so there was nothing to buy out. Mr.

Rolland simply terminated as a W4 employee three years prior to the end

of his oral promise to teach five years at the PPS bow making school.


(ae)    49         Mr. Rolland had access to SFAB business records from fall 1999

until he moved to Boston in the spring of 2001. So, the claim of

entitlement to an accounting is more feigned than real.

(af)    50    Mr. Rolland was aware of the domain name registration of his name, which were always inactive. The move was to prevent a third party from registering those domain names. Such registration is consistent with Mr. Rolland's insistence that his name be on all SPICCATO products and promotional activities related thereto.

While SFAB has done nothing wrong in the registration, all domain name registration involving Mr. Rolland's name have been relinquished for the sole purpose of reducing the size of the present dispute. See Exhibit "V." Renew in early 2004 was before notice from Mr. Rolland counsel although SFAB continues to have the right to use.

(ag)    51, 57    Mr. Rolland's assertion that SFAB secretly and under the table filed a U. S. Trademark Application for SPICCATO is false and Mr. Rolland knows it to be false. Mr. Rolland authorized the filing which, by operation of law, I am informed, shows ownership by SFAB. See Exhibit "Z", Jon Decl. Further, Mr. Rolland owns no trademark in the United States, as he, in a personal capacity, has never used on synthetic bows the marks he claims he owns.

(ah)    52    Use by the claimant of a mark is essential to ownership, I am advised. The users have been SBR in France and PPPI/PPS and SFAB in the United States.

The proposal claimed to be made in May 2001 was from SFAB, not from each of the five defendants, and represented only a proposal, not a binding contract, which Mr. Rolland rejected.

(ai)    54, 55         "Profits from the venture" is misleading unless venture means

SFAB. Mr. Rolland has been told repeatedly that SFAB has not made a

profit.

(aj)    56          This was just an offer to fix the compensation due, which has not

been fixed in writing at any time, although the making available of

intellectual property to SFAB is apparent.  However, it now appears that

Mr. Rolland did not own all of the intellectual property he claimed.

(ak)    57          No royalties are due.

(al)    58          SFAB was not a mere licensee of SPICCATO.  SFAB received from

Mr. Rolland right to register SPICCATO. Registration can only be done by

the owner.  See Exhibit "A", Jon Decl.

(am)    59, 60        Mr. Rolland was given oral accounting sufficient to show lack of

profit and no royalty payment due.

(an)    61, 62        Renewal of the domain names occurred before notice and SFAB's

right to use Mr. Rolland's name was continuing in all respects in respect to

synthetic bows.

(ao)    62, 63        SFAB has never claimed ownership of Benoit Rolland.  Only the

ongoing right to use exclusively his name on synthetic bows, as mandated

by Mr. Rolland himself.  Therefore, SFAB had no reason to oppose, since

registration inured to the advantage of SFAB in its uses of B. Rolland and

Benoit Rolland.

(ap)    64          SFAB stipulates ownership, but such is subject to SFAB exclusive

right to use on synthetic bows, as mandated by Benoit Rolland.

(aq)    65          There has been no quality degeneration.  SBR's  quality was no

better than the initial quality of SFAB.  Quality is excellent now.

(ar)    66, 67            Warpage occurred often in bows made by SBR in France.

(as)    69              Since Mr. Rolland does not personally make and sell synthetic bows

and never has, there is no and never has been competition. Mr. Rolland

has authorized, indeed mandated, use of his name on and in conjunction

with SPICCATO bows. There, are not separate undertakings and can be

no likelihood of public confusion because there is only one source of

SPICCATO bows, i.e. SFAB.

(at)    70, 71            Mr. Rolland has no rights in the mark ARPÉGE nor power to control

the quality or the design of ARPÉGE bows, although he misrepresented to

PPPI/PPS and SFAB that he had such rights and pretended to make these

false rights available to SFAB. There is no goodwill injury. Mr. Rolland

is not the possessor of any goodwill. SFAB is. The assertions in

paragraph 70 of the Complaint are inconsistent. The goodwill of ARPÉGE

is separate from the goodwill of SPICCATO, as they are different

products. The SPICCATO bow is adjustable and more expensive and the

ARPÉGE bow is not adjustable and less expensive. For Mr. Rolland to

say that the claimed defect in the ARPÉGE harms the goodwill of

SPICCATO is like saying an alleged defect in a Chrysler automobile

detracts from the goodwill of a Mercedes automobile.

