UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOÎT ROLLAND,<br><br>    Plaintiff,<br><br>v.<br><br>PETER PRIER & SONS VIOLINS, INC., SPICCATO FRENCH AMERICAN BOWS, INC., PETER PAUL PRIER, PAUL STEWART PRIER, and JON HATCH,<br><br>    Defendants. | Civil Action No. 04-11491 RWZ |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF JURISDICTION AND PRELIMINARY INJUNCTION**

### SUMMARY OF ARGUMENT

*Reputation is only a candle, of wavering and uncertain flame, and easily blown out, but it is the light by which the world looks for and finds merit.*
                                                                       -James Russell Lowell

In the world of classical string music and musicians, the name of the plaintiff Benoît Rolland has always been, is now, and will be in the future associated with violin, viola, and cello bows of the finest quality, provided that this Court allows him to maintain his action here and grants him the preliminary injunctive relief he is requesting.

    **A.    Plaintiff Rolland Has Established Personal Jurisdiction of and the Need for Preliminary Injunctive Relief Against Defendant SFAB**

Plaintiff Benoît Rolland is suffering irreparable harm because defendant SFAB is selling substantial quantities of defective violin bows, branded SPICCATO and ARPÈGE, into the Commonwealth of Massachusetts with plaintiff's named engraved on each of them as "B. Rolland Paris." In the course of the partnership relationship between plaintiff and defendants,

plaintiff had authorized defendants to use his name on prior versions of the product, but only because, as Mr. Rolland explains in his declaration, those prior versions were being made by defendants in accordance with the strict design and manufacturing standards that Mr. Rolland, the inventor of the bows, had defined for them and taught to the defendants. Without Mr. Rolland's authorization or input, defendants admit that they radically changed the manufacturing process. In Mr. Rolland's opinion, the resulting violin bows are defective and their substantial and continuing sale with his name engraved on them seriously harms his reputation and the goodwill as a master bowmaker.

The substantial evidence of defendant SFAB's sales of the very violin bows that are the subject of this dispute in Massachusetts which entitles plaintiff to a preliminary injunction also puts to rest any question as to personal jurisdiction of this Court over defendant SFAB. Defendant SFAB has been selling bows in Massachusetts continuously since at least 2001 when it listed fiver dealers in Massachusetts. It had at least 8 dealers for the bows in Massachusetts listed on its website as of January 2004, and there are over $13,000 of bows with Mr. Rolland's name on them currently in stock at Johnson String Instruments in Newton, MA, even as this memorandum is being filed.

> **B.    Plaintiff Has Made a Strong Case for Personal Jurisdiction as to Each Other Defendant So That Their Motions Should Be Denied Outright or Plaintiff Should be Permitted to Take Jurisdictional Discovery; Defendants Should Be Bound By A Preliminary Injunction Against Defendant SFAB**

These other named defendants assert that their direct activities in Massachusetts are so remote as to be merely "incidental" and "intermittent" and argue therefore that this suit cannot be maintained against them here. They further assert that they do not "personally" act on behalf of defendant SFAB in connection with business. Jurisdiction must be defeated, they argue, because plaintiff cannot meet the high standard to prove an *alter ego* theory of liability.

2

Defendants fundamentally misunderstand the law that applies to a cause of the action in the nature of trademark infringement and unauthorized use of name and image, both of which are torts: individuals who direct, authorize, and participate in tortious conduct are personally liable for the tortious injury regardless of their status as officers or shareholders of the joint tortfeasor company. Such documents of the business of defendant SFAB as Mr. Rolland has in his possession--documents generated in the course of SFAB's business and not in response to a lawsuit – show that each of the defendants is personally and intimately involved in the business of defendant SFAB from its founding, while the declarations of the defendants themselves show their involvement in the recent changes in bow design and manufacture that harms Mr. Rolland.

The pleadings and evidence of record amply establish sufficient personal involvement of each of the defendants in the tortious and unauthorized use of Mr. Rolland's name and image to sustain personal jurisdiction and to justify outright denial of defendants' motions to dismiss and to subject the other defendants to preliminary injunctive relief.

If, however, the Court feels that it cannot deny the motions to dismiss outright on this record, the Court should allow plaintiff's requested, limited jurisdictional discovery. As the pleadings must be read in the light most favorable to the plaintiff, and plaintiff has made at least a strong colorable showing of jurisdiction in the pleadings and in his submissions, this Court may and should exercise its discretion to permit the discovery.

## **RELEVANT PROCEDURAL HISTORY**

The complaint in this action was originally filed in the Business Litigation Session of the Suffolk Superior Court on May 24, 2004.

The five defendants removed the action to this Court on June 30, 2004, alleging both federal question jurisdiction (Lanham Trademark Act of 1946, as amended, 15 U.S.C.) and diversity jurisdiction. See Notice of Removal, paragraphs 4 through 7.

Defendants concede that plaintiff states causes of action for trademark infringement under the Lanham Act of the plaintiff's federally registered trademarks BENOIT ROLLAND and B. ROLLAND and unauthorized use of plaintiff Rolland's name and image in violation of M.G.L. ch. 214, Section 3A, all in connection with defendants' manufacturing, advertising and sales of synthetic bows in the United States (Notice of Removal, para. 4):

> The Complaint requests preliminary and permanent injunctions enjoining defendant from using the federally registered trademarks BENOIT ROLLAND and B. ROLLAND and/or any likeness of Rolland in any advertisements or trade, including removing any reference to Rolland from any advertising of defendants, including removing all endorsements of artists giving [sic, given] personally to Rolland for bows made personally by Rolland, removing all references to "Rolland" or any colorable variation from any bow manufactured by defendants, and abandoning or transferring to Rolland the domain names incorporating Rolland's name or any recognizable portion thereof; and advertising, selling, or offering for sale, promoting, displaying, or otherwise publishing any bow under the name and mark SPICCATO or Arpege in the United States.

See Complaint, paragraphs 88-92.

Defendants also concede that plaintiff Rolland is a resident of Massachusetts. Notice of Removal, para. 5. See Complaint, paragraph 1.

Defendants moved to dismiss the action for lack of personal jurisdiction and improper venue in five parallel motions to dismiss filed on July 30, 2004.[1]

---

[1] In one sentence in their motions to dismiss, each defendant also asks alternatively for the Court to transfer the action to Utah pursuant to 28 U.S.C. Section 1404. Determination of personal jurisdiction precedes the issue of transfer, and the requested jurisdictional discovery will equally inform any transfer issue. See Northern Lights Technology, Inc. v. Northern Lights Club et. al, 97 F. Supp. 2d 96, 106-08 (D. Mass. 2000)(identifying gestalt factors in due process analysis). Where jurisdiction and venue are proper, the plaintiff's choice of his home forum choice is respected, id. at 108. A transfer to Utah would essentially end plaintiff's ability to litigate this action; he has literally been rendered impoverished by the very breaches of the defendants alleged in the Complaint, particularly their failure to account

4

With respect to its request for jurisdictional discovery, plaintiff believed in good faith that it had reached an agreement with defendants as of August 17, 2004, to conduct limited jurisdictional discovery. However, defendants' counsel reneged on the compromise that they had offered after plaintiff accepted it, to plaintiff's real surprise. Plaintiff will live up to the bargain it accepted, thus, the discovery sought reflects exactly the scope and content of discovery that defendants offered. See the Certificate of Conference appended to Plaintiff's Motion for Limited Jurisdictional Discovery and Exhibit 1.

## GOVERNING LAW

**A.    Injunctive Relief for Unauthorized Use of Name, False Designation of Origin, and Trademark Infringement**

To obtain a preliminary injunction in the First Circuit, the plaintiff must show:

(1) a probability of success on the merits of its claims;

(2) that it will suffer irreparable injury if an injunction is not granted;

(3) that the injury to plaintiff outweighs any harm the injunction would inflict on defendants; and

(4) that granting the injunction is consistent with the public interest.

Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 220 (1st Cir. 1989).

Plaintiff seeks preliminary injunctive relief for the unauthorized use of Mr. Rolland's name on violin bows and the use of Mr. Rolland's name, image, and the artist endorsements that Mr. Rolland obtained personally for bows made under a different, prior process.

---

for or pay any royalties to plaintiff in return for the exclusive rights that he granted to them. 0 (Rolland Decl., ¶ 19). Now, his reputation is also being harmed by defendants' continued trading on his name, including here in Massachusetts where he has a substantial and important clientele. (Rolland Decl., ¶ 39). On this limited record, the plaintiff's forum choice should not be disturbed on what amounts to a mere expression of defendants' preference for their home forum.

5

M.G.L. ch. 214, Section 3A (Unauthorized Use of Name, Portrait, or Picture of Person ....), which provides for injunctive relief without any required showing of likely confusion:

> Any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent may bring a civil action in the superior court against the person so using his name, portrait or picture, to prevent and restrain the use thereof; and may recover damages for any injuries sustained by reason of such use.

The Lanham Trademark Act prohibits false statements and representations of fact that are likely to cause confusion as to the source, origin, sponsorship or association of any person with goods and services of another. 15 U.S.C. Section 1125(a)(1)[2] (Lanham Act Section 43 (a)(1)); Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 29 (1st Cir. 1989) (enjoining sale of t-shirts pursuant to the Lanham Act, Section 43(a) which would likely confuse the public as to sponsorship or association).

The Lanham Trademark Act gives owners of registered trademarks a cause of action for infringement of the marks against uses that are likely to cause confusion. 15 U.S.C. Section 1114(1)(a) and (b)(trademark infringement and counterfeiting); Keds, 888 F. 2d at id. (enjoining sale of goods bearing the registered BLUE LABEL trademark because of likely confusion of the public as to the source or origin of the goods).

---

[2] 15 U.S.C. Section 1125(a)(1) provides, "Any person who, on or in connection with goods or services or any container for goods or services, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
   (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his goods, services, or commercial activities by another person, or
   (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

6

Individuals who participate in, direct, authorize or otherwise approve actions that cause tortious injury such as trademark infringement, unauthorized use of name, and other harm sounding in tort are personally liable for such actions regardless of their status as shareholders or officers of the entity that is directly engaging in the tortious activity. Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1477 (11th Cir. 1991); Cash Energy, Inc. v. Weiner, 768 F.Supp. 892 (D.Mass. 1991) (to impose individual liability for corporate acts, plaintiff must showing either equitable grounds for piercing corporate veil or active personal involvement in the tortious act.)

### B.   Personal Jurisdiction and Jurisdictional Discovery

To establish personal jurisdiction over a defendant, the plaintiff must demonstrate that the exercise of jurisdiction over the defendants is authorized by the state long arm statute and that defendant has sufficient minimum contacts with the forum state to satisfy the Constitution's due process standard. Keds, 888 F.2d at 218.

The Court may allow discovery of jurisdictional facts in the exercise of its discretion, Surpitski v. Hughes-Keenan Corp., 362 F.2d 254, 256 (1st Cir. 1966), when

(a) plaintiff has been diligent and made a colorable showing of jurisdiction over the defendants;

(b) complex factual matters are at issue;

(c) plaintiff is unfamiliar with the defendants' business; and

(d) the information fills a jurisdictional void in the evidentiary landscape.

See United States v. Swiss American Ltd., 116 F. Supp.2d 217 (D. Mass. 2000)(citing Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962, 964 (1st Cir.1997); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 681 (1st Cir.1992).

# ARGUMENT

### A. The Court Has Jurisdiction of Defendant SFAB, and Plaintiff Is Entitled to Preliminary Injunctive Relief Against Defendant SFAB

The core premise of defendant SFAB's motion to dismiss is more or less an outright denial that defendant SFAB does business in the Commonwealth related to the violin bows at issue (SFAB Memorandum in Support of Motion to Dismiss at page 6-7, paras. 43-44):

> 43. The intermittent synthetic bow business done in Massachusetts by [defendant] SFAB since Mr. Rolland left Utah has not been continuous, symmetric or substantial, Para. 66 Paul [Stewart Prier] Declaration.
>
> 44. Further, the synthetic bow business done in Massachusetts by [defendant] SFAB since Mr. Rolland left Utah does not correlate to any claim asserted by Mr. Rolland in the Complaint, Para. 67, Paul [Stewart Prier] Declaration.

Defendant SFAB's denial is in direct contradiction to the facts because substantial quantities of SPICCATO and ARPÈGE bows made by defendant SFAB and bearing plaintiff's name are currently being offered for sale in the Commonwealth. Indeed, one retailer, Johnson String Instrument in Newton, MA alone has nearly $13,000 (retail value) of bows presently in stock, which they described as a "new shipment." Rolland Declaration, ¶ 32. A second dealer, Stammell String, lists over $2000 of SPICCATO and ARPÈGE bows bearing plaintiff's name for sale on their website. Rolland Declaration, Exhibit 6.

Defendant SFAB has been engaged in sales of these goods in the Commonwealth for many years. As of 2001, defendants' website, www.spiccato.com, listed 5 dealers in Massachusetts, three in the Boston area and two in Western Massachusetts. Exhibit A is a color printout of the contents of defendants' website as of November 7, 2001. In January 2004, defendants' website listed 6 dealers, including three with live links to the dealers' site. See Exhibit B, which is a contained on the CD ROM disk submitted with this motion, containing a copy of the website as of January 7, 2004.

That defendant SFAB has dealers located in Great Barrington, MA, near Tanglewood, and in Boston, near the myriad music schools and programs offered in Boston. Therefore, it logical that one such dealer would have $13,000 in bows in stock just before the start of the academic year. That dealer, Johnson String Instruments in Newton, MA, even devotes a separate page on its website to "Spiccato Bows by Benoit Rolland." Rolland Decl., Exhibit 13.

Thus, it is clear that defendant SFAB is making substantial sales into the Commonwealth and that the sales are neither intermittent or incidental. The total amount of such sales is not known to plaintiff, of course, because the defendants have steadfastly refused to account for profits, even while they acknowledge that they royalties are accruing. Rolland Declaration, Exhibit 15.

The Massachusetts Long Arm statute, Massachusetts General Laws, ch. 223A, §3 authorizes jurisdiction, among other provisions, where the cause of action is related to defendants' (emphasis supplied):

> (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if **he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial benefit from goods used or consumed or services rendered, in this commonwealth....**

"Substantial revenue" under Section 3(d) is not an absolute amount nor an absolute percentage of total revenue. Keds Corp. v. Renee Intern Trading Corp., 888 F. 2d 215, 219 (1st Cir. 1989); Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH, 26 Mass App. Ct. 14, 522 N. E. 2d n. 5, rev denied, 402 Mass. 1105, 525 N.E. 2d 678 (1988). In Keds, 888 F.2d at 219, a single sale of goods bearing the disputed marks to a distributor in the Commonwealth in the amount of $15,000.00 was found to be sufficient to constitute "substantial revenue" for purposes of personal jurisdiction under Section 3(d) as well as satisfying the due process analysis.

The cause of action is intimately related to defendant SFAB's contacts here; indeed, so related are the contacts –defendant SFAB's sales of bows with Mr. Rolland's name on them -- that they are causing plaintiff immediate and irreparable harm that must be enjoined.

In the Complaint filed in May, plaintiff alleged that he suspected, based upon examination of bows at Johnson String Instruments in late 2003, that defendant SFAB had recently changed the manufacturing process for the bows. Complaint, para 70-72; Rolland Declaration ¶ 24. Defendant SFAB now concedes that they have changed the process. ("SFAB abandoned Mr. Rolland's compression squish molding technique with the help of a Salt Lake engineering firm converted to injection molding…" Supp. Dec. of Paul Stewart Prier, ¶ 22).

More recently, plaintiff visited Johnson String Instrument again, where he photographed a bow on site and borrowed two bows from the "recent shipment" for further examination. He has confirmed that the same defects which he observed in December 2003 and which formed the basis for his allegations in the Complaint are present in all of the bows currently being offered for sale. Rolland Declaration, ¶¶ 32-33.

The bows have warps along their length and are not uniform due to the improper arrangement of fibers and what plaintiff Rolland speculates is a hot-molding process that results in incomplete curing of the bows. Both of these factors result in a weak bow with non-uniform characteristics along its length. Rolland Declaration ¶ 33 and Exhibit 7. As is apparent from the photograph of the bow contained in Exhibit 11 to the Rolland Declaration, plaintiff Rolland's name appears prominently on these bows, but these bows are made by techniques neither developed or approved by plaintiff.

Defendants' use of plaintiff's image, name, and substantial reputation in connection with these defective products to promote their business, are matters of current, ongoing harm for

which Mr. Rolland seeks injunctive relief and damages in the Complaint and which are occurring substantially and primarily in the Commonwealth, plaintiff's residence. Plaintiff has a substantial clientele in Massachusetts for his traditional wooden bows and the presence here in Massachusetts of defective bows of any kind bearing his name threaten immediate and irreparable harm to his reputation, which is substantial. Rolland Declaration, ¶¶ 41-49.

While defendants assert that the quality of their bows has never been higher, and that plaintiff Rolland's technique was "arcane," these post-suit motivated statements stand in sharp contrast to their statements about the quality of plaintiff's bows to the trade and to the public before the parties fell into dispute and this case was filed (The Salt Lake Tribune, November 6, 1998) (Exhibit C):

> Master archetier (bow maker) Benoit Rolland has developed a bow not of the traditional Pernambuco wood, but of a carbon-fiber composite. The advantage is that the material is not affected by temperature, humidity or altitude. It also is equipped with a system to adjust the camber, or bend of the bow, for personal taste. The range in price from about $695 to $3000.
>
> "The highest technical advance in the last 100 years is this bow," said Paul Prier, vice-president of Peter Prier & Sons Violins, Salt Lake City. "Benoit is a bowmaker of the highest quality."

Defendant SFAB asserts that it, not he, supposedly owns the right to the use of his name on any goods whatsoever, regardless of quality. Defendants' actions in response to the lawsuit, however, belie their assertions that they have done nothing wrong: upon filing of the lawsuit, all of the defendants immediately took down their websites which had prominently displayed Mr. Rolland's image and name, they relinquished the domain names they had registered that incorporated Mr. Rolland's name, and when they re-posted their websites in August 2004, they had removed all reference to Mr. Rolland from them.

Most importantly, defendants still have not yet taken the steps that would truly mitigate the harm to Mr. Rolland because they continue to ship defective bows bearing Mr. Rolland's name and substantial quantities of defective bows are present in the marketplace. They have also continued to display artist endorsements that Mr. Rolland personally obtained and that are specific to bows made under Mr. Rolland's manufacturing standards.

When defendants changed the manufacturing process, which resulted in defective bows, they assumed the risk of the change, their continued use these artist endorsements became unauthorized, and was injurious to the reputation of both Mr. Rolland and the artists. See, e.g., Restatement of Unfair Competition (Third), § 46, comment f, Appropriate of the Commercial Value of a Person's Identity: The Right of Publicity ("The defense of consent extends only to conduct that is within the scope of the consent. Consent to use a person's identity may be restricted, for example, to certain products, or to certain media, or to a certain duration"). With the additional, recent removal of Mr. Rolland's name from their websites, the artist endorsements are also false statements of fact that deceive the public since it was only through defendants' prior association with Mr. Rolland and bows made according to Mr. Rolland's standards that defendants had any good faith basis to publish the endorsements.

Substantial numbers of defective bows are in stock in music retail shops in Massachusetts right now as Tanglewood Summer Music Festival comes to a close, musicians return to Boston, and music students arrive for the fall semester. Mr. Rolland needs the assistance of the Court to enjoin the continued distribution and sale of these bows, to order the defendants to recall every bow that has been made under the new manufacturing process that bears Mr. Rolland's name, to notify retailers and distributors that the bows made under a new process are not endorsed or approved by Mr. Rolland, and to enjoin the defendants from using any artist endorsements

obtained by Mr. Rolland for the bows made according to the process that the defendants have now abandoned.

### B. Plaintiff Has Made a Strong Showing of Personal Jurisdiction Over the Other Defendants

The corollary premise of the other named defendants is that they are not involved in the "synthetic bow business" of defendant SFAB to an extent, which would subject them to jurisdiction here.[3]  See, also, e.g., Motion to Dismiss of Peter Paul Prier, paragrapahs 5, 7, 8. Even the preliminary scrutiny at this early stage of the case leads to the conclusion that each of them carries on the business of the other so far as the manufacturing of the violin bows at issue here.

Peter Paul Prier is understood by plaintiff Rolland to be the patriarch of the family and the person who made all the important business decisions. He personally invested $40,000 in plaintiff Rolland's company in France in 1994. Peter Prier Declaration ¶ 13; Rolland Declaration, ¶ 8.

---

[3] See Memorandum in Support of Jon Hatch Motion to Dismiss, at page 2, paragraph 6:

> "All synthetic bow manufacturing and sales since about December, 1997, in Salt Lake City have taken place exclusively under the auspices of [defendant] SFAB, not by [defendant] Jon [Hatch] personally. Para. 27, Paul [Stewart Prier] Declaration; Para. 19, Jon [Hatch] Declaration."

See also Memorandum in Support of Peter Paul Prier & Sons Motion to Dismiss at page 2, paragraph 6:

> "All synthetic bow manufacturing and sales since about December, 1997, in Salt Lake City have taken place exclusively under the auspices of [defendant] SFAB. Para. 27, Paul [Stewart Prier] Declaration; Para. 19, Jon [Hatch] Declaration."

See also Memorandum in Support of Paul Stewart Prier Motion to Dismiss, at page 2, paragraph 7:

> "All synthetic bow manufacturing and sales since about December, 1997, in Salt Lake City have taken place exclusively under the auspices of [defendant] SFAB, not by [defendant] Paul [Stewart Prier] personally. Para. 27, Paul [Stewart Prier] Declaration.

Peter Prier traveled personally to France to negotiate the business relationship that is the subject of this dispute with plaintiff Rolland.  Rolland Declaration, ¶ 11.

According to the Utah Secretary of State, Peter Prier is the president, director, and registered agent for defendant SFAB and the founder, president and director of defendant Peter Prier & Sons Violins, Inc.  Exhibit E.  According to Dun & Bradstreet, as of May 2002, defendant SFAB had 6 employees, two of which were defendant Jon Hatch and defendant Paul Stewart Prier, and defendant Peter Prier & Sons Violins and defendant SFAB are "related through common principals, management and/or ownership."  Exhibit E.

Utah assessment records indicate beneficial ownership by Peter Prier and his wife of three adjacent parcels of property described as "retail conversion," "retail trade," and "office," all with a sites and mailing address of 308 E 200S, Salt Lake City, UT.  Exhibit G.

Peter Prier admits that the rights granted by plaintiff Rolland were initially held by defendant Peter Prier & Sons Violins, Inc. and were later transferred to defendant SFAB.  Peter Prier had to concede that he initiated his relationship with plaintiff Rolland on behalf of himself and defendant Peter Prier & Sons Violins, Inc. since the relationship of the parties began as early as 1992 when only Peter Prier & Sons Violins, Inc. was in existence.  Defendant SFAB was not incorporated until 1997.  Prier Declaration ¶ 38.

Paul Prier is a director and vice president of SFAB.  Both Paul Prier and Jon Hatch were personally instructed in the manufacture of synthetic bows by plaintiff Rolland in France before defendant SFAB commenced manufacture of the bows in the United States.  Rolland Declaration ¶ 10.

An article in the Deseret News (Salt Lake City) in November 1998 (Exhibit H), in which each of the individual defendants is quoted, sums up the closely intertwined relationship of Peter

Prier's corporate and family relationships and the SPICCATO bows, and their continuous and overt use of Benoit Rolland's inventions and reputation to promote themselves, that are at issue in this case:

> Conventioneers [to the Violin Society of America's annual convention in Salk Lake City] were invited to tour the shop and [violin making] school during the week. Violin makers from around the world crowded into Peter Prier & Sons' small, first floor workshop to see John Hatch explain the process of making the Spiccato bow.
>
> As Hatch demonstrated the steps, many of the craftsmen had questions on subject ranging from the bows' centering, to getting the bow out of the mold, to the Spiccato's internationally patented tension-adjusting system. The conversation was jargon-heavy, and the conventioneers examined the revolutionary new bow with discriminating eyes.
>
> * * *
>
> A violin-maker from Chicago stumped Hatch with a question about why the Spiccato uses kevlar rather than silk for the adjustment system. But Hatch's brother-in law, Paul Prier, happened to be passing through and answered the question satisfactorily.
>
> Paul Prier, son of Peter Prier, could be America's foremost authority on the Spiccato bow. He spent 20 months in France studying with its inventor, Benoit Rolland, and the Priers' shop in Salt Lake City is the only place outside of Rolland's in France that makes the Spiccato.

The Supreme Judicial Court has held that the fiction of corporate separateness should be disregarded when:

> a) [T]here is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship, or b) where there is a confused in intermingling of activity of two or more corporation engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporation and their respective representatives are acting.

My Bread Baking Co. v. Cumberland Farms, 353 Mass. 614, 618-19 (1968), quoted in Willis v. American Permac, 531 F. Supp. 118, 122 (D. Mass. 1982).

In the Willis case, Judge Skinner denied motions to dismiss and to transfer an action alleging breach of a patent exclusive license arrangement brought by an individual against two

15

corporations. The Court found that the first defendant, API, was subject to jurisdiction under ch. 223A, Section 3(a). Plaintiff alleged an alter ego theory as a basis for jurisdiction over the second corporate defendant, BOWE. The Court held (Id. at 122):

> In the instant case, the deposition evidence would even more strongly [than the My Bread case quoted above] support an inference that BOWE has exercised significant control over API's activities. BOWE is API's sole stockholder. The two corporations have had significant intermingling of corporate officers and directors. There is evidence that BOWE has on two occasions appointed officers of API with the approval of its board of directors. By agreement BOWE assumed the responsibility for liabilities of API, including the contract with Mr. Willis. BOWE was directly involved in the development of the Willis invention, including assuming responsibility for various aspects of the development process. Under these circumstances, I find that BOWE has actively or directly participated in the affairs of API and had exercised such control of its activities to warrant disregarding the fiction of corporate separateness.

The individual defendants continue to associate themselves with the name, image and reputation of Benoit Rolland to promote themselves and their related businesses today. For example, as recently as January 7, 2004, the website of Peter Prier & Sons Violins, Inc. included a link to "SPICCATO" and to The Bow Making School of America, where Benoit Rolland was listed as a director (emeritus). Exhibit I (**www.prierviolins.com** website as of January 7, 2004 submitted on disk). His name appears there simply so that the Prier family can continue to take advantage of his world-wide reputation.

Likewise under the link for Paul Stewart Prier, the web page as January 2004 states the "continues to teach in the bow-making school with Benoit Rolland." Exhibit B (www.spiccato.com as of January 7, 2004, submitted on disk). Plaintiff Rolland left Salt Lake City for Massachusetts in May 2001 and has had no involvement in the Bow Making School whatsoever since that time. Rolland Declaration, ¶¶ 18-19.

Defendants Paul Prier and Jon Hatch admit they run defendant SFAB and are responsible for the change in the manufacturing process.

Thus, under either the alter ego theory or by showing personal involvement, in the acts complained of, plaintiff has made a strong showing of jurisdiction and defendants motion should be denied. In the alternative, plaintiff has shown the diligence required to be permitted to take juridictional discovery.

The subject matter of the jurisdictional discovery that plaintiff seeks is detailed in the proposed order for discovery originally submitted to defendants' counsel in the course of conferring, and is included in Exhibit 1 to the Certificate of Conference. In general, the subject matter of the requested discovery seeks each of the defendants contacts with Massachusetts personally or on behalf of any of the other defendants for any goods and services, as well as their beneficial interests in and duties and responsibilities for the corporate defendants, all of which tend to show contacts in the forum and aimed at the forum, relating to this cause of action.

In accordance with the discovery compromise reached, plaintiff seeks permission to serve a total of 10 written requests directed to the identified subject matters and take the depositions of the individual defendants, which plaintiff agrees will occur in Utah, for up to four hours each.

Plaintiff has proposed a schedule whereby the discovery would be completed within 60 days of this Order, and plaintiff would file its further brief in opposition to any still-pending motions to dismiss within 10 days thereafter.

Dated: August 23, 2004

_____
Heidi E. Harvey (BBO #548114)
Denis Ticak (BBO #656536)
FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA 02110-2804
TEL: (617) 542-5070

OF COUNSEL:

Robert A. Stein
Robert Stein and Associates, PLLC
One Barberry Lane
Concord, NH 03301
TEL: (603) 228-1109
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of PLAINTIFF'S MEMORANDUM IN SUPPORT OF JURISDICTION AND PRELIMINARY INJUNCTION was served upon the attorney of record for each other party by Federal Express on August 23, 2004.

_____

20920646.doc