UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOÎT ROLLAND<br><br>    Plaintiff,<br><br>vs.<br><br>PETER PRIER & SONS VIOLINS, INC., SPICCATO FRENCH AMERICAN BOWS, INC., PETER PAUL PRIER, PAUL STEWART PRIER, and JON HATCH.,<br><br>    Defendants. | Civil Action Number: 04CV11491 RWZ<br><br>**MEMORANDUM ON BEHALF OF PAUL STEWART PRIER AND JON HATCH IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Defendants Paul Stewart Prier (Paul) and Jon Hatch (Jon) submit this Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction.

## II. STATEMENT OF FACTS

**A. Paul and Jon Have no Jurisdictional Contacts With Massachusetts**

1.     Paul and Jon reside and work in Salt Lake City full time for Spiccato French American Bows, Inc. (SFAB) without assistance from Peter Prier. Since SFAB was formed, Paul has been inactive in PPS. Paul Decl. ¶ 21, Paul Counter Decl. ¶ 5. Jon Decl. ¶ 21. Jon Counter Decl. ¶ 5.[1]

2.     Neither Paul or Jon have ever personally transacted any business of any type in

---

[1] "Paul Decl." refers to the Declaration by Paul Stewart Prier filed on July 30, 2004; "Paul Counter Decl." refers to the Counter Declaration of Paul Stewart Prier, dated September 3, 2004, filed herewith; "Jon Decl." refers to the Declaration by Jon Hatch, filed July 30, 2004; "Jon Counter Decl." refers to the Counter Declaration of Jon Hatch, dated September 3, 2004, filed herewith.

1

Massachusetts. Paul Decl. ¶ 22. Jon Decl. ¶ 22.

3. Neither Paul nor Jon has done anything in Massachusetts for any partnership of for PPS. Paul Supp. Decl. ¶ 3. Jon Supp. Decl. ¶ 3.[2]

4. Paul, within the scope of his authority for SFAB, has caused SFAB to make intermittent sales of synthetic bows into Massachusetts. Paul Supp. Decl. ¶s 5, 23(d). Jon Supp. Decl. ¶ 23(d). All were of good quality made under license from Mr. Rolland. Paul Decl. ¶ 79, Paul Supp. Decl. ¶ 23(aq). Jon Decl. ¶ 79. Jon Supp. Decl. ¶ 23(aq).

5. Jon is not an officer of PPS and has never participated in the business activities of PPS. Paul Counter Decl. ¶ 7.

**B. There Never Was a General Partnership, Mr. Rolland's Misidentification Does Create One and Mr. Rolland Offers Absolutely No Proof of a General Partnership**

6. Mr. Rolland considers shareholders to be partners. Peter Decl. Exhibit "G" ("Concerning the capital of my society [French company, SBR] now I have rejected the parasite partners [proposed shareholders].")

7. It was the intent of Mr. Rolland and PPS to create a U.S. company, not partnership, for synthetic bows.

8. Mr. Rolland first sought 50/50 ownership in the future U.S. company. Because of his pending divorce he later elected against ownership, in favor of a part of the net profits of the new company, as a proclaimed IP licensee.

9. In Salt Lake he was always a W4 employee of independent PPS and

---

[2] "Paul Supp. Decl." refers to the Supplemental Declaration by Paul Stewart Prier, filed on July 30, 2004; "Jon Supp. Decl." refers to the Supplemental Declaration by Jon Hatch, filed on July 30, 2004.

SFAB and a proclaimed licensor of IP, which he didn't own. A percent of net profits, once SFAB became profitable was to be his compensation for the license. Peter Decl. Exhibits "M," "N" and "O" (W4 documents).[3]

10.     The separateness of the Plaintiff, SBR and the Defendants is clearly acknowledged in Peter Decl. Exhibit "P," which also acknowledges that the Salt Lake synthetic bow business was that of SFAB, not a partnership, and that Mr. Rolland was paid "wages" and would be entitled as purported IP licensor to royalties, not from a partnership, but from SFAB.

11.     The recent written proposals by Mr. Rolland to fix in writing the IP compensation to be paid Mr. Rolland, as proclaimed licensor, admit the licensee to be SFAB, not some imaginary partnership. Why else would Mr. Rolland state in Peter Decl. Exhibit "I," "the brand name [SPICCATO] is currently registered with Spiccato French American Bows, Inc., in Salt Lake City?" Note also the following:

(a)     Exhibit "AA," Paul Decl. states in the preamble:

> This Option Agreement is entered into, effective as of the last date written below, or October 3, 2001, whichever first occurs, by and between Benoit M. Rolland, a bowmaker of Extraordinary Ability resident in Boston, Massachusetts (hereinafter, Mssr. Rolland) and Spiccato French American Bows, Inc., a corporation of Salt Lake City, Utah (hereinafter "Spiccato"). Mssr. Rolland and Spiccato agree as follows....

(b)     Exhibit "Y," Paul Decl., which reads:

> INTELLECTUAL PROPERTY RIGHTS AGREEMENT
>
> This AGREEMENT is made and is effective as of _____ by and between Benoit Rolland & la Societe Benoit Rolland [SBR], having a principal address at 4, RUE DU General Weygand, 56037 VANNES,

---

[3] "Peter Decl." refers to the Declaration by Peter Paul Prier, filed on July 30, 2004.

>France, hereinafter referred to as "LICENSOR", and Spiccato French American Bows, Inc., having a principal place of business at 308 East 200 South, Salt Lake City, Utah 84111, hereinafter referred to as "LICENSEE".

Exhibit "BB," Paul Decl., prepared by current legal counsel for Mr. Rolland and acknowledges not only the separateness of SFAB and PPS, but that SFAB us the successor of PPS 1997 synthetic bow rights:

>2.      The parties to this Agreement are Spiccato French-American Bows Inc., a corporation existing under the laws of State of Utah with a principal place of business in Salt Lake City, Utah ("SFAB"), successor in interest with respect to the subject matter of this Agreement to Peter Prier & Sons Inc., a corporation existing under the laws of State of Utah with a principal place of business in Salt Lake City, Utah (PP&S"), and Benoit Rolland, an individual residing at 21 Prescott Street, Charlestown, Massachusetts 02129 ("Rolland"). SFAB and PP&S are sometimes referred to in this Agreement collectively as "Priers."

12.     Mr. Rolland submits no evidence of any such partnership because there is no evidence. Mr. Rolland knows his alleged partnership is a fantasy.

13.     For the phantom partnership there is: no organizational activities, including but not limited to written organizational documents; no sales; no employees, agents or representatives; no tax identification number; no employee, agent, consultant or representative; no bank accounts; no receivable or payable invoice; no payment of any type; no income of any type; no literature or advertising material of any type; no real estate ownership or lease; no vehicle ownership or lease; no personal property ownership or lease; no tax returns; no telephone number; no facsimile number; no email address; and no domain name registration.

14.     The synthetic bows from SFAB are of excellent quality, which quality has never been higher. There is no reputation injury to Mr. Rolland.

15.     Mr. Rolland's synthetic bow reputation, though mixed, is irrelevant because he

does not own and never owned the B. ROLLAND, BENOIT ROLLAND and image trademarks. However, Mr. Rolland's admissions in his declaration, while inflated, shows that his appraisal of his overall reputation remains excellent. Mr. Rolland presents no facts which lend support to his marked claim of reputation injury. The purported injury, if any, is based upon SFAB's multi-cavity mold technology, which Mr. Rolland helped create and fully approved in 2000/2001, and is not newly discovered information. See, Baroldy Decl.[4]  Since Mr. Rolland does not make synthetic bows, there is no competition, no unfair competition and no likelihood of public confusion of synthetic bows from two sources as being from one source. Mr. Rolland's admitted IP license is immunity from a Lanham Act § 43(a) cause of action.

### III. ARGUMENT

A.  **Much of the Plaintiff's Requested Injunctive Relief is Moot**

For the reasons set forth in Section A of III. Argument of the MEMORANDUM ON BEHALF OF PETER PAUL PRIER AND PETER PRIER & SONS VIOLINS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, much of Plaintiff's requested injunctive relief is moot.

B.  **Where Jurisdiction is Lacking, as Here, There is No Authority to Enjoin**

The Plaintiff presents absolutely no facts showing a personal jurisdictional presence in Massachusetts by either Paul or Jon. There are no such facts. See Facts 1-5, above.

The lack of personal jurisdiction as to Paul and Jon is analyzed in detail in the Memoranda in Support of Motion to Dismiss as to Paul and as to Jon for Lack of Personal

---

[4] "Baroldy Decl." refers to the Declaration of Lee Baroldy, dated September 7, 2004, filed herewith.

Jurisdiction on file with the Court and incorporated herein by reference.

It is axiomatic that personal jurisdiction over a party is essential before the Court is empowered to issue preliminary injunctive relief and no personal jurisdiction exists over Paul and Jon.

**C.  Mr. Rolland, Lacking Trademark Ownership and the Right to Control Quality, is Not Entitled to Any Injunctive or Other Preliminary Relief.**

For the reasons set forth in III. ARGUMENT, Section C of the MEMORANDUM ON BEHALF OF PETER PAUL PRIER AND PETER PRIER & SONS VIOLINS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, Mr. Rolland does not own the asserted trademark rights and is not entitled to a preliminary injunction.

**D.  SFAB's Quality Has Never Been Better**

For the reasons set forth in III. ARGUMENT, Section D of the MEMORANDUM ON BEHALF OF PETER PAUL PRIER AND PETER PRIER & SONS VIOLINS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, the quality of defendant SFAB's bows has never been better.

**E.  Mr. Rolland Knows There Was No General Partnership, but Alleges One Anyway**

Mr. Rolland's proclamation that somehow a general partnership exists involving all parties as partners is entirely without factual support and void of any bona fide legal recognition.

Mr. Rolland, while in France, did not operate in a personal capacity. Rather, SBR, a French company, made and sold synthetic and wooden bows and Mr. Rolland ran the company through the entire relevant period of 1992 to 1999, at which time SBR discontinued doing business.

The user and owner in France of the trademarks SPICCATO, ARPÉGE, B. ROLLAND, BENOIT ROLLAND and Mr. Rolland's image for synthetic (and wooden) bows was SBR, not Mr. Rolland personally.

PPS/SFAB purchased all of the assets of SBR. Ownership of the above-identified five trademarks were, by operation of law, part of the asset purchase. However, Mr. Rolland falsely claimed ownership and PPS/SFAB, in innocent ignorance, believed, accepted and relied upon this misrepresentation. In any event, Mr. Rolland gave PPS/SFAB his consent (license) to exclusive use of these five trademarks on and in conjunction with synthetic bows.

Since SFAB acquired ownership of the five trademarks from SBR and Mr. Rolland claims on going ownership, these trademarks could not have been Mr. Rolland's contribution to a partnership.

Accepting Mr. Rolland's misrepresentations for purposes of analysis, PPS/SFAB received an exclusive license to use the five trademarks on synthetic bows. The trademarks, even if owned by Mr. Rolland, were not capital contributions to a partnership, which would require transfer of ownership from Mr. Rolland to the partnership (an event that never took place).

From 1993-September 1997, the only relevant relationship was purchase of synthetic bows by PPS from SBR. No partnership from 1993 to September 1997.

In December 1997, in anticipation of Mr. Rolland's promised arrival in Salt Lake, SFAB was incorporated in Utah and PPS transferred all of its synthetic bow rights to SFAB and discontinued PPS's involvement in synthetic bows. After that, SFAB, to the exclusion of PPS, made and sold synthetic bows with full approval of Mr. Rolland. However, Mr. Rolland did not arrive as promised at the end of 1997. He remained in France, operating SBR, until October 1999. No indication of a partnership from December 1997 to October 1999.

When Mr. Rolland was in Salt Lake from October 1999 until Spring 2000 and from October 2000 until May 2001, he concerned himself with the wooden bow making school of PPS and did not materially assist in or contribute to carrying on the business of SFAB in making and selling of synthetic bows, except he was a co-designer of the multi-cavity molding technology, which met with his approval. There was no indication of a partnership from October 1999 to Spring 2000, October 2000 to May 2001, nor from Spring 2000 to October 2000, when Mr. Rolland temporarily returned to France for the summer. No indication of a partnership from October 1999 to May 2001.

When Mr. Rolland moved from Salt Lake to Boston in about May 2001, he was no longer involved as a W4 employee of the PPS wooden bow making school, nor in any way with SFAB. He completely separated himself from SFAB, except to demand money. No indicia of a partnership from May 2001 until the present suit.

While there never was a partnership (and Mr. Rolland knows there was not), had there been one, it would have been a Utah partnership, governed by Utah Code Annotated (U.C.A.) 48-1-1 et. seq.

U.C.A. 48-1-3 defines a partnership as "an association of two or more persons [with a common intent] to carry on as co-owners of a business for profit," while U.C.A. 48-1-3.1 differs by one word in its definition of a joint venture as "an association of two or more persons to carry on as co-owners of a single business." U.C.A. 48-1-5 would have vested ownership of the five trademarks and Mr. Rolland's patents in the partnership, had such really been Mr. Rolland's capital contribution, i.e. "[a]ll property originally brought into the partnership...is partnership property."

8

On that basis, the trademark and patent ownership would have been vested in the partnership, which would disable or deprive Mr. Rolland of all causes of action set forth in the Complaint, except dissolution and accounting, and would leave Mr. Rolland with his share of partnership profits, once the synthetic bow business becomes profitable. So Mr. Rolland's claim of a general partnership renders impotent virtually all of his asserted causes of action, as those causes of action, if they exist, are owned by the partnership. In this regard, see U.C.A. 48-1-22 causing each partner to be a "co-owner with his partners of specific partnership property [each] holding [it] as a tenant in partnership."

Indicia of a Utah general partnership as provided by statute and Mr. Rolland's disqualifications in respect thereto are:

| **Indicia** | **Mr. Rolland** |
|---|---|
| All parties have equal rights in management and conduct of partnership business. U.C.A. 48-1-15(5). | No involvement at all in the day-to-day management and conduct of synthetic bow business in Salt Lake City. |
| No remuneration to one who is a partner. U.C.A. 48-1-15(6). | Mr. Rolland was remunerated on a W4 basis. |
| Each partner must have the affirmative consent of all the other partners before becoming a member. U.C.A. 48-1-15(7). | None of the other alleged partners (i.e. each Defendant) affirmatively consented to Mr. Rolland being a co-owning partner in any synthetic bow business. |
| Differences on ordinary matters require majority vote of the partners. U.C.A. 48-1-15(8). | There were no votes involving Mr. Rolland on synthetic bow matters where his view may have been different from the views of Paul and Jon. |
| The partnership must keep books at its principal place of business. U.C.A. 48-1-16. | There are no partnership books and no principal place of any partnership business. |

| | |
|---|---|
| There must be an intent by all parties to associate as co-owners. U.C.A. 48-1-1. | There never was an intent by all alleged partners to form a partnership nor to be co-owning partners of a partnership. |
| The formation of a corporation (SFAB) precludes a partnership ("An association [SFAB] formed under any other statute of this State [Utah Corporation Code]...is not a partnership"). U.C.A. 48-1-3(2). | Mr. Rolland fully acquiesced to the incorporation of SFAB, consented to SFAB doing the synthetic bow business and sought contract with and compensation from SFAB, which statutorily precludes the business of SFAB from being treated as a partnership. |

Indicia of a Utah general partnership as provided by case law [*Johnson Brothers Builders et. al. v. Board of Review, Industrial Commission et. al*, 118 Utah 384, 222 P.2d 563 (Utah S.Ct. 1950)] and Mr. Rolland's disqualifications in respect thereto are:

| **Indicia** | **Mr. Rolland** |
|---|---|
| Must be an intent to create a partnership. | There is no evidence of intent of Plaintiff and all five Defendants to create a partnership business. |
| Each partner (co-owner) has a right and responsibility to manage and conduct business | Mr. Rolland never at any time helped manage or conduct synthetic bow business in Salt Lake. |
| Each partner (co-owner) has some voice and right to be heard in partnership matters. | Mr. Rolland separated himself from the Salt Lake synthetic bow business and did not participate during the 16-17 months he was in Salt Lake. During the 63-64 months he was not in Salt Lake during manufacturing he did not participate. |
| Ownership of partnership property must be in the name of the partnership | Mr. Rolland never put his claimed IP into the partnership as his capital contribution. |
| Distribution to each partner as a co-owner is limited to his or her share of profits. | Mr. Rolland claims a royalty from IP, not a net distribution of a share of the profits. |
| Each partner (co-owner) has a right and responsibility to enter into contracts by which the partnership is bound. | Mr. Rolland never has and never claims to have authority to bind the Salt Lake synthetic bow business. |

10

| | |
|---|---|
| A separate partnership bank account is to be maintained. | There never was a partnership bank account. |
| Each partner must have the right to deposit money and sign checks drawn on the bank account. | Mr. Rolland had no authority to deposit funds nor to write checks on any Salt Lake business bank account. |
| If one is an employee, he or she is not a partner (co-owner). | Mr. Rolland was paid W4 wages, precluding him from being a partner. |
| A partner's income must be a share of net profits. | Again, W4 payments are not a share of net profits. |
| A partner is chargeable for losses (debts). | Mr. Rolland never shared losses or debts- no K1 returns and no partnership debt payment by Mr. Rolland. |

All of the factual indicators present in the relationship here likewise defeat Mr. Rolland's baseless contention that a general partnership was created by a mutual intent to do so. These factual indicators are: no organizational activities, including but not limited to written organization documents; no sales; no employees, agents or representatives; no tax identification number; no employee, agent consultant or representative; no bank accounts; no receivable or payable invoice; no payment of any type; no income of any type; no literature or advertising material of any type; no real estate ownership or lease; no vehicle ownership or lease; no personal property ownership or lease; no tax returns; no telephone number; no facsimile number; no email address; and no domain name registration.

Mr. Rolland's groundless assertion of a general partnership should be recognized for what it is, a fiction, and discarded forthwith as being without merit.

### F. Mr. Rolland Satisfies None of the Four Elements Required for a Preliminary Injunction

In all federal circuit courts, the movant for a preliminary injunction bears the burden to show: (1) the movant is likely to prevail at trial; (2) the movant is suffering actionable

irreparable harm; (3) balance of the interests of the parties favors the movant; and (4) public policy favors the movant.

For the reasons stated above, the movant, Mr. Rolland, is not likely to prevail at trial and has not and is not sustaining any actionable irreparable harm because he does not own the trademarks, never had a right to control quality or, if he did, he forfeited the right by failure to exercise it, he consented to (licensed) all IP uses exercised by SFAB, which is immunity from infringement, the quality of the SFAB synthetic bows is exceptional and better than the quality in France which is the bench mark, and Mr. Rolland admits, in his self-serving Declaration. that his excellent reputation remains intact.

In balancing the interest of the parties, the scale weighs heavily in favor of the Defendants. SFAB has in good faith been funded in excess of one-half million dollars and has operated for about six and one-half years, has a growing business expected to be profitable in the near term and has been and is being victimized by Mr. Rolland's lies and manipulations.

Public policy can not be said to ever endorse or favor the destruction of a company (SFAB) existing for six and one-half years using technology and IP purchased from SBR and licensed from Mr. Rolland, which he claims to own, where Mr. Rolland now attempts in bad faith to repudiate his earlier approval of SFAB's multi-cavity technology, which Mr. Rolland co-designed and approved, falsely misrepresenting to the Court that he only recently learned of the multi-cavity technology.

### **IV. BOND**

If any form of preliminary relief sought by Mr. Rolland in his proposed order is granted by the Court, it should be accompanied by a $2 million bond from Mr. Rolland to later make SFAB whole.

## V. CONCLUSION

For the reasons presented above, no preliminary relief in favor of Mr. Rolland and against Paul or Jon should be granted.

DATED this 17th day of September, 2004.

        Respectfully Submitted,
        PETER PRIER & SONS VIOLINS,
        INC., et al.
        By their attorneys,

        __/s/ John L. DuPré_____
        John L. DuPré (BBO #549659)
        Mary K. Murray (BBO #654194)
        Hamilton, Brook, Smith & Reynolds, P.C.
        530 Virginia Road
        P.O. Box 9133
        Concord, MA 01742-9133
        Telephone: (978) 341-0036
        Attorneys for Defendants

Of Counsel:

Lynn G. Foster
Law Offices of Lynn G. Foster, L.C.
602 East 300 South
Salt Lake City, Utah 84102
Tel. (801) 364-5633
Fax (801) 355-8938

CERTIFICATE OF SERVICE

    I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on September 17, 2004.

                                                        \_\_\_\_\_/s/ Mary K. Murray_____
                                                           Mary K. Murray

@PFDesktop\::ODMA/MHODMA/HBSR05;iManage;499984;1