UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOÎT ROLLAND <br><br>     Plaintiff, <br><br> vs. <br><br> PETER PRIER & SONS VIOLINS, INC., SPICCATO FRENCH AMERICAN BOWS, INC., PETER PAUL PRIER, PAUL STEWART PRIER, and JON HATCH., <br><br>     Defendants. | Civil Action Number: 04CV11491 RWZ <br><br> **MEMORANDUM ON BEHALF OF SPICCATO FRENCH AMERICAN BOWS, INC.  IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

Defendant, Spiccato French American Bows, Inc. (SFAB) submits this Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction.

## II. STATEMENT OF FACTS

### A.  Manufacture of Synthetic bows in Salt Lake by SFAB

#### 1.)  SFAB's Initial Synthetic Bow Business

1.    Expecting Mr. Rolland to arrive, SFAB was formed in December 1997. Peter Decl. ¶ 47, Peter Supp. Decl. ¶ 14(o) and Exhibit "BB."[1]

2.    PPS stopped its synthetic bow business of four months and transferred its synthetic bow rights to SFAB, when SFAB was organized. Peter Decl. ¶ 38 and Exhibit "V."

3.    Because Mr. Rolland was absent from Salt Lake City he could not have been a

---

[1] "Peter Decl." refers to the Declaration by Peter Paul Prier, filed on July 30, 2004; "Peter Supp. Decl." refers to the Supplemental Declaration by Peter Paul Prier , filed on July 30, 2004.

participating partner nor in control of quality. SFAB manufactured and sold synthetic bows in Salt Lake from December 1997, until October 1999, without Mr. Rolland. The methodology of SBR and SFAB were the same during this period of time and had the same quality assurance problems. SFAB's bow quality was better, but had the same type of defects and returns. Mr. Rolland never controlled SFAB's quality during this time and never complained about the level of quality.

4.     The synthetic bow business has been done exclusively by SFAB since December 1997, with Mr. Rolland's consent, to the exclusion of Peter, PPS, Paul and Jon. Peter Decl. ¶ 27 and Peter Supp. Decl. ¶ 14(p).

5.     Financially troubled, SBR closed the Summer or Fall of 1999. Peter Decl. ¶ 48, Peter Supp. Decl. ¶ 14(q) and Exhibit "BB."

**2.)  SFAB's Trademarks**

6.     Mr. Rolland asserts several falsehoods, e.g. his claim of ownership of the trademarks. Rolland Decl. ¶ 17.[2]

7.     Mr. Rolland misrepresented to PPS and SFAB that he owned "all the intellectual property," e.g. SPICCATO, ARPÉGE, B. ROLLAND, BENOIT ROLLAND and Mr. Rolland's image for synthetic bows (herein "the trademarks"). Rolland Decl. ¶ 17 and Peter Supp. Decl. ¶ 14(ba). Paragraph 2 of the Complaint falsely claims Mr. Rolland is the owner of the French registration of SPICCATO.

8.     With a lack of IP expertise, PPS and SFAB accepted and relied upon Mr.

---

[2] "Rolland Decl." refers to the Declaration by Benoît Rolland, filed on August 23, 2004.

Rolland's misrepresentation of trademark ownership. Peter Counter Decl. ¶s 18 and 19.[3]

9.     Trademark rights are acquired by the user through use. A shareholder does not own the trademarks of the company. The users were SBR and PPS/SFAB. Peter Supp. Decl. ¶ 14(ag).

10.     SBR used the trademarks in France, not Mr. Rolland. SPICCATO was registered by its user and owner, SBR, in France. Peter Supp. Decl. ¶s 10, 14 (av), 14(bp), Exh. "W." Peter Counter Decl. ¶ 21.

11.     Mr. Rolland owned 55% and PPS 45% ( for a $40,000.00 investment) of SBR when SBR stopped business. Peter Counter Decl. ¶ 21.

12.     Mr. Rolland purchased no asset from SBR, including trademarks.

13.     PPS/SFAB purchased all or substantially all of the assets of SBR, which transferred the trademarks to PPS/SFAB. PPS/SFAB realized this only recently. Peter Counter Decl. ¶ 24.

14.     PPS/SFAB's asset purchase  from SBR is documented in writing. Mr. Rolland, as manager of SBR, did not silently or secretly obtain any asset at the close of SBR's business. Peter Supp. Decl. ¶ 14(av) and Exhibit "W."

15.     Mr. Rolland only owns the U.S. and foreign patents on the adjustment mechanism at the proximal end of the SPICCATO bow, which patents should have been assigned to SBR. Peter Counter Decl. ¶ 20 and Exhibit "13."

16.     Mr. Rolland, concealing his lack of IP ownership, was the proclaimed IP licensor

---

[3] "Peter Counter Decl." refers to the Counter Declaration of Peter Paul Prier, dated September 2, 2004, filed herewith.

exclusively first to PPS and then SFAB. Peter Supp. Decl. ¶ 14(g).

17.     SBR was the user/owner/registrant of SPICCATO in France. Peter Counter Decl. ¶ 22 and Exhibit "14."

18.     Mr. Rolland never owned the SPICCATO mark (Peter Supp. Decl. ¶ 14 (au) and Exhibit "BB").  Mr. Rolland nevertheless quit claimed the mark SPICCATO to SFAB. Peter Supp. Decl. ¶ 14 (aj), Peter Decl. Exhibit "L," Peter Counter Decl. ¶ 23, Exhibit "13" and Exhibit "15."

19.     Mr. Rolland authorized SFAB to register SPICCATO in the U.S. and, thereafter inexplicably opposed registration. Peter Decl. Exhibit "L" and Peter Supp. Decl. ¶ 14(af).

20.     Mr. Rolland never personally owned ARPÉGE, as it was used by SBR and PPS/SFAB. Peter Supp. Decl. ¶s 14(as) and 14(at).

21.     Mr. Rolland, as the proclaimed IP licensor (Peter Supp. Decl. ¶ 14(ag)), exclusively licensed all SBR's trademarks to PPS/SFAB, i.e. "the exclusive patent and trademark rights" Complaint ¶ 80. Peter Supp. Decl. ¶s 14(b), 14(g), 14(ba), 14(bi) and Peter Decl. ¶s 28 and 61.

22.     Mr. Rolland feigns  a lack of quality (where SFAB's quality is higher than ever), to gain a return of an exclusive right to use his name, among other things. Peter Decl. ¶ 37 and Exhibit "T" ("I  will recover the exclusive use of my name").

23.     "Plaintiff Rolland permitted the Defendants [PPS/SFAB] to use his name and likeness in association with...SPICCATO and ARPÉGE bows." (Complaint ¶ 44), even though these trademarks for synthetic bows were owned through use by SBR and not Mr. Rolland.

24.     PPS/SFAB once believed use of B. ROLLAND and BENOIT ROLLAND on

synthetic bows would enhance sales. Peter Decl. ¶ 32. Mr. Rolland insisted that his name be on

the synthetic bows and on related literature of SFAB. Peter Decl. ¶s 33, 35, Exhibits "R" and

"S."

25.     Mr. Rolland provided a template with "B. Rolland" and "Paris" on it and

mandated its use by SFAB on synthetic bows. Peter Decl.  ¶ 36 and Exhibit "S," last page.

26.     Use of Mr. Rolland's name, resumé and image on the prierviolins.com and

spiccato.com websites was mandated by Mr. Rolland. Mr. Rolland fully cooperated and approved

in supplying information to be listed on these websites and did not ask for deletion until this suit.

Peter Counter Decl. ¶ 27, Exhibits "19" and "20," Peter Supp. Decl. ¶s 14(b), 14(z), 14(aw),

14(bi), Exhibits "S" and "W."

27.     Mr. Rolland perpetrated a further fraud on the U.S. Trademark Office (USTO),

claiming he personally used and owned BENOIT ROLLAND and B. ROLLAND on bows in

France and the U.S. when it was SBR and PPS/SFAB. Foster Decl. Exhibits "A" and  "B."[4]

**3.)  Quality Control**

28.     Mr. Rolland has no quality control (QC) right because the right of QC is vested in

the trademark owner (SBR in France and PPS/SFAB in the U.S.).

29.     Because successor SFAB's quality need only equal the quality of SBR's synthetic

bows, substantial evidence of SBR's quality standard has been provided, i.e.:

(a)     SBR, over three years, had about 250 defective synthetic bows in its

"museum" of rejects ($350,000 value). Peter Counter Decl. ¶ 39(a).

---

[4] "Foster Decl." refers to the Declaration of Lynn G. Foster, dated September 13, 2004,
filed herewith.

(b)     the "museum" rejects were caused by Mr. Rolland's lack of expertise in molding and resins, and SBR's lack of financial ability. Peter Counter Decl. ¶ 39(b).

(c)     SBR had substantial synthetic bow defects, including warpage. Peter Supp. Decl. ¶ 14(z), Exhibit "CC," Peter Counter Decl. ¶s 39(c) and 14(aq). A compound camber, as with a bow at Johnson's, is not warpage and is preferred by some players. Peter Counter Decl. ¶s 35, 36 and Exhibit "24A."

(d)     A French made SBR defective synthetic bow was referred recently to SFAB from the player in Europe for replacement. Peter Counter Decl. ¶ 39(d) and Exhibit "25A."

(e)     Exhibit "25," Peter Counter Decl., provides evidence that defective French SBR synthetic bows was commonplace. Peter Counter Decl. ¶39(e).

30.     The single cavity molding process purchased by PPS/SFAB from SBR was imprecise, not cost effective and not profitable. SBR's resin was highly toxic. Peter Counter Decl. ¶s 39 (f) and 39(i).

31.     With the help and approval of Mr. Rolland, multi-cavity technology was designed in 2000 or 2001, and the resin was changed for profitability and safety purposes. Peter Counter Decl. ¶s 39(j) and 39(k). Mr. Rolland's claim of only recently learning of SFAB's multi-cavity technology is patently false. See Rolland Decl. ¶s 24-31.

32.     The Decl. of Lee Baroldy is provided showing Mr. Rolland's multi-cavity involvement. Mr. Baroldy states:

6

7.      In the early phases of the design of the multi-cavity mold for SFAB, on June 14, 2000, I sat with Benoit Rolland and Paul Prier in front of my assigned design computer (according to my documents. There may have been at least one other time but my records do not list names at an earlier date. I have a very detailed file that will give exact names, dates, and those present but I have not been able to locate it yet). Mr. Rolland actively pointed out the parts of the master bow he built that needed to be reproduced by me. There were areas on his hand-made master bow that he preferred on one side over the other side and he assisted me in listing the areas of each side that were best and that I should make every attempt to capture in the mold. He recognized the fact that I could make the bow data perfectly symmetrical using the best areas of the bow. Mr. Rolland knew the multi-cavity mold was being designed and would be fabricated for use by SFAB in the production of synthetic bows, in lieu of the single cavity mold system earlier in use. Mr. Rolland was cooperative, helpful as an active participant, a co-designer, the designer of the "master" bow, and made no objection. Mr. Rolland was to review the bow prototypes as they were produced.

Baroldy Decl. ¶ 7.[5]  See also, Peter Counter Decl. ¶ 33 and Exhibit "22."

33.     Being a co-designer of the multi-cavity technology and a reviewer of prototypes in 2000/2001, Mr. Rolland can not be heard to say he recently discovered the multi-cavity technology or that use was not approved by him.

34.     Mr. Rolland never had a legal right to control the quality of SFAB's bows because he was never the trademark owner. Peter Supp. Decl. ¶s 14(as), 14(au), Exhibit "BB," Peter Counter Decl. ¶ 31 and Exhibit "21."

35.     Even if it were determined that Mr. Rolland had some right to control SFAB's quality, it was not exclusive. Peter Supp. Decl. ¶s 14(z), 14(bp) and Exhibit "CC."

---

[5] "Baroldy Decl." refers to the Declaration of Lee Baroldy, dated September 7, 2004, filed herewith.

36.    Any right to control SFAB's quality was forfeited and waived because control was never meaningfully exercised by Mr. Rolland. Mr. Rolland was in Salt Lake only 16-17 months of 80 months of Salt Lake manufacture. During these 16-17 months he taught in the PPS bow making school and did little in SFAB. He conceded the synthetic bows from SFAB were of higher quality than SBR's. Peter Counter Decl. ¶s 40, 41, 42 and Peter Supp. Decl. ¶ 14(z). Mr. Rolland never complained of lack of quality while in Salt Lake. Peter Decl. ¶ 47, Peter Supp. Decl. ¶s 14(as), 14(au), 14(bp) and Peter Counter Decl. ¶s 32 and 38.

37.    Mr. Baroldy attests to the high quality.

> Absolutely, the quality of bows produced by SFAB with the multi-cavity mold Mr. Rolland helped design is and always will be higher than the quality of bows produced in the single cavity compression molds used earlier by SFAB.

Baroldy Decl. ¶ 8.

38.    Mr. Rolland's "high quality and right to control" position was concocted in Boston. Peter Counter Decl. ¶ 43.

39.    Mr. Rolland never personally possessed good will because good will is inseparably limited to the trademarks. Peter Decl. ¶ 67, Peter Supp. Decl. ¶ 14(j) and 14(au).

40.    Peter Prier, an expert in string instruments, after Mr. Rolland's claim of poor quality, inspected and used the SFAB synthetic bows and found them excellent to play a violin. Peter Counter Decl. ¶ 30.

41.    Mr. Rolland never had a right to control the advertising of SFAB nor did he ever attempt to do so. Peter Supp. Decl. ¶ 14(az).

42.    In fact, SFAB's quality in Salt Lake is excellent and much better than at SBR in

France. Peter Decl. ¶ 65. Baroldy Decl. ¶ 8.

**B.  Mr. Rolland is Not Entitled to Any Equitable Relief**

43.    Mr. Rolland's misrepresentations of trademark ownership, a right to control SFAB's quality, false statements as to present bows and that he only recently learned of SFAB's multi-cavity mold technology when he knew in 2000/2001, means he has failed to practice equity and should be denied equitable relief.

**C.  Self Help Reduction of Injunctive Relief**

44.    Because use of the name and image of Mr. Rolland is not commercially important and for other reasons, SFAB and PPS have discontinued all previously approved references to Benoit Rolland and his image, including relinquishment of unused domain names, removal from both websites, removal from literature and removal from SFAB's synthetic bows. This eliminates all injunctive issues set for hearing, except for endorsements, which are not the property of Mr. Rolland. Peter Supp. Decl. ¶s 14(an), 14(ao), 14(ax), 16, 17, Peter Counter Decl. ¶s 28, 29 and 57.

45.    As all uses of Benoit Rolland, B. Rolland and his image  were approved and lawful, Mr. Rolland has behaved inequitably and because phase out of such uses by dealers will inevitably follow the discontinuance identified above, the notice to third parties sought by Mr. Rolland should be denied. It would inequitably harm the ability of SFAB to expand its business and reach profitability.

**D.  Preliminary Injunctive Relief is Precluded by Mr. Rolland's Long Delay**

46.    Mr. Rolland complains concerns bows produced with SFAB's multi-cavity mold technology, which he co-designed and approved three or more years ago. Given the long delay in

seeking preliminary injunctive relief, this remedy is no longer available.

**E.  If Enjoined, SFAB Would Be Out of Business**

47.    SFAB has on going business under a purported IP license from Mr. Rolland. It has orders, customers, employees and work in progress. Without objection until now, SFAB has done its business for seven years. If enjoined in any way for any reason, SFAB, which is becoming profitable but has yet to make a profit, will become insolvent and will lose all or some of its customer base and its outstanding reputation in the field will suffer injury, a form of reverse irreparable harm.

48.    No injunction should issue because of Mr. Rolland's bad faith and misrepresentation to the Court and the USTO.

### III. ARGUMENT

**A.  Much of the Plaintiff's Requested Injunctive Relief is Moot**

For the reasons set forth in Section A of III. Argument of the MEMORANDUM ON BEHALF OF PETER PAUL PRIER AND PETER PRIER & SONS VIOLINS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION much of Plaintiff's requested injunctive relief is moot.

**B.  Where Jurisdiction is Lacking, as Here, There is No Authority to Enjoin**

The Plaintiff presents insufficient facts showing a general or specific personal jurisdictional presence in Massachusetts by SFAB.

The lack of personal jurisdiction as SFAB is analyzed in detail in the Memoranda in Support of Motion to Dismiss as to SFAB for Lack of Personal Jurisdiction on file with the Court and incorporated herein by reference.

10

It is axiomatic that personal jurisdiction over a party is essential before the Court is empowered to issue preliminary injunctive relief and no personal jurisdiction exists over SFAB.

**C.  Mr. Rolland, Lacking Trademark Ownership and the Right to Control Quality, is Not Entitled to Any Injunctive or Other Preliminary Relief.**

For the reasons set forth in III. ARGUMENT, Section C of the MEMORANDUM ON BEHALF OF PETER PAUL PRIER AND PETER PRIER & SONS VIOLINS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION Mr. Rolland does not own the asserted trademark rights and is not entitled to a preliminary injunction.

**D.  SFAB's Quality Has Never Been Better**

For the reasons set forth in III. ARGUMENT, Section D of the MEMORANDUM ON BEHALF OF PETER PAUL PRIER AND PETER PRIER & SONS VIOLINS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION the quality of defendant SFAB's bows has never been better.

**E.  Mr. Rolland Knows There Was No General Partnership, but Alleges One Anyway**

For the reasons set forth in III. ARGUMENT, Section E of the MEMORANDUM ON BEHALF OF PAUL STEWART PRIER AND JON HATCH IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION there was no general partnership and Mr. Rolland knows that.

**F.  Injunctive Relief Must be Denied Because Mr. Rolland is Estopped to Deny SFAB the Right to Continue Use of the Marks**

Mr. Rolland mandated the use of all marks in question on synthetic bows made in Salt Lake City and on related advertising, beginning in September 1997. Exhibits "I" and "Q," Paul

11

Decl.[6]

Apart from the issue of ownership, Mr. Rolland is estopped to deny SFAB the ongoing

right to use all of the marks at issue, including  his name and image, on bows and advertising

therefor. McCarthy on Trademarks, § 13-2, @ 13-6 states:

> ...a person who acquiesces in the use of his name by another is
> estopped years later from claiming the name as a proprietary
> trademark after the name has acquired a secondary meaning
> identifying the products of that other person. [*Jako v. Pilling Co.*,
> 670  F.Supp.  1074, 6 U.S.P.Q.2d 1478 (D. Mass, 1987), aff'd in
> part and rev'd in part, vacated in part, 848 F.2d 318, 7 U.S.P.Q.2d
> 1172 (1st Cir. 1988) (A physician who acquiesced in defendant's
> use of plaintiff's personal name for a medical instrument plaintiff
> helped design (Jako Laryngoscope) cannot years later reappropriate
> his surname once it has acquired a secondary meaning identifying
> the defendant's products.)]

Acquiescence, as here, applies and is statutory. 15 U.S.C. § 1115(9).

**G.  Mr. Rolland's Quality Control Assertions are a Ruse and an Injunction For Lack of
Sufficient Quality Should Not be Granted.**

As a non-trademark owner, Mr. Rolland has no right to control the quality of the synthetic

bows made by SFAB in Salt Lake City and he never did, in fact, exercise such control.

Paul Supp. Decl. ¶ 23(bd).[7]

The Salt Lake factory started business in September 1997. Mr Rolland was absent from

Salt Lake City from mid-1997 until October 1999, and from May 2000 until October 2000, and

not at all after May 2001.  Paul Supp. Decl. ¶ 23(z).

---

[6] "Paul Decl." refers to the Declaration by Paul Stewart Prier, filed on July 30, 2004.

[7] "Paul Supp. Decl." refers to the Supplemental Declaration by Paul Stewart Prier, filed
on July 30, 2004.

While Mr. Rolland's claims to trademark ownership and the right to control quality are disingenuine, if he had such ownership rights, he has extinguished them by, in fact, failing to control quality.

Judge Posner, in *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 10  U.S.P.Q.2d 1762,1764 (7th Cir. 1989), states:

> The owner [pretended owner here] of a trademark has a duty to
> ensure the consistency of the trademark good or service. If he does
> not fulfill this duty, he forfeits the trademark...

Furthermore, the quality of synthetic bows by SFAB is excellent and better than the quality of synthetic bows made by SBR in France.

Defective synthetic bows made by SBR was an early and continuing problem, resulting over three years in about $350,000 of defective bows in SBR's French "museum". This is uncontroverted.

Mr. Rolland admitted the quality of the SFAB bows, made using the old SBR method, to be better than those made by SBR using the same method in France. Once the multi-cavity technology was adopted with the assistance and approval of Mr. Rolland, the resulting SFAB synthetic bows were even better.

See McCarthy, §18:55 @ 18-94.2, which states:

> It is important to keep in mind that "quality control" does not necessarily
> mean that the licensed goods or services must be of "high" quality, but
> merely of equal quality, whether that quality is high, low or middle.

**H.  Undue Delay Precludes Any Form of Preliminary Injunctive Relief**

Mr. Rolland, in 2000/2001, was an activity participant, indeed a co-designer, of the multi-cavity technology. Yet he falsely claims he just learned of the multi-cavity technology, which he, in bad faith, claims produces lower quality synthetic bows, when high quality bows are produced.

In any event, the passage of three to four years since Mr. Rolland helped design the new multi-cavity technology and the two years during which synthetic bows have been produced using the multi-cavity technology constitute undue and unacceptable delay, precluding injunctive relief.

Mr. Rolland can not argue tolling, since, if he really was the owner of the trademarks, he had a duty to continuously control and affirmatively supervise quality on an on going basis. Had Mr. Rolland discharged this duty to supervise quality, he would have been fully and continuously informed of the quality of synthetic bows made using the multi-cavity technology. Knowledge and approval as to the quality of the multi-cavity bows, is therefore, imputed to Mr. Rolland as of July 2002, when commercial production started, based on the approved multi-cavity technology.

**I.  Mr. Rolland's Inequitable Behavior and Fraud Precludes Any Form of Preliminary Equitable Relief**

To obtain equity, one must do equity. Preliminary injunctive relief is within the equitable powers of the Court. Because of Mr. Rolland's inequitable behavior and fraud, he has not done equity and is not entitled to receive equity.

Mr. Rolland's inequitable deeds include, but are not necessarily limited to: (a) falsely claiming ownership in France and the U.S. of SBR's trademarks; (b) fraudulently misrepresenting to PPS that he owned all IP, when SBR owned all of the trademarks and was

14

entitled to an assignment of the patents; (c) secretly and orally attempting to secretly transfer SBR's IP to himself without the consent of PPS (a 45% owner of SBR), and, after selling the assets of SBR to PPS, failing to distribute to PPS its share of the proceeds derived from the sale of the assets of SBR; (d) fictitiously claiming he had a right to license for compensation the trademarks owned by SBR, the trade secrets and know how (if any) owned by SBR, the technology possessed by SBR and the patents which should have been assigned to SBR by Mr. Rolland, but were not; (e) falsely claiming a right to control the quality of SFAB's synthetic bows (based on his false claim of trademark ownership) but could ignore by his absence, indifference and lack of diligence the corresponding duty to in fact supervise quality; (f) after forfeiture of any claim to trademark ownership and right to control quality because the duty to exercise quality control could be reclaimed after seven years for the purpose of putting SFAB out of business; (g) knowingly misrepresenting to this Court that current synthetic bows from SFAB are of poor quality, when they are excellent, far better than in France and better than they have ever been; (h) falsely representing to this Court that Mr. Rolland has reputation injury where (1) his Declaration shows a self proclaimed excellent reputation and presents no facts upon which the conclusion of reputation injury could reasonable be based, (2) he does not have trademark rights, (3) he does not have a right to control quality and quality is high, (4) he failed to acknowledge he never attempted to control quality so, if he had the right, it was lost, (5) falsely claimed to be a partner in a non-existing partnership when he had regularly recognized the separateness of the Defendants and was not a partner but a pretended licensor of IP and a W4 employee, (6) falsely claims compensation for IP he doesn't own or shouldn't own, (7) publically disparaged SFAB and its bows in revocation of his duty of good faith and fair dealing, (8) misled

15

the USTO into believing it was Mr. Rolland who, in a personal capacity, used and owned "B. ROLLAND" and "BENOIT ROLLAND" on synthetic bows in France and in the U.S., when it was SBR which did so, and (9) he openly co-designed and approved the multi-cavity technology now used by SFAB in 2000/2001, but undertakes now to convince the Court that he has just learned of the multi-cavity technology.

**J.  Mr. Rolland Satisfies None of the Four Elements Required for a Preliminary Injunction**

In all federal circuit courts, the movant for a preliminary injunction bears the burden to show:  (1) the movant is likely to prevail at trial; (2) the movant is suffering actionable irreparable harm; (3) balance of the interests of the parties favors the movant; and (4) public policy favors the movant.

For the reasons stated above, the movant, Mr. Rolland, is not likely to prevail at trial and has not and is not sustaining any actionable irreparable harm because he does not own the trademarks, never had a right to control quality or, if he did, he forfeited the right by failure to exercise it, he consented to (licensed) all IP uses exercised by SFAB, which is immunity from infringement, the quality of the SFAB synthetic bows is exceptional and better than the quality in France, which is the bench mark, and Mr. Rolland admits, in his self-serving Declaration. that his reputation remains excellent.

In balancing the interest of the parties, the scale weighs heavily in favor of the Defendants. SFAB has in good faith been funded in excess of one-half million dollars and has operated for about six and one-half years, has a growing business expected to be profitable in the near term and has been and is being victimized by Mr. Rolland's lies and manipulations.

Public policy can not be said to ever endorse or favor the destruction of a company

16

(SFAB) existing for six and one-half years using technology and IP purchased from SBR but claimed to be owned and licensed by Mr. Rolland and subject to further compensation and where Mr. Rolland now attempts in bad faith to repudiate his earlier approval of SFAB's multi-cavity technology, which Mr. Rolland co-designed, falsely misrepresenting to the Court that he only recently learned of the multi-cavity technology.

## IV. BOND

If any form of preliminary relief sought by Mr. Rolland in his proposed order is granted by the Court, it should be accompanied by a $2 million bond from Mr. Rolland to later make SFAB whole.

## V.  CONCLUSION

For the reasons presented above, no preliminary relief in favor of Mr. Rolland and against

SFAB should be granted.

DATED this 17th day of September, 2004.

                                        Respectfully Submitted,
                                        PETER PRIER & SONS VIOLINS,
                                        INC., et al.
                                        By their attorneys,


                                        ___/s/ John L. DuPré_____
                                        John L. DuPré (BBO #549659)
                                        Mary K. Murray (BBO #654194)
                                        Hamilton, Brook, Smith & Reynolds, P.C.
                                        530 Virginia Road
                                        P.O. Box 9133
                                        Concord, MA 01742-9133
                                        Telephone: (978) 341-0036
                                        Attorneys for Defendants


Of Counsel:

Lynn G. Foster
Law Offices of Lynn G. Foster, L.C.
602 East 300 South
Salt Lake City, Utah 84102
Tel. (801) 364-5633
Fax (801) 355-8938

18

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on September 17, 2004.

_____/s/ Mary K. Murray_____
Mary K. Murray

@PFDesktop\::ODMA/MHODMA/HBSR05;iManage;499964;1