UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOÎT ROLLAND<br><br>    Plaintiff,<br><br>vs.<br><br>PETER PRIER & SONS VIOLINS, INC., SPICCATO FRENCH AMERICAN BOWS, INC., PETER PAUL PRIER, PAUL STEWART PRIER, and JON HATCH.,<br><br>    Defendants. | Civil Action Number: 04CV11491 RWZ<br><br>**REPLY OF DEFENDANTS PETER PRIER & SONS VIOLINS, INC. , SPICCATO FRENCH AMERICAN BOWS, INC., PETER PAUL PRIER, PAUL STEWART PRIER AND JON HATCH TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS** |

Defendants, Peter Prier & Sons Violins, Inc., Spiccato French American Bows, Inc., Peter Paul Prier, Paul Steward Prier and Jon Hatch submit this Reply to Plaintiff's Opposition to Defendants' Motions to Dismiss. Filed in Support of this reply is a copy of the Complaint filed in the United States District Court for the District of Utah. The Complaint asserts causes of action by Plaintiffs Peter Prier & Sons Violins. Inc. and Spiccato French American Bows, Inc. against Defendant Benoit Rolland. The Complaint was served upon Benoit Rolland on September 25, 2004.

Defendants submit this Reply to advise the Court of the filing in Utah and to reply to the assertions in Plaintiff's Opposition that the Court should deny the Motions to Dismiss and allow Mr. Rolland to maintain this action here. As is clear from the attached Utah filing, where there is clear jurisdiction over Mr. Rolland, all of the disputes between the parties will not be resolved in the instant action if it is allowed to proceed in Massachusetts. If the Court finds a basis for jurisdiction over one or more of the Defendants and does not elect to transfer the case to Utah,

where there is clear jurisdiction over the Defendants in this case, actions will be proceeding between the parties in both jurisdictions. Alternatively, the Court could dismiss this action or transfer it to Utah where all of the disputes between the parties can be resolved by one Court.

Based on these filings, Defendants request that the Court grant Defendants' Motions to Dismiss this case or to Transfer it to the United States District Court for the District of Utah.

DATED this 28th day of September, 2004.

Respectfully Submitted,
PETER PRIER & SONS VIOLINS,
INC., et al.
By their attorneys,


_/s/ John L. DuPré_____
John L. DuPré (BBO #549659)
Mary K. Murray (BBO #654194)
Hamilton, Brook, Smith & Reynolds, P.C.
530 Virginia Road
P.O. Box 9133
Concord, MA 01742-9133
Telephone: (978) 341-0036
Attorneys for Defendants

Of Counsel:

Lynn G. Foster
Law Offices of Lynn G. Foster, L.C.
602 East 300 South
Salt Lake City, Utah 84102
Tel. (801) 364-5633
Fax (801) 355-8938


CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on September 28, 2004.


_____/s/ Mary K. Murray_____
Mary K. Murray

AO 440 (Rev. 10/93) Summons in a Civil Action

# United States District Court

──────────── DISTRICT OF ────────────

Peter Prier & Sons Violins, Inc.
and Spiccato French American
Bows, Inc     v.

Benoit Rolland

**SUMMONS IN A CIVIL CASE**

Judge J. Thomas Greene
DECK TYPE: Civil
DATE STAMP: 09/22/2004 @ 15:21:05
CASE NUMBER: 2:04CV00895   JTG

TO : (Name and address of defendant)

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Lynn G. Foster
602 East 300 South
Salt Lake City, Utah 84102

an answer to the complaint which is herewith served upon you, within __twenty (20)__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MARKUS B. ZIMMER                                    9.22.04

─────────────────────────          ─────────────────────────
CLERK                                               DATE

(BY) DEPUTY CLERK

EXHIBIT
A

Lynn G. Foster (1105)
LYNN G. FOSTER, L.C.
602 East 300 South
Salt Lake City, UT 84102
Telephone: (801) 364-5633
Facsimile: (801) 355-8938

FILED
CLERK, U.S. DISTRICT COURT

2004 SEP 22  P 3: 22

BY:_____
DEPUTY CLERK

---

### IN THE U.S. DISTRICT COURT FOR UTAH, CENTRAL DIVISION

| | |
|---|---|
| PETER PRIER & SONS VIOLINS, INC. and SPICCATO FRENCH AMERICAN BOWS, INC.<br><br>    Plaintiffs,<br><br>vs.<br><br>BENOIT ROLLAND<br><br>    Defendant. | **VERIFIED COMPLAINT AND JURY DEMAND**<br><br><br><br>Judge J. Thomas Greene<br>DECK TYPE: Civil<br>DATE STAMP: 09/22/2004 @ 15:21:05<br>CASE NUMBER:  2:04CV00895  JTG |

Plaintiffs Peter Prier & Sons Violins, Inc. (PPS), formerly Peter Paul Prier, Inc. (PPPI), and

Spiccato French American Bows, Inc. (SFAB) for causes of action against the defendant Benoit Rolland

(Rolland)  allege:

### THE PARTIES

1.    PPS is a Utah corporation in good standing with its primary place of business in Salt

Lake County.

2.    SFAB is a Utah corporation in good standing with its primary place of business in

Salt Lake County.

3.    Rolland is a citizen of France, a former resident of Salt Lake County and presently

a resident of Massachusetts.

4.     From at least 1992 until about September 1997, Rolland operated a French company known as SARL Benoit Rolland a.k.a. La Societe Benoit Rolland (SBR), which produced both wooden and synthetic bows for string instruments.

5.     PPPI was formed as a Utah corporation on July 21, 1977 and has at all times remained a Utah corporation. The name of PPPI was changed on October 18, 1999 to PPS. The name was changed to reflect the fact that Peter's sons joined him in this business. At all times relevant, Peter Paul Prier (Peter) has been the President of PPPI/PPS and has operated this business on a day-to-day full time basis. PPPI/PPS has always operated in Salt Lake City, Utah.

6.     PPPI/PPS is in all ways operated independently. SFAB operates in all ways independently of PPS. Since incorporation of SFAB in December 1997, at that time, PPPI/PPS entirely discontinued and SFAB exclusively began making and selling synthetic bows.

7.     Peter was trained in Germany, while in his youth, in the art of violin making. Since immigrating to the United States of America, his primary vocation has always been that of a violin maker. Peter also has expertise in playing the violin, in regularly appraising wooden string instruments and wooden bows and in restoration of string instruments.

8.     Paul is an expert in bow making, both wooden and synthetic.

9.     Jon is not an officer of PPS and has never participated in the business activities of PPS. Jon is an expert in making synthetic bows, but is not trained or skilled in making wooden bows.

10.     PPPI/PPS was created and operated for the primary purpose of making violins and

teaching others to make violins. The name "Violin Making School of America" has been used in Salt Lake City, under the auspice of PPPI/PPS, to identify a school for teaching the art of making violins.

11.    PPPI/PPS has, since 1997, operated in Salt Lake City a second school to teach the art of making wooden bows.

## JURISDICTION AND VENUE

12.    Federal Jurisdiction is based on complete diversity and an amount in controversy which exceeds $75,000.00.

13.    Federal jurisdiction is also invoked because certain federal questions in the field of federal intellectual property are raised. 15 U.S.C. § 1121. 28 U.S.C. § 1338.

14.    Venue is proper in Utah under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

15.    Peter became aware of Rolland and his French company, SARL Benoit Rolland aka La Societe Benoit Rolland (SBR), in about 1992.

16.    Rolland had devised a bow, called the SPICCATO, for playing musical instruments, made by SBR from synthetic resinous material, which was less expensive than traditional wooden bows.

17.    At least as early as 1993, PPPI purchased, at wholesale, a number of SPICCATO bows from SBR and resold them at retail.

18.    Later, Rolland solicited an investment from PPPI in SBR in the amount of $40,000.00. PPPI made the securities investment and became a shareholder (part owner) in SBR of an undivided thirteen percent (13%). On information and belief, Rolland misappropriated the $40,000.00 to himself. Rolland has never accounted for the $40,000.00.

19.    Later, still, when other investors or prospective investors withdrew from SBR, PPPI's ownership interest in SBR rose to about 45%.

20.    In soliciting the $40,000.00 investment, Rolland failed to comply with and violated the Utah Uniform Securities Act, Utah Code Annotated (U.C.A.) 61-1-1 et. seq. Rolland committed common law fraud, securities fraud under U.C.A. 61-1-1, and breached his fiduciary duties owed to PPPI. These violations were only recently discovered.

21.    Trademark rights are acquired by the user through use on the goods. A shareholder does not own the trademarks of the company. The users were first SBR in France and later PPS/SFAB in the U.S.

22.    The trademark SPICCATO was owned through use in France by SBR, not Rolland, and was registered in France by SBR. SBR, not Rolland, also owned,  through use, in France the marks ARPÉGE, B. ROLLAND, BENOIT ROLLAND and Mr. Rolland's image for synthetic bows.

23.    PPPI as a part owner (shareholder) in SBR never consented to any transfer from SBR to Rolland personal of the marks "SPICCATO", "ARPÉGE," "B. Rolland." "Benoit Rolland" and Rolland's image in respect to synthetic bows. So, SBR was the owner through use and Rolland never became the owner through transfer of any of these four marks through any approved and lawful transfer to him.

24.    Rolland misrepresented to PPS and SFAB that he owned "all the intellectual

property (IP)," e.g. SPICCATO, ARPÉGE, B. ROLLAND, BENOIT ROLLAND and Mr. Rolland's image for synthetic bows (herein "the trademarks"), falsely claiming to be the owner of the French registration of SPICCATO. With a lack of IP expertise, PPS and SFAB accepted and relied upon Rolland's misrepresentation of IP ownership. So when Rolland said he needed to be compensated for use of trademarks, technology and patents, because he owned all these rights, PPPI/PPS and SFAB believed and reasonably accepted his claim of IP ownership.

25.    Because Rolland and SBR continued to have major financial problems, Rolland decided to close SBR in France and discontinued activity in SBR. Rolland failed to account to PPPI/PPS for the pre-closing and closing activities of SBR and failed to account for and distribute to PPPI/PPS its share of any residual assets. On information and behalf, Rolland wrongfully and secretly diverted the residual assets to himself only.

26.    For a large amount of money, PPPI/PPS and SFAB obtained the clients, the technology, the trademarks and the patent rights of SBR for synthetic (carbon fiber) bows, for use in Salt Lake City, about or shortly before the time SBR discontinued business and Rolland moved to Salt Lake City. Obviously, the rights to make and sell synthetic bows to these purchased clients and other clients were part of the transaction because the customers alone, with no right to sell, would have no value. It was the right to manufacture and sell under the patents and trademarks which had value, justifying the large payment. Only recently was it realized the asset purchase included the above-identified trademarks of SBR. Rolland never accounted for the use of the $40,000.00 paid by PPPI/PPS to become a shareholder in SBR, nor for the about $54,000.00 paid to SBR for the clients, technology, trademarks and patent rights.

27.    $3,000.00 was paid to Rolland personally for technical support at about the same time. Thus, SFAB obtained technical support from Rolland and a transfer of the synthetic bow technology, trademarks, patents and the right to use the technology, including all know how in the manufacture and sale of synthetic bows from SBR. Transfer of tooling, parts, equipment, technology and know how from SBR to PPPI/PPS and SFAB also occurred. SBR had no trade secrets, nor did Rolland.

28.    SBR's ownership of the mark SPICCATO was never transferred by a specific separate written conveyance. Certainly, as a forty-five percent (45%) owner of SBR, PPPI/PPS was never consulted and never consented to any such formal transfer. Rolland did not, thereafter, in a personal capacity appropriate and use the mark SPICCATO.

29.    On or about September 27, 2000, Rolland relinquished to SFAB in Salt Lake City, any claim he may have had to the mark SPICCATO and quit claimed to SFAB the right to register the mark SPICCATO, as owner.

30.    Accordingly, SFAB filed a U.S. Trademark Application on SPICCATO for registration of SPICCATO, which was approved by the U.S. Trademark Office, but inexplicably challenged in an opposition proceeding by non-user Rolland, not by SBR.

31.    Before and when Rolland relocated from France to Salt Lake City, Utah, he made available to SFAB whatever IP he may have owned, claiming he owned all IP. Rolland was separately employed on a W4 basis by both PPS and SFAB in Salt Lake City.

32.    Based upon the representations of Rolland and the making available to first PPPI/PBS and later to SFAB of IP, which Rolland claimed to own, something on the order of one half million dollars has been expended in the formation and operation of SFAB, with the cooperation, promised active long term

assistance of and non-owner participation by Rolland for the sole purpose of making synthetic musical bows. Such a large investment would not have been made in the absence of the clear availability of Rolland's claimed IP. Rolland declined an invitation to be a part owner (shareholder) of SFAB.

33.    Peter has never been involved in the manufacture, marketing, advertising or quality control of synthetic bows by SFAB.

34.    Paul and Jon reside and work in Salt Lake City full time for SFAB, without assistance from Peter Prier. Since SFAB was formed, Paul has been inactive in PPS.

35.    Jon is not an officer of PPS and has never participated in the business activities of PPS.

36.    All synthetic bow manufacturing and sales since about December 1997, in Salt Lake City have taken place exclusively under the auspices of SFAB. Rolland authorized manufacture of SPICCATO bows in Salt Lake beginning about mid-year 1997.

37.    There has never been a question that Rolland made IP available, he claimed to own, first to PPPI/PPS and then to SFAB. However, the nature and amount of compensation to be paid to Rolland has been orally negotiated and re-negotiated repeatedly by Rolland. Given the recently discovered false claim of IP ownership by Rolland and his breaches of contract and fiduciary duties and security fraud, nothing is owned by Rolland.

38.    Rolland only holds improperly retained legal title to the U.S. and foreign patents on

the adjustment mechanism at the proximal end of the SPICCATO bow. The SPICCATO and ARPÉGE bows per se are neither patented nor patentable. Actual patent ownership, however, was vested or should have been vested in SBR, not Rolland.

39.    As to use of "B. Rolland" and "Benoit Rolland" on synthetic bow and literature and advertising for the synthetic bows, it was always the desire of all parties involved to provide high quality bows and sell the maximum number possible. While it had been expected otherwise, no one in both the manufacture and marketing of SPICCATO bows has made a profit from about 1991 to the present time. It has been far more difficult to obtain commercial success than expected.

40.    There came a time when Rolland decided his name should be on all SPICCATO bows and on advertising concerning SPICCATO bows.

41.    From 1997 until 2004, there never was a notice challenging the right of PPPI/PPS/SFAB to use the marks "SPICCATO", "ARPÉGE", "B. Rolland", "Benoit Rolland" and Rolland's image because such was believed to enhance sales, helping SFAB to become profitable and inuring to Rolland's expected royalties, based upon his false claim of IP ownership.

42.    The initial and continuing U.S. usage of the marks SPICCATO, ARPÉGE, B. Rolland, Benoit Rolland and Rolland's image on the synthetic bows and on related literature and advertising, was at Rolland's insistence.

43.    Rolland so insisted that both his name and the marks SPICCATO be on each SPICCATO synthetic bow that he sent to PPS/SFAB a template by which these names are and have been engraved onto each SPICCATO bow, until recently.

44. At one time, Rolland negotiated for, but did not receive return of an exclusive right to use his name.

45. Effective on the date SFAB was formed (December 4, 1997), PPS assigned to SFAB all of its rights concerning synthetic bows, Rolland, SPICCATO and ARPÉGE. The synthetic bows made by SFAB are of excellent quality, which quality has never been higher.

46. Rolland was invited to be a part owner of SFAB, but declined at least in part because he did not want his wife, from whom he was being divorced, to lay claim to some part of SFAB.

✗ 47. Rolland promised he would sign an IP contract, but never did, constantly endeavoring to renegotiate terms which earlier were orally said to be acceptable. When the Salt Lake shop was completed and large sums of money had been expended in conjunction therewith, there was little choice but to begin manufacturing and selling synthetic bows, even though Rolland continued to re-negotiate and would never sign a written contract based upon oral understandings. Manufacturing and marketing of synthetic bows in Salt Lake City started in September 1997 under auspices of PPPI/PPS, while Rolland unexpectedly remained in France. Rolland stated earlier he would close SBR in France in December 1997, which he did not.

48. Rolland, because he and SBR were doing poorly, closed SBR in France in late summer or early fall 1999.

49. Because Rolland was absent from Salt Lake City 68 of the 84 months since manufacturing began in Salt Lake City he could not have been in control of quality. SFAB manufactured and sold synthetic bows in Salt Lake from December 1997, until October 1999, from June 2000 until October 2000, and since May 2001, without Rolland. The methodology of SBR was used by SFAB until

9

July 2002, and had substantially the same quality assurance as SBR, although Rolland admitted SFAB's bow quality was better. Rolland never controlled SFAB's quality at any time and never complained about the level of quality until spring 2004.

50.    In early October 1999, Rolland began his W4 employment with: a) minimal involvement in SFAB in the manufacture of synthetic bows; and b) substantial involvement with PPS in teaching at the wooden bow making school. Rolland's teaching commitment was oral, but was for five years.

✗  51.    In about May 2001, after less than two years, Rolland breached his wooden bow school teaching contract, terminating employment with both PPS and SFAB. Rolland moved to Boston.

52.    While in Salt Lake City, Rolland was not an owner of anything, other than perhaps some IP he claimed to own (as opposed to SBR) and made available to SFAB. Rolland was never a shareholder of SFAB or PPPI/PPS, nor did he obtain ownership of anything from Peter, Jon and/or Paul.

53.    Rolland helped create SFAB's current multi-cavity mold technology and fully approved it in 2000/2001. Rolland does not personally make synthetic bows and never has. There is no competition, no unfair competition and no likelihood of public confusion of synthetic bows from two sources as being from one source.

54.    To the extent there is goodwill in the United States as to the marks "SPICCATO", "ARPÉGE," "B. Rolland," "Benoit Rolland" and Rolland's image in respect to synthetic bows, such

goodwill belongs to SFAB, not Rolland. Rolland has never, in a personal capacity, used any of these marks on synthetic bows.

55.    Rolland never personally possessed good will because good will is inseparably from the trademarks. Rolland never had a right to control the advertising of SFAB.

56.    Use of Mr. Rolland's name, resumé and image on the prierviolins.com and spiccato.com websites was mandated by Rolland, but PPS and SFAB has recently voluntarily discontinued the same. Rolland fully cooperated and supplied information to be listed on these websites.

57.    Rolland perpetrated a fraud on the U.S. Trademark Office (USTO), claiming he personally used and owned BENOIT ROLLAND and B. ROLLAND on bows in France and the U.S., when it was SBR and PPS/SFAB, respectively.

58.    Rolland has no quality control rights because the right of quality control  is vested solely in the trademark owner (SBR in France and PPS/SFAB in the U.S.).

59.    SFAB's quality need only equal the quality of SBR's synthetic bows, and SFAB's quality substantially exceeds that of SBR.

60.    Even if it were determined that Rolland had some right to control SFAB's quality, it was not exclusive.

61.    Any right of Rolland to control SFAB's quality was forfeited and waived because control was never meaningfully exercised by Rolland. Rolland was in Salt Lake only 16-17 months of 84 months of Salt Lake manufacture. During these 16-17 months he taught at the PPS bow making school and

did little in SFAB. He conceded the synthetic bows from SFAB were of higher quality than SBR's. Rolland never complained of lack of quality while in Salt Lake.

62.     Rolland has used unlawful means and unlawful methods to falsely publically disparage SPICCATO and ARPÉGE bows from SFAB and to fraudulently register B. ROLLAND and BENOIT ROLLAND and to oppose SFAB's registration of SPICCATO, thereby wrongfully interfering with the existing and prospective economic relations of SFAB and breaching Rolland's duty of good faith and faith dealing.

63.     Rolland engaged in civil theft in misappropriating to himself the patents and trademarks mentioned above initially owned by SBR and later by SFAB, on information and belief, and in misappropriating to himself almost $100,000.00 paid by PPPI/PPS/SFAB to SBR, in violation of Utah Code Annotated (U.C.A.) 76-6-401 et. seq.

## FIRST CAUSE OF ACTION
## CIVIL THEFT

64.     Paragraphs 1-63 are incorporated by reference.

65.     The misappropriation by Rolland of funds paid by PPPI/PPS/SFAB to SBR for company purposes, the false claim of IP ownership by Rolland, Rolland's fraudulent registration of B. ROLLAND and BENOIT ROLLAND and Rolland's opposition to SFAB's registration of SPICCATO, respectively, constitute civil theft, in violation of Utah Code Annotated (U.C.A.) 76-6-401 et. seq.

66.     The Plaintiffs are entitled to an award of treble the amount of their respective losses due to Rolland's theft , an award of attorneys fees and costs, pursuant to U.C.A. 76-7-412(2) and a full accounting from Rolland of all items of theft.

**SECOND CAUSE OF ACTION**
**CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS AND**
**TERMINATION OF FEDERAL TRADEMARK OPPOSITION**

67.    Paragraphs 1-66 above are incorporated by reference.

68.    Rolland fraudulently federally registered "B. ROLLAND" and "BENOIT

ROLLAND" as trademarks, falsely claiming SBR's company use and ownership to be his personal use,

disregarding PPPI/PPS/SFAB's purchase thereof and falsely claiming only Rolland had a right to use these

trademarks, in violation of 15 U.S.C. § 1125.

69.    Rolland fraudulently claims ownership of SPICCATO for synthetic bows in

opposing federal registration thereof by SFAB. Rolland quit claimed SPICCATO, and ignores

PPPI/PPS/SFAB's purchase thereof, in violation of 15 U.S.C. § 1125.

70.    SFAB is entitled to an order from the Court cancelling the two above-identified

registrations and compelling Rolland to withdraw his opposition to SFAB's registration of SPICCATO and

attorneys fees under the Lanham Act.

**THIRD CAUSE OF ACTION**
**FRAUD**

71.    Paragraphs 1-70 above are incorporated by reference.

72.    Rolland has engaged in securities fraud and common law fraud in the procurement

from PPPI/PPS/SFAB of a $40,000.00 investment in SBR and in the payment of about $54,000.00 to buy

all or substantially all of the assets of SBR in conjunction with the close of the business of SBR and in

Rolland's fraudulent misrepresentation of IP ownership and the false claim of right to control the quality of SFAB's synthetic bows.

73.     The Plaintiffs are entitled to their damages attributable to Rolland's fraud, their attorneys' fees and costs and punitive damages.

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT-BREACH OF FIDUCIARY DUTY-BREACH OF WARRANTY

74.     Paragraphs 1-73 above are incorporated by reference.

75.     Rolland breached his contracts with the Plaintiffs in: (a) fraudulently opposing registration of SPICCATO; (b) falsely claiming personal ownership and the personal right to register B. ROLLAND and BENOIT ROLLAND and using the federal registrations thereof to coerce cessation of use thereof by SFAB, the owner or licensee thereof for synthetic bows; (c) failing to fulfill his contractual obligations of service to SFAB and PPS's wooden bow making school in Salt Lake; (d) breach of his duty of good faith and fair dealing in falsely claiming a right to control the quality of SFAB's synthetic bows and erroneously informing SFAB's customers the bows were of low quality.

76.     Rolland was a fiduciary to PPPI/PPS/SFAB and breached his fiduciary duties in: (a) misrepresenting and misappropriating SBR's IP ownership; (b) misappropriating SBR's patents; (c) misappropriating the nearly $100,000.00 paid to SBR by the Plaintiffs; (d) misrepresenting the scope of the patents; (e) failure to warn of the inadequacies of the single cavity molding process and the toxic nature of the resin used in France; and (f) falsely bad mouthing SFAB and synthetic bows made by SFAB.

77.     Rolland warranted that he owned the IP and that SFAB could register SPICCATO

and could use B. ROLLAND, BENOIT ROLLAND and Rolland's image and that he would assist in causing the maximum number of SFAB bows to be sold. Rolland has breached these warranties.

78.    The Plaintiffs are entitled to either specific performance or rescission, damages, enhanced damages, attorneys' fees and injunctive relief against and further breaches.

## FIFTH CAUSE OF ACTION
## INTERFERENCE WITH EXISTING AND PROSPECTIVE ECONOMIC RELATIONS

79.    Paragraphs 1-78 above are incorporated by reference.

80.    Using wrongful means and wrongful methods, Rolland has tortiously interfered with SFAB's existing and prospective economic relations in that Rolland has falsely represented to customers of SFAB that he has the right to control quality and falsely stated that the quality of SFAB bows has declined to a poor state, has wrongfully disparaged the SPICCATO and ARPÉGE bows to customers of SFAB. Rolland has also wrongfully sought to prevent registration and continued use of SPICCATO by which SFAB is known to its customers and the public. Rolland has further fraudulently registered B. ROLLAND and BENOIT ROLLAND and has sought to wrongfully retract the long term right of PPS and SFAB to use the name, image and personal data of Rolland, all for the purpose of wrongfully constraining the Plaintiff's ability to make sales.

81.    The Plaintiffs are entitled to and in need of an order preliminarily and permanently enjoining Rolland from future acts and efforts of tortious interference, for damages, for enhanced damages and for attorneys fees and costs.

## SIXTH CAUSE OF ACTION
## ASSIGNMENT OF IP

82.    Paragraphs 1-81 above are incorporated by reference.

83.    Rolland falsely claims IP ownership, when SBR was the original IP owner and

PPPI/PPS/SFAB purchased all or substantially all of the assets, thereby gaining title to all of SBR's IP.

84.    SFAB is in need of an order holding SFAB to be the owner, free and clear, of the

trademarks SPICCATO, ARPÉGE, B. ROLLAND, BENOIT ROLLAND, the Rolland image for

synthetic bows, the patents and the synthetic bow technology acquired from SBR and compelling Rolland

to quit claim all of the foregoing IP to SFAB, and for damages, enhanced damages, attorneys' fees and

costs for Rolland's false claim of IP ownership.

### SEVENTH CAUSE OF ACTION
### ESTOPPEL BY LACHES AND ACQUIESCENCE

86.    Paragraphs 1-85 above are incorporated by reference.

87.    After seven years of no quality control by Rolland and unobjected use by

PPPI/PPS/SFAB of the trademarks at issue, and given Rolland's participation in and approval of the multi-

cavity technology, Rolland may not now stop or interfere with continued production of the SFAB synthetic

bows using the present multi-cavity technology and sale thereof using the trademarks, especially given the

expenditure of over $500,000.00 in creating and operating SFAB.

88.    SFAB is in need of an order enjoining Rolland from any further activities directed

toward discontinuance of production of synthetic bows using the multi-cavity technology and sale thereof,

and efforts by Rolland to eliminate or constrain sales of SFAB bows, so produced, using the trademarks

at issue, on the grounds of estoppel by laches and acquiescence.

**EIGHTH CAUSE OF ACTION**
**ROYALTIES ARE NOT DUE ROLLAND**

89.    Paragraphs 1-88 above are incorporated by reference.

90.    Rolland has behaved inequitable and unlawfully, as set forth above, falsely claiming ownership of at least some if not all of the IP. Rolland fraudulently claims royalties are due him on IP owned by SBR and transferred to the same to PPPI/PPS/SFAB when the assets of SBR were purchased by PPPI/PPS/SFAB.

91.    The Plaintiffs are in need of an order that the fraudulently claimed IP royalties are not due and owing to Rolland and never were.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray for the following relief:

1.    For a temporary restraining order, a preliminary injunction without bond and a permanent injunction against Rolland and his agents, servants and employees and all persons in active concert or participation with him, enjoining and restraining each of them during the pendency of this action and permanently thereafter from:

    a.    further acts of civil theft ;

    b.    further acts of interference with existing and prospective economic relations;

    c.    further breaches of his fiduciary, contractual and warranty duties owed to the Plaintiffs and either of them.

    d.    making disparaging remarks concerning either Plaintiff, their personnel and their products, and from assisting, inducting or abeting others in doing so;

e.   claiming SFAB or PPS owes royalties to Rolland;

f.   further claims of IP ownership;

g.   further claims of any right to control the quality of SFAB's bows;

h.   further claims of ownership of the trademarks SPICCATO, ARPÉGE, B. ROLLAND, BENOIT ROLLAND for synthetic bows ;

i.   any further effort to prevent registration of SPICCATO by SFAB;

j.   any further acts of securities fraud or common law fraud; and

k.   further assertions that SFAB may no longer use one or more of the trademarks identified above, because of estoppel by laches and acquiescence.

2.   For an order:

a.   returning to PPS its payments to SBR of about $100,000.00, misappropriated by Rolland plus interest;

b.   compelling Rolland to assign to SFAB the federal trademark registrations for B. ROLLAND and BENOIT ROLLAND pertaining to synthetic bows or, in the alternative, cancelling these registrations;

c.   compelling Rolland to cease opposition to the registration of SPICCATO by SFAB; and

d.   compelling Rolland to quit claim to SFAB the trademarks SPICCATO, ARPÉGE, B. ROLLAND, BENOIT ROLLAND and Rolland's image, for synthetic bows.

3.   For monetary awards as follows:

a.   treble the amount of the civil theft by Rolland;

    b.    damages and enhanced damages for interference with existing and prospective business relations;

    c.    damages due to breaches of contracts, fiduciary duties and warranties;

    d.    damages and enhanced damages caused by Rolland due to:

        (1)    fraudulent registrations of B. ROLLAND and BENOIT ROLLAND

        (2)    fraudulent opposition to the registration of SPICCATO by SFAB;

        (3)    securities fraud and common law fraud;

        (4)    false claim of trademark ownership; and

    e.    pre-judgement interest.

4.    For an accounting from Rolland for his theft of and failure to account to PPPI/PPS for its investment as a shareholder of SBR and at the time SBR ceased doing business and to distribute to PPPI/PPS its proper share of residual assets when SBR ceased doing business, imposition of a constructive trust by the court upon all funds and all money and assets stolen by Rolland or otherwise due PPPI/PPS and/or comprising residual property to be distributed to PPPI/PPS at the close of SBR's business.

5.    For an award of attorney's fees and costs.

6.    For such further relief as the Court sees fit to impose.

DATED this _21_ day of September, 2004.

LYNN G. FOSTER, L.C.

_____
Lynn G. Foster
Attorney for Plaintiff

## VERIFICATION

I, Paul Stewart Prier, declare that I am vice-president of the plaintiff Spiccato French

American Bows, Inc.; that I have read the foregoing Complaint and that the same is true of my knowledge,

except as to matters therein alleged on information and belief, and as to such matters I believe them to be

true; that the grounds of this knowledge and belief is my acquaintance with the business and affairs of

Spiccato French American Bows, Inc. as vice-president thereof and various documents and information

obtained upon examination of files of Spiccato French American Bows, Inc. and other documents and

events which I know or observed.

Under penalty of perjury, I declare the foregoing to be true.

_____
PAUL STEWART PRIER

9/21/04
_____
DATE

\2004\___\UTAH complaint.wpd                    20

## VERIFICATION

I, Peter Paul Prier, declare that I am president of the plaintiff Peter Prier & Sons Violins, Inc. ; that I have read the foregoing Complaint and that the same is true of my knowledge, except as to matters therein alleged on information and belief, and as to such matters I believe them to be true; that the grounds of this knowledge and belief is my acquaintance with the business and affairs of Peter Prier & Sons Violins, Inc. as president thereof and various documents and information obtained upon examination of files of Peter Prier & Sons Violins, Inc. and other documents and events which I know or observed.

Under penalty of perjury, I declare the foregoing to be true.


_____
PETER PAUL PRIER


_____
9 - 21 - 04
DATE

## JURY DEMAND

The Plaintiffs demand a jury trial on all issues so triable.

DATED this _____21_____ day of September, 2004.


LYNN G. FOSTER, L.C.



Lynn G. Foster
Attorney for Plaintiffs