(au)    72              The ARPÉGE and SPICCATO bows are excellent products,

notwithstanding Mr. Rolland's subjective self-serving comments. Mr.

Rolland never personally produced an ARPÉGE bow, to my knowledge.

(av)    73         Mr. Rolland never personally owned the mark SPICCATO because

he was not and never has personally been in the synthetic bow business.

He never received a veto power as to bow quality nor did he ever monitor,

to any material extent, manufacture of synthetic bows made in Salt Lake

City. See Exhibit "DD." The SBR bows from France frequently had flaws

and defects. The quality of SPICCATO bows presently exceed the quality

of SPICCATO bows  made by SBR in France. Mr. Rolland provided no

notice with an opportunity to cure the alleged defects. If irreparable injury

were really so, why did Mr. Rolland do nothing in 2002 and 2003

(paragraphs 66-68 of the Complaint) and waited until 2004 to file suit?

One does not wait for nearly two years to address irreparable harm. There

was and is no harm, at all,  much less irreparable harm to Mr. Rolland

regarding SFAB's SPICCATO mark.

(aw)    74         Mr. Rolland has not personally used Benoit Rolland or B. Rolland

on synthetic bows in Europe or the United States. Since SBR used these

two marks on synthetic bows in France, I believe trademark rights vested

in SBR. See Exhibit "II." No conveyance of these trademark rights from

SBR to Mr. Rolland was ever approved by the owners (shareholders) of

SBR of which PPPI was one, and, therefore, no legal transfer to Mr.

Rolland ever occurred. PPPI used these two marks in the United States

and Mr. Rolland personally did not. Since use in the United States is a

pre-condition to United States trademark registration, it appears that Mr.

Rolland obtained the two United States registrations through deception.

(ax)   75          Use of "B. Rolland" and "Paris" by SFAB was at the insistence of

Mr. Rolland, who maintains he owned this mark and use by SFAB on

synthetic bows was lawful and mandatory.

Mr. Rolland supplied a template with both "B. Rolland" and "Paris"

thereon and made the use thereof mandatory on SPICCATO bows, even

though he never made his French SPICCATO bows in Paris.  See the last

page of Exhibit "I", Jon Decl.

Mr. Rolland has no reputation in the synthetic bow business as he

has never produced a synthetic bow other than through SBR.

(ay)   76          All reference to Benoit Rolland on prierviolins.com has been

cancelled from the website.

(az)   77          There was no passing off.  Use of SPICCATO is entirely lawful, as

was and is use of Maestro, both falling within the grant given by Mr.

Rolland to SFAB, although SBR may have been the owner of Maestro for

synthetic bows.

(ba)   78          Mr. Rolland has no right to control where or how SFAB advertises

its synthetic bows.  Mr. Rolland's criticism of <u>Muso</u> lacks justification and

it is irrelevant.

(bb)    80        The alleged general partnership at will is a fiction and the alleged

contract by estoppel and reliance is distorted.  Mr. Rolland falsely claims

himself personally (and not SBR) to have been the owner of trademark

rights, so-called trade secret information and to have provided the same to

the Salt Lake factory.  It is of interest that Mr. Rolland has not sued any

partnership per se, but only five of six alleged partners, failing to name

himself, an alleged partner, as a Defendant. It is also interesting that Mr.

Rolland has not shared the debts of the alleged synthetic bow partnership.

(bc)    81        Mr. Rolland falsely asserts personal ownership of trademarks,

and know-how, which Mr. Rolland seems to contend were contributed to

the phantom partnership by Mr. Rolland as his capital contribution to

obtain whatever percent interest in the phantom partnership he claims to

have obtained, but asks for a restoration of title to the intellectual property,

where the synthetic bow business has debts for which Mr. Rolland would

be liable. Mr. Rolland does not explain how his claimed intellectual

property is both a capital contribution to obtain an interest in a partnership

and the subject matter for a compensatory licensee to SFAB.

(bd)      82          Even though in Paragraph 81 of the Complaint Mr. Rolland claims

no agreement, in Paragraph 82 he asserts breaches have occurred, forcing

him to discontinue involvement in the phantom partnership. Mr. Rolland

asserts from the phantom partnership somehow profits and royalties are

owed to him personally, apparently as an inactive partner, who has failed

to share the debts of the alleged synthetic bow partnership.

Mr. Rolland, inferring that he has a right to impose quality standards

on SFAB in respect to synthetic bows and in the absence of an agreement,

claims SFAB bows have "failed to maintain quality standard" which he

never imposed and never supervised (ignoring the facts that quality always

had problems in France and got considerably better after Mr. Rolland left

SFAB in Salt Lake City). Either Paul Stewart Prier or Mr. Rolland could

control quality. See Exhibit "DD." Mr. Rolland never did.

Mr. Rolland is well aware of previously authorized, and indeed

mandated usage of his image and the marks SPICCATO, B. Rolland and

Benoit Rolland on synthetic bows and, after inducing SFAB to expend

over one-half million dollars at the Salt Lake City factory to make

synthetic bows using the SPICCATO, ARPÉGE, B. Rolland, Benoit

Rolland and a replica of Mr. Rolland's countenance, falsely claims the

phantom partnership (but truthfully SFAB) is "without any present good

faith claim of right."

16

(be)  83        Mr. Rolland claims his unwillingness to continue to be active in the

phantom partnership in Salt Lake City automatically terminated the

phantom partnership under the common law or because the phantom

partnership (really the corporation SFAB) is slowly becoming profitable

but is not yet so. Mr. Rolland, as a pretended partner, claims he may

dissolve the phantom partnership (really the corporation SFAB), without

regard to the investment of over $500,000 to create and operate SFAB.

(bf)  84        Mr. Rolland claims he is entitled to an equitable accounting from the

phantom partnership which has no books and records and has made no

sale. Mr. Rolland asks a distribution of non-existing partnership assets, in a

setting where jurisdiction over the phantom partnership has not been

invoked, nor could it be.

Mr. Rolland falsely claims a commingling of assets among the

Defendants, knowing first the phantom partnership has no assets and the

two corporate entities operate separately and do not co-mingle assets. Mr.

Rolland seems to erroneously say that the Prier family can only have one

corporation because having more than one corporation under control of the

same family creates a de facto merger.

(bg)  86        Mr. Rolland claims breaches by the phantom partnership. Mr.

Rolland claims he is entitled to an equitable accounting and a termination

of patent, trademark, know-how licenses, which Mr. Rolland seemingly

concedes were earlier granted and presently exist, but where SBR owned

the trademarks and know-how.

(bh)    87    Mr. Rolland claims an actual controversy and entitlement to a court order terminating the phantom partnership's right to manufacture under the trademarks, patents and know-how.

(bi)    88    Wrongful use by the phantom partnership of Mr. Rolland's image and the federally registered marks Benoit Rolland and B. Rolland never occurred.

(bj)    89    Mr. Rolland claims use of his likeness, though agreed to earlier, now has become a willful violator of Mr. Rolland' rights, and that licensed right has been forfeited by unclear alleged  false statements about Mr. Rolland and feigned lack of quality control.  No such false statement was made, quality control is high and Paul Stewart Prier has authority  to and in fact controls quality, while Mr. Rolland has failed to do so.

(bk)    90    Mr. Rolland seeks injunctive relief as to further use of Benoit Rolland, B. Rolland and Mr. Rolland's likeness, including website removal of the same, discontinuance of endorsements of the synthetic bows by third parties (which Mr. Rolland does not own) and forfeiture of certain domain name registrations.  Mr. Rolland's image was removed before this suit and the domain names have been relinquished to make the dispute smaller.

(bl)    93    Mr. Rolland falsely claims all the Defendants' are estopped to deny that they owe Mr. Rolland profits and royalties only because SFAB continued to negotiate for a written contract, but did not succeed. I suppose Mr. Rolland is estopped to deny he owes his share for the debts of the synthetic bow business. Collectively, the Defendants owe Mr. Rolland nothing.  SFAB owes  nothing until it is profitable.

(bm)    94        Mr. Rolland falsely expands on his contention that all Defendants (the phantom partnership) are estopped to deny that net profits are due him because Peter Paul Prier, many years ago, allegedly orally said he would sign a written offer, but never did, and Mr. Rolland, expecting a written agreement, falsely claims to have acted to his prejudice based upon the alleged oral promise to sign the written offer. PPPI/PPS and SFAB acted to their great prejudice on promises by Mr. Rolland, which were not kept.

(bn)    95        Mr. Rolland falsely claims material breaches of a non-existing contract based on intellectual property he never owned.

(bo)    96        Mr. Rolland alleges the phantom partnership has advertised, offered for sale and sold SPICCATO bows in Massachusetts having a quality below Mr. Rolland's standard and claims he has an oral right to arbitrarily control quality even though he has not done so. Only SFAB has sold SPICCATO bows on an intermittent basis, but none of these sales violated any right of Mr. Rolland as they are well within the license granted.

(bp)    97        While Mr. Rolland consented to registration by SFAB of domain names comprising Mr. Rolland's names consistent with his insistence that his name must always be used on or in relationship to SPICCATO bows now alleges the Defendants are without a good faith basis for having done so and continuing to do so. These domain name registrations have been relinquished to reduce the size of this dispute. See Exhibit "AA."

(bq)    98         Mr. Rolland, ignoring that he possesses no ownership of

SPICCATO, B. Rolland, Benoit Rolland and his image in respect to

synthetic bows, that he consented to the use of the same by SFAB, that he

has never exercised and does not have absolute control over quality and

that current quality exceeds any quality ever attained by SBR, now

erroneously claims false association with inferior bows.

(br)    99         Mr. Rolland claims unfair and deceptive practices by the phantom

partnership in respect to business practices which Mr. Rolland admits were

with his consent.

24.    I have never myself personally or through a personal agent done anything in Massachusetts to injure or harm anyone.

25.    In the past all uses of SPICCATO, B. Rolland, Benoit Rolland, and Mr. Rolland's countenance on synthetic bows, advertising, and on web pages were not just with his approval, but due to his insistence. To reduce the size of this dispute I am advised all reference to Mr. Rolland has been deleted from all web pages under the control of any defendant. His countenance was deleted from www.spiccato.com prior to this lawsuit. Progress is being made and will soon be completed on deleting his name from newly manufactured synthetic bows made in Salt Lake City.

26.    Mr. Rolland's insistence on elimination of all references to him from synthetic bows and advertising is a material breach of his obligation to SFAB, in my opinion.

27.    While only Mr. Rolland is in Massachusetts, the following are known material witnesses who will need to testify at trial:

Peter Paul Prier;

Paul Stewart Prier;

Jon Hatch;

Jean Grumberger;

The book keeper for PPS;

The accountant for SFAB;

The accountant for PPS;

Two persons from Radius engineering;

An expert from the University of Utah;

Three synthetic bow making employees of SFAB;

One violin making employee from PPS; and

One expert on business organizations.

28.     All relevant documents, of which there are many, exist in Salt Lake City, Utah, in the custody of SFAB.

29.     Nearly all relevant things are located in Salt Lake City. These include the factory itself, synthetic bows of low quality made by SBR in France, synthetic bows made in Salt Lake City using the SBR technology, synthetic bows made in Salt Lake City using the new SFAB technology, the resins and other material currently used, the new multi-cavity molds currently used, and the tooling currently used during manufacturing.

30.     If this litigation were to be retained in Massachusetts, SFAB would have to shut down its factory and discontinue its business before and during trial, which would cause significant financial injure to SFAB at a time when it is not yet, but becoming profitable.

Under penalty of perjury, I swear the foregoing to be true.

_____
JON HATCH

_____
7-27-04
DATE

21