UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BENOÎT ROLLAND<br><br>     Plaintiff,<br><br>vs.<br><br>PETER PAUL PRIER & SONS VIOLINS<br>INC. et. al.,<br><br>     Defendants. | Civil Action Number: 04CV11491 RWZ<br><br>**ANSWER AND COUNTERCLAIM** |

The Defendants, in Answer to the Complaint, admit, deny and allege as follows:

## DEFENSE-GENERAL DENIAL

1.     Admit that Mr. Rolland is a resident of Massachusetts and a citizen of France, but are without sufficient information to admit or deny the remaining allegations of paragraph 1 of the Complaint and, therefore, deny those allegations.

2.     Deny the allegations of paragraph 2 of the Complaint; the Defendants further alleging that the synthetic bows at issue are not a patentable invention. The subject matter of U.S. Patent 5,323,675 as well as foreign equivalents pertain only to an adjustment mechanism at the proximal end of SPICCATO bows, title to which was or should initially have been in SARL Benoit Rolland (SBR), a French Company, and later transferred to Peter Prier & Sons Violins, Inc, (PPS)/Spiccato French American Bows, Inc. (SFAB). Mr. Rolland falsely claims ownership of the French Registration of SPICCATO and falsely asserts as a non-user common law rights in the United States. The bows made in France were made by SBR and often had significant quality deficiencies, the recognition for which has been mixed. The recognition and good will in France was possessed by the trademark owner, SBR, and was later transferred to PPS/SFAB.

3.      Admit the allegations of paragraph 3 of the Complaint.

4.      Admit that Peter Paul Prier (Peter) is President, director and registered agent for PPS, but denies the remaining allegations of paragraph 4 of the Complaint.

5.      Admit the allegations of paragraph 5 of the Complaint, except the allegation of common ownership and deriving substantial revenue in Massachusetts are denied.

6.      Admits that Paul Stewart Prier (Paul) resides in Salt Lake City and is an officer and director of SFAB who, in coordination with Jon Hatch (Jon), directs the activities of SFAB. The remaining allegations of paragraph 6 of the Complaint are denied.

7.      Admits, in respect to paragraph 7 of the Complaint, that Jon is the son-in-law of Peter, resides in Salt Lake City and is an officer and co-manager of SFAB, but has no relationship with PPS. None of the Defendants, including Jon, has made or authorized false statements, misleading use of Plaintiff's name and trademarks Plaintiff falsely claims to own. All uses have been pursuant to a proclaimed license from Mr. Rolland, but involved names and trademarks never owned by the Plaintiff. There is no competition and, therefore, can be no unfair competition as the Plaintiff does not make and sell synthetic bows.

8.      Deny the allegations of paragraph 8 of the Complaint.

9.      Deny the allegations of paragraph 9 of the Complaint.

10.      Deny the allegations of paragraph 10 of the Complaint.

11.      Deny the allegations of paragraph 11 of the Complaint.

12.      Admit, as to paragraph 12 of the Complaint, only that there have been some intermittent sales, not by the Defendants, but by SFAB of synthetic bows into Massachusetts and that some retail outlets for SPICCATO bows are listed on the SFAB passive website,

www.spiccato.com, a website not of the Defendants, but of SFAB. The Defendants further allege there are no false statements, misleading use or unfair competition in the state of Massachusetts or elsewhere and the names and marks in dispute were never the property of the Plaintiff. Further, the Defendants allege that all communications concerning the Salt Lake dispute which have been sent into Massachusetts were not for the purpose of doing business per se but to settle differences between SFAB and the Plaintiff. There is no partnership.

13.     In respect to paragraph 13 of the Complaint, there are no accrued profits and no royalties due to the Plaintiff, no breach of any duty owed to the Plaintiff by any of the Defendants and while the Plaintiff technically holds title to the patents, such should have been vested in SBR and thence in  PPS/SFAB by reason of purchase of the assets of SBR, SBR being the French owner of the trademarks to which title has passed to PPS/SFAB. The Plaintiff is entitled to no recovery.

14.     While the Plaintiff makes a good wooden bow, Defendants deny that he has the self-proclaimed recognition throughout the world alleged in paragraph 14 of the Complaint. As to the awards, the Defendants are without sufficient information to admit or deny and, therefore, deny these allegations of paragraph 14 of the Complaint.

15.     Are without sufficient information to admit or deny and, therefore, deny the allegations of paragraph 15 of the Complaint.

16.     The Strad magazine article, mentioned in paragraph 16 of the Complaint, speaks for itself.

17.     Are without sufficient information to admit or deny and, therefore, deny the allegations of paragraph 17 of the Complaint.

3

18.     Are without sufficient information to admit or deny and, therefore, deny the allegations of paragraph 18 of the Complaint.

19.     Are without sufficient information to admit or deny the allegations of paragraph 19 of the Complaint and, therefore, deny the same.

20.     Are without sufficient information to admit or deny the allegations of paragraph 20 of the Complaint and, therefore, deny the same.

21.     Admit that the carbon fiber bows are made in molds and that the shape of the cavity of the mold is important, but otherwise deny the allegations of paragraph 21 of the Complaint.

22.     Admit that carbon fiber bows have economical and manufacturing advantages and that the molds need to be appropriate, but otherwise, based upon a lack of information, deny the allegations of paragraph 22 of the Complaint. It is doubtful that carbon fiber bows suffer less breakage, warpage or have the other defects as alleged. Use of "theoretically" is not understood. Because of lack of information, the remaining allegations of paragraph 22 of the Complaint are denied.

23.     Deny the allegations contained in paragraph 23 of the Complaint and further allege that large-scaled manufacturing is not of issue and "relative uniform in characteristics" is not understood. Admit that the tastes of various performers using stringed instruments and bows vary.

24.     Lack information sufficient to admit or deny the allegations of paragraph 24 of the Complaint and, therefore, deny the same and allege that it was SBR and not Mr. Rolland who began making and selling the SPICCATO bow in France in 1992 and in the United States in

1993.

25.    Admit that the proximal adjustment mechanism may be used to adjust tension in the SPICCATO bows, but are without sufficient information to admit or deny the remaining allegations of paragraph 25 of the Complaint and, therefore, deny the same.

26.    Deny the allegations of paragraph 26 of the Complaint and further allege that there are many other synthetic bows, that "revolutionary" is not understood and the synthetic bows do not comprise a patentable invention. The Defendants lack sufficient information to admit or deny the alleged recognition for the SPICCATO bow contained in paragraph 26 of the Complaint and, therefore, deny the same.

27.    Deny the allegations of paragraph 27 of the Complaint and further allege that the mark SPICCATO identifies bows made by SBR and PPS/SFAB and not Mr. Rolland. Mr. Rolland did not register the mark SPICCATO in France, SBR did. The Defendants lack information about any registration in Belgium, Netherlands and Luxemburg (Benelux) and, therefore, deny these allegations contained in paragraph 27 of the Complaint.

28.    Admit the existence of U.S. Patent 5,323,265, but deny the remaining allegations contained in paragraph 28 of the Complaint.

29.    Admit that Mr. Rolland provided training to Paul in France regarding the art of making wooden bows but, due to a lack of information, cannot confirm the alleged date contained in paragraph 29 of the Complaint.

30.    Deny the allegations of paragraph 30 of the Complaint, as the purchases were from SBR.

5

31.    Deny the allegations of paragraph 31 of the Complaint, as the investment was by PPS.

32.    Admit the existence of the '675 patent, but allege ownership should have been vested in SBR and thence PPS/SFAB.

33.    Deny the allegations of paragraph 33 of the Complaint, in that the distributorship was between PPS and SBR.

34.    Deny the allegations of paragraph 34 of the Complaint.

35.    Admit that non-binding proposals were exchanged from time to time, some including SBR, but deny the remaining allegations of paragraph 35 of the Complaint.

36.    Deny the allegations of paragraph 36 of the Complaint.

37.    Admit, in respect to paragraph 37 of the Complaint, that non-binding negotiations have continued for a protracted period of time but deny any correlation between the negotiations and the alleged instructions to Paul and Jon and further allege there never were trade secret formulas or trade secret methods. The Defendants further allege that the videotape and the molds were the property of SBR and were part of an asset purchase by PPS/SFAB.

38.    Admit that Mr. Rolland relocated to the State of Utah, but otherwise deny the allegations contained in paragraph 38 of the Complaint.

39.    Deny the allegations of paragraph 39 of the Complaint and allege that the parties at all times contemplated a signed written agreement for compensation so that any negotiations, written or oral, were in the nature of non-binding offers and counteroffers. The premise of the negotiations were based on Mr. Rolland's false allegation of trademark ownership.

40.     Deny the allegations of paragraph 40 of the Complaint, and allege that Mr. Rolland closed his studio and manufacturing company in France because of insolvency and chose, on his own, to move to Salt Lake City to teach, at not "found", the bow making school and while in Salt Lake City did not materially assist SFAB in the manufacture of SPICCATO and ARPÉGE bows.

41.     Deny the allegations of paragraph 41 of the Complaint and allege that Mr. Rolland arrived late for the inaugural year of PPS's bow making school, that he failed to provide instruction and assistance to SFAB in the manufacture of synthetic bows, although paid $3,000.00 to do so and that the know how was purchased by PPS/SFAB from SBR. Compensation from the bow making school was ample and comprised W4 wages.

42.     Admit, in respect to paragraph 42 of the Complaint, that a comprehensive written agreement per se was never signed as between Mr. Rolland and SFAB or PPS, although there is substantial written documentation of some of the terms which bind Mr. Rolland and SFAB, but a written agreement for compensation to Mr. Rolland as the purported licensee of intellectual property was not consummated.

43.     Deny the allegations of paragraph 43 of the Complaint and allege all business plans, including the fall of 1999 plan were non-binding.

44.     Admit that Mr. Rolland, as a purported trademark licensor, consented to the use by SFAB of his name and likeness and the use of the marks SPICCATO and ARPÉGE on synthetic bows and admit that Mr. Rolland taught at the bow making school from October 1999 to May 2001, exclusive of about May 2000-October 2000, but deny all other allegations of paragraph 44 of the Complaint and particularly that Mr. Rolland provided oversight in the

7

manufacture of synthetic bows in Salt Lake City by SFAB.

45.    Deny the allegations of paragraph 45 of the Complaint and allege that the artistic endorsements are not the property nor under the control of Mr. Rolland and continue to be available for use by SFAB.

46.    Deny the allegations of paragraph 46 of the Complaint and further allege that Mr. Rolland, with the exception of being a co-designer of the multi-cavity molding technology, did not function in the capacity of controlling quality nor design nor manufacturing while in Salt Lake City or at any other time in respect to manufacturing of synthetic bows in Salt Lake City.

47.    Deny the allegations of paragraph 47 of the Complaint and further allege that Mr. Rolland was a W4 employee without any right to make administrative decisions in the wooden bow making school.

48.    Deny the allegations of paragraph 48 of the Complaint, except admit that Mr. Rolland, for his own reasons, chose to move from Salt Lake City to Boston in about May 2001.

49.    Deny, in respect to paragraph 49 of the Complaint,  that Mr. Rolland is entitled to a full accounting of sales from SFAB and profits and further allege than an adequate SFAB accounting has been provided and that the parties have at various times exchanged written offers or proposals.

50.    Deny the allegations of paragraph 50 of the Complaint and allege that the domain names in question were registered with the consent of Mr. Rolland, were always inactive, that registrations took place to prevent third parties from registering the domain names and that such registrations have been relinquished, without forfeiture of title,  to reduce the size of this dispute.

51.    Deny the allegations of paragraph 51 of the Complaint, except that SFAB has sought registration of SPICCATO in the United States Trademark Office, that Mr. Rolland, after quit claiming any right he may have in SPICCATO, has wrongfully opposed registration and that Mr. Rolland falsely claims trademark ownership, the right to control quality and possession of good will.

52.    Deny the allegations of paragraph 52 of the Complaint, except that offers in writing and prospective payments have been exchanged in accordance with one such offer accompanied the offer was made in an effort to provoke a written agreement and that Mr. Rolland has received an appropriate accounting from SFAB, but Mr. Rolland is not entitled to compensation because he never owned the trademark rights and that he had a duty to assign the patent rights to SBR.

53.    Admit that Mr. Rolland left Salt Lake City and moved to Boston in about May 2001 but, because of a lack of information adequate to admit or deny, deny the remaining allegations of paragraph 53 of the Complaint.

54.    Mr. Rolland has been advised that there are no profits by SFAB, the manufacturer of synthetic bows in Salt Lake City, and accordingly there is no net profits to be shared with Mr. Rolland. Apart from this, the Defendants deny the allegations of paragraph 54 of the Complaint.

55.    The substance of paragraph 54 immediately above is incorporated herein by reference.

56.    The writing of November 2, 2001 was predicated upon the false premise that Mr. Rolland was the bona fide owner of intellectual property licensed to SFAB. The Defendants collectively have no responsibility to account to Mr. Rolland and his fraudulent

misrepresentation of intellectual property ownership render void or voidable any prior indication of a royalty obligation.

57.    The submissions to the U.S. Trademark office speak for themselves. The sales of synthetic bows have resulted in less cash flow than expenses and such an accounting has been provided to Mr. Rolland. All other allegations of paragraph 57 of the Complaint are denied.

58.    Deny the allegations of paragraph 58 of the Complaint and allege that Mr. Rolland has never been the trademark owner and, even if he had been, he has quit claimed both ownership and the right to register SPICCATO to SFAB. Under the circumstances, ample accounting has been provided to Mr. Rolland.

59.    The substance of paragraph 58, immediately above, is incorporated herein by reference in answer to paragraph 59 of the Complaint.

60.    Deny the allegations of paragraph 60 of the Complaint, except to allege that no royalties are due to Mr. Rolland because of his false claim of trademark ownership and, further, SFAB has not made a profit and, therefore, a share of the profit is not due Mr. Rolland even if he were the trademark owner.

61.    The substance of paragraph 60, above, is incorporated herein by reference, in answer to paragraph 61 of the Complaint, the Defendants further alleging that Mr. Rolland fraudulently obtained registration of BENOIT ROLLAND and B. ROLLAND in the United States Trademark Office and, as Mr. Rolland was never the owner of these marks for synthetic bows, he did not obtain exclusive rights through the registrations obtained by fraud.

62.    In answer to paragraph 62 of the Complaint, incorporated herein by reference are the allegation set forth in paragraph 61, above, the Defendants further denying that SFAB was

given an opportunity to oppose the registrations as the alleged written notice was after the expiration of the time available for opposition, the Defendants further alleging that no effort was made to block Mr. Rolland from use of his own name on the internet. He has used and uses "rollandbows.com".

63.    The Defendants incorporate by reference the allegations of paragraph 61 and 62, above, in response to paragraph 63 of the Complaint, and allege that U.S. Trademark Registrations 2,837,856 and 2,839,954 are invalid.

64.    The Defendants acknowledge the cited provision of the Lanham Act but, in response to paragraph 64 of the Complaint, allege that no right of ownership is obtained by a fraudulent registration.

65.    Admit that Mr. Rolland left Salt Lake City in about May 2001, but otherwise deny the allegations of paragraph 65 of the Complaint.

66.    Lack sufficient information to admit or deny and, therefore, deny the allegations of paragraph 66 of the Complaint.

67.    Are without sufficient information to admit or deny and, therefore, deny the allegations of paragraph 67 of the Complaint and further allege that comparison to the so-called "Maestro" SPICCATO bow is inappropriate.

68.    Are without sufficient information to admit or deny and, therefore, deny the allegations of paragraph 68 of the Complaint.

69.    Are without sufficient information to admit or deny the allegations of paragraph 69 of the Complaint and, therefore, deny the same.

11

70.     Are without sufficient information to admit or deny allegations contained in paragraph 70 of the Complaint and, therefore, deny the same and further allege that the SBR molds sometimes produced defective bows, that Mr. Rolland was a co-designer and approved of the multi-cavity molding technology currently being used by SFAB and that the same is not flaw ridden, but produces better quality bows of synthetic material than in the past and that there is no irreparable harm to Mr. Rolland nor does he own the mark SPICCATO or any good will associated therewith.

71.     Admit that the ARPÉGE bow is not adjustable, but deny the remaining allegations of paragraph 71 of the Complaint.

72.     Deny the allegations of paragraph 72 of the Complaint.

73.     Deny the allegations of paragraph 73 of the Complaint.

74.     Deny that the allegations of paragraph 74 of the Complaint, the marks in question being first owned by SBR and thereafter by PPS/SFAB with Mr. Rolland granting a purported intellectual property license to PPS/SFAB on trademarks he did not own, but until recently the Defendants believed he did. Mr. Rolland insisted that the marks used by SFAB include his likeness, his name, SPICCATO and ARPÉGE.

75.     Deny the allegations of paragraph 75 of the Complaint and further allege that the use of "PARIS" on bows made by SFAB was mandated by Mr. Rolland.

76.     Deny the allegations of paragraph 76 of the Complaint and further allege that all now discontinued but previously used references to Mr. Rolland were with his knowledge and consent.

77.     Deny the allegations of paragraph 77 of the Complaint.

12

78.    Deny the allegations of paragraph 78 of the Complaint.

79.    Deny the allegations of paragraph 79 of the Complaint.

80.    Deny the allegations of paragraph 80 of the Complaint.

81.    Deny the allegations of paragraph 81 of the Complaint.

82.    Deny the allegations of paragraph 82 of the Complaint.

83.    Deny the allegations of paragraph 83 of the Complaint, except that SFAB is not yet profitable but, ignoring the costs of litigation, is becoming profitable.

84.    Deny the allegations of paragraph 84 of the Complaint.

85.    Deny the allegations of paragraph 85 of the Complaint.

86.    Deny the allegations of paragraph 86 of the Complaint.

87.    Admit that an active controversy exists but otherwise deny the allegations of paragraph 87 of the Complaint.

88.    Deny the allegations of paragraph 88 of the Complaint and allege that Mr. Rolland purportedly licensed his likeness and his name to SFAB for its use, but, to the contrary, in the acquisition of the assets of SBR, PPS/SFAB acquired ownership of these marks.

89.    Deny the allegations of paragraph 89 of the Complaint and allege ownership of the trademarks and a purported license from Mr. Rolland which has not been terminated.

90.    Deny, in respect to paragraph 90 of the Complaint, that Mr. Rolland is entitled to any form of injunctive relief, that SFAB enjoys a proclaimed license from Mr. Rolland on the trademarks at issue, or that Mr. Rolland owns or controls endorsements.  The Defendants further allege discontinuance of any reference to Mr. Rolland during the pendency of the litigation without forfeiture of ownership.

13

91.     Deny the allegations of paragraph 91 of the Complaint.

92.     Deny the allegations of paragraph 92 of the Complaint.

93.     Deny the allegations of paragraph 93 of the Complaint.

94.     Deny the allegations of paragraph 94 of the Complaint.

95.     Deny the allegations of paragraph 95 of the Complaint.

96.     Deny the allegations of paragraph 96 of the Complaint.

97.     Deny the allegations of paragraph 97 of the Complaint and further allege that the registration of the domain names in question was done with the knowledge and consent of Mr. Rolland, and that these domain names remained inactive and have now been relinquished to reduce the size of the above-identified litigation.

98.     Deny the allegations of paragraph 98 of the Complaint.

99.     Deny the allegations of paragraph 99 of the Complaint.

100.    Deny the allegations of paragraph 100 of the Complaint.

## <u>DEFENSE-FAILURE TO STATE A CLAIM</u>

101.    The Complaint of Mr. Rolland fails to state a claim upon which relief may be granted.

## <u>AFFIRMATIVE DEFENSES</u>

102.    Based upon the allegations of the Complaint and the contents of the Answer set forth above, the Defendants or at least one of them assert the following affirmative defenses:

A.      Corporate Immunity as to the individual Defendants.

B.      No alter ego by Defendants.

C.      No partnership general, at will or otherwise.

14

D.  Lack of trademark ownership by Mr. Rolland.

E.  Lack of good will by Mr. Rolland.

F.  Customers are owned by SFAB, not Mr. Rolland.

G.  No reputation injury to Plaintiff correlated to the trademarks at issue.

H.  No ownership or control of endorsements by Plaintiff.

I.  No present right, if ever there was one, possessed by Mr. Rolland to control the quality of synthetic bows produced by SFAB.

J.  Breach of covenant of good faith and fair dealing by Plaintiff.

K.  Illegality embodied in the activities and assertions of Mr. Rolland.

L.  Mutual mistake.

M.  Failure of consideration.

N.  Accord and satisfaction as to the new multi-cavity molding technology.

O.  Ratification as to the new technology.

P.  Novation as to the new technology.

Q.  Failure on the part of Mr. Rolland to mitigate damages.

R.  Election of remedies by Mr. Rolland.

S.  Justification.

T.  Negligence on the part of Mr. Rolland.

U.  Waiver on the part of Mr. Rolland.

V.  Assumption of risk by Mr. Rolland as a co-designer who approved the new technology.

W.  Illegal contract.

X.    Collateral estoppel as to SFAB's ownership of the mark SPICCATO for synthetic bows.

## COUNTERCLAIM

The Defendants, for counterclaims against the Plaintiff, Benoit Rolland, allege as follows:

## BACKGROUND

1.    Peter Paul Prier (Peter) was born in Germany, where he was trained to be a violin maker.

2.    Paul Stewart Prier (Paul) is a son of Peter and the brother-in-law of Jon Hatch (Jon).

3.    Jon is a son-in-law of Peter and the brother-in-law of Paul.

4.    After immigrating to the United States, Peter formed, in about 1979, Peter Paul Prier, Inc. (PPPI), the name of which was later changed to Peter Prier & Sons Violins, Inc. (PPS). Both PPPI and PPS are sometimes herein referred to as PPS.

5.    PPS was created and operated for the purpose of making violins and teaching others to make violins. PPS teaches others to make violins under the d/b/a "Violin Making School of America."

6.    At all times relevant, Peter had been the President of PPS and has operated PPS on a day to day basis in Salt Lake City. PPS has always operated in Salt Lake City, Utah.

7.    In September 1999, PPS began a second school, this one for teaching others to make traditional bows from wood.

16

8.    Spiccato French American Bows, Inc. (SFAB) is a Utah corporation formed in December 1997, for the purpose of making and selling synthetic musical bows, as opposed to traditional wooden bows.

9.    SFAB is a separate corporation and never was and is not now in partnership with any other business or person, including Peter, Jon, Paul, PPS and/or Mr. Rolland.

10.    From September 1997 to December 1997, with the consent of purported licensee, Mr. Rolland, PPS manufactured and sold synthetic bows in Salt Lake City, after which, to the exclusion of PPS, the synthetic bow business was transferred to and operated by SFAB.

11.    Effective December 1997, PPS assigned to SFAB all of its synthetic bow business and rights associated therewith.

12.    Peter, though an officer, has never been and is not now involved in the day-to-day operations of SFAB, but rather devotes full time to the operation of PPS.

13.    Peter has never personally or otherwise been involved in the manufacture, marketing or advertising or synthetic bows by SFAB and has never controlled the quality of synthetic bows produced by SFAB, although Peter knows the quality of these bows has never been higher going all the way back to the ones made by SBR in France.

14.    Paul and Jon reside and work in Salt Lake City full time for SFAB, without assistance from Peter. Since SFAB was formed, Paul has been inactive in PPS.

15.    Jon is not an officer, director or part owner of PPS and has never participated in the management of PPS.

16.    Mr. Rolland is a citizen of France, was a resident of Utah from about October 1999 until May 2001 and is now a resident of Massachusetts.

17

17.    Under the auspice of SBR, Mr. Rolland innovated unpatentable synthetic bows called SPICCATO and ARPÉGE. A patented adjustment mechanism is disposed at the proximal end of the SPICCATO bow.

18.    Peter became aware of Mr. Rolland and his French company, SARL Benoit Rolland, aka La Societe Benoit Rolland (SBR), in about 1992.

19.    PPS bought some of SPICCATO bows from SBR, not from Mr. Rolland.

20.    PPS sold the SBR SPICCATO bows at retail.

21.    Parts for making the SPICCATO bows in France were purchased by SBR, not Mr. Rolland.

22.    Later, PPS became a distributor for SBR  in the U.S. of SPICCATO bows.

23.    PPS, as a distributor, purchased French-made bows from SBR, not Mr. Rolland.

24.    Later, PPS invested $40,000.00 in SBR and became a shareholder (part owner) of an undivided thirteen percent (13%).

25.    PPS's ownership interest in SBR later rose to about 45%. Mr. Rolland typically calls investors and shareholders "partners."

26.    Mr. Rolland wished to close SBR. SBR's manufacturing capability was transferred to in Salt Lake City. PPS manufactured synthetic bows in Salt Lake City for a short time, from September through December 1997.

27.    A new U.S. company to purchase the assets of SBR was intended, in which Mr. Rolland earlier expected to be a part owner.

28.    Later, Mr. Rolland, to avoid a claim by his wife who was divorcing him, elected not to be a shareholder in SFAB.

18

29.     PPS, one of two shareholders of SBR, and/or SFAB purchased all or substantially all of the assets of SBR, including SBR's customers. Obviously, the rights to make and sell synthetic bows to these and other clients were part of the transaction because the listing of customers alone, with no right to sell, would have no value. It was the ownership of the good will and the right to sell which had value, justifying the $54,333.00 payment.

30.     As purchaser of the assets of SBR, PPS/SFAB also received aluminum mechanisms, brass small tubes, workroom mandrin and lathe  information, wooden dowels, brass tubes, sandpaper, polishing compound, hand vices, thread, scales, braid, aluminum channel, saw, paints, frogs, cyanolite, accelerator, molds, foil gras, tools, sources of supply, list of dealers and screws. Thus, PPS and SFAB purchased all of the synthetic bow assets of a going business (SBR), after which SBR became inactive. The assets included the technology, the customers [good will] and the exclusive right to sell, the manufacturing technology, the design and layout of the factory, the mandrel design, a lathe, dowels, brass tubes, sandpaper, polishing compound, hand vises, mechanisms, tips, thread scales, braid, aluminum channel, saw, paints, frogs, molds, tooling and other things.

31.     For technical assistance Mr. Rolland, as opposed to SBR,  was personally paid $3,000.00.

32.     Mr. Rolland purchased none of the assets of SBR.

33.     The asset purchase included the trademarks of SBR.

34.     Mr. Rolland initially decided to "stop my company [SBR] in December [1997]...you [PPS] are able to make the Spiccato bows from now (October) perfectly....I don't see any reason to keep my company [SBR] alive which is so expensive in France...prevents me to

make wooden bows....I will have to make money under the table."

35.    Mr. Rolland claimed he personally owned intellectual property in the form of trademarks, trade secrets and patents and Peter innocently believed him. Mr. Rolland licensed or sold those rights exclusively first to PPS and then to SFAB. Accordingly, PPS started manufacturing synthetic bows in Salt Lake City in about September 1997. Mr. Rolland promised to come to Salt Lake in late 1997, but did not arrive until October 1999. Based upon the representations of and assertions by Mr. Rolland something on the order of one half million dollars has been expended in the formation and operation of SFAB for the sole purpose of making and selling synthetic musical bows. There are no trade secrets in the technology provided by Mr. Rolland. The method used by Mr. Rolland was a conventional very old compression (squish), non-pressure, clamshell, non-heat form molding using a toxic resin, which does not involve trade secrets and turned out to be a poor way of efficiently producing bows of high quality and dangerous to employees. SFAB has abandoned the squish molding approach and now, with the assistance and approval of Mr. Rolland, uses a multi-cavity molding process and a different safer resin formula to produce bows of higher quality than those made by SBR.

36.    On at least two occasions Mr. Rolland acknowledged that SFAB was the owner of the mark SPICCATO. "SPICCATO was registered in France....This brand [SPICCATO] must be registered by the company French American Bows, Inc." and "the name SPICCATO was deposited in France for the SARL Benoit Rolland. The brand name [is] registered with Spiccato French American Bows, Inc. in Salt Lake City".

37.    Mr. Rolland authorized production of SPICCATO and ARPÉGE bows in Salt Lake beginning about mid-year 1997.

20

38.    Expecting Mr. Rolland to arrive, SFAB was formed in December 1997.

39.    PPS stopped its synthetic bow business of four months and transferred its synthetic bow rights to SFAB, when SFAB was organized. Mr. Babineau, an attorney for Mr. Rolland, acknowledged that SFAB was the successor in interest to PPS as to synthetic bows.

40.    Because Mr. Rolland was absent from Salt Lake City for about 68 of 84 months he could not have been a participating partner nor in control of quality. SFAB manufactured and sold synthetic bows in Salt Lake from December 1997 until October 1999, without Mr. Rolland. The methodology of SBR and  SFAB were the same during this period of time and had the same quality assurance issues. However, SFAB's bow quality was better, but from time-to-time had the same type of defects and returns.  Mr. Rolland never controlled SFAB's quality during this time and never complained about quality.

41.    If one is entitled to control quality but does not do so, that person forfeits or waives the right to control quality. Further, if one claiming the rights to control quality is not the trademark owner, that person has no right to control quality.

42.    The synthetic bow business has been done exclusively by SFAB since December 1997, with Mr. Rolland's consent, to the exclusion of PPS, Peter, Paul and Jon.

43.    Financially troubled SBR closed the Summer of Fall of 1999, if not before.

44.    Mr. Rolland relocated from France to Salt Lake City, Utah in October 1999. He was never a partner in anything, but made available to SFAB whatever intellectual property he claimed to own. Mr. Rolland was separately employed on a W4 basis by both PPS and SFAB. SFAB is and has always been a Utah corporation operating in Salt Lake City, Utah.

21

45.    While Mr. Rolland alleges an at will partnership in his Complaint, he knows that to be untrue.  For this alleged phantom partnership there is and has been: a. no organizational activities, including but not limited to written organizational documents; b. no sales; c. no employees, agents or representatives; d. no tax identification number; e. no employee, agent, consultant or representative; f. no bank accounts; g. no receivable or payable invoice; h. no payment of any type; i. no income of any type;  no literature or advertising material of any type; k. no real estate ownership or lease; l. no personal property ownership or lease; m. no vehicle ownership or lease; n. no tax returns; o. no telephone number;  p. no facsimile number; q. no email address; and  r. no domain name registration.

46.    If Mr. Rolland's theory of a general at-will partnership were to be sustained, Mr. Rolland's contribution to the partnership would have been his intellectual property, which would have terminated his earlier oral claim to royalties for use of the intellectual property by the partnership. He was neither a proclaimed licensor of intellectual property or a proclaimed partner, who contributed intellectual property to the partnership, but not both.

47.    PPS and SFAB have separate physical locations, though near each other, separate employees, separate payrolls, separate assets, separate accounting systems, separate tax returns, among other separate things.

48.    Mr. Rolland makes several false assertions, one of which is his claim of ownership of the trademarks.

49.    Mr. Rolland misrepresented to PPS and SFAB that he owns "all the intellectual property," e.g. SPICCATO, ARPÉGE, B. ROLLAND, BENOIT ROLLAND (herein "the trademarks") and Mr. Rolland's image for synthetic bows. Paragraph 2 of the Complaint falsely

claims Mr. Rolland is the owner of the French registration of SPICCATO. The registration lists SBR as owner. Independent of whether Mr. Rolland had the right to do so, he consented to all uses by PPS and SFAB of SPICCATO, ARPÉGE, Benoit Rolland, B. Rolland and Mr. Rolland's image. The first notice otherwise was the Complaint. Indeed, the initial and continuing usage by SFAB of the marks SPICCATO, ARPÉGE, B. Rolland and Benoit Rolland on the synthetic bows and related literature, was at Mr. Rolland's insistence.

50.    With a lack of intellectual property expertise, PPS and SFAB innocently accepted and relied upon Mr. Rolland's misrepresentation of trademark ownership.

51.    Trademark rights are acquired by the user through use. A shareholder does not own the trademarks of the company. The users were SBR in France and PPS/SFAB in the U.S.

52.    SBR used the trademarks in France, not Mr. Rolland personally. SPICCATO was registered in France by its user and owner, SBR. Mr. Rolland was never the trademark owner.

53.    Mr. Rolland owned 55% and PPS 45% ( for a $40,000.00 investment) of SBR when SBR stopped business.

54.    Mr. Rolland purchased none of the assets of SBR, including trademarks.

55.    PPS/SFAB  purchased all or substantially all of the assets of SBR, which transferred the trademarks to PPS/SFAB.

56.    PPS/SFAB's asset purchase from SBR is documented in writing. Mr. Rolland, as manager of SBR, did not silently or secretly obtain any asset at the close of SBR's business.

57.    Mr. Rolland only owns the U.S. and foreign patents on the adjustment mechanism at the proximal end of the SPICCATO bow, which patents should have been assigned to SBR.

23

58.     Mr. Rolland, concealing his lack of intellectual property ownership, was the proclaimed intellectual property licensor exclusively first to PPS and then SFAB.

59.     SBR was the owner/registrant of SPICCATO in France.

60.     Mr. Rolland never owned the SPICCATO mark. Mr. Rolland nevertheless quit claimed the mark SPICCATO to SFAB. Mr. Rolland relinquished to SFAB in Salt Lake City any claim he may have had to the mark SPICCATO and quit claimed to SFAB the right to register the mark SPICCATO as owner.

61.     SFAB was not a mere licensee of SPICCATO. SFAB received from Mr. Rolland right to register SPICCATO, although Mr. Rolland did not have that right. Registration can only be done by the user-owner. Mr. Rolland  authorized SFAB to register SPICCATO in the U.S. and, thereafter inexplicably opposed registration.

62.     Mr. Rolland never personally owned ARPÉGE, as it was used and owned by SBR and PPS/SFAB.

63.     Mr. Rolland, ignoring that he possesses no ownership of SPICCATO, ARPÉGE, B. Rolland, Benoit Rolland and his image in respect to synthetic bows, that he consented to the use of the same by SFAB, that he has never exercised and does not have absolute control over quality and that current quality exceeds any quality ever attained by SBR, now erroneously claims false association with inferior bows.  Mr. Rolland, as the proclaimed IP licensor, exclusively licensed all SBR's trademarks to PPS/SFAB, i.e. "the exclusive patent and trademark rights." Complaint ¶ 80.

64.     Mr. Rolland feigns a lack of quality control (where SFAB's quality is higher than ever), to gain a return of an exclusive right to use his name, among other things, i.e. "I will

recover the exclusive use of my name".

65.    "Plaintiff Rolland admits in the Complaint that he permitted [PPS/SFAB] to use his name and likeness in association with...SPICCATO and ARPÉGE bows," even though these trademarks for synthetic bows were originally owned through use by SBR and not Mr. Rolland. Complaint ¶ 44.

66.    PPS/SFAB once believed use of B. ROLLAND and BENOIT ROLLAND on synthetic bows would enhance sales. Mr. Rolland insisted that his name be on the synthetic bows and on related literature of SFAB.

67.    Mr. Rolland provided a template with "B. Rolland" and "Paris" on it and mandated its use by SFAB on synthetic bows.

68.    Use of Mr. Rolland's name, resumé and image on the prierviolins.com and spiccato.com websites was mandated by Mr. Rolland. Mr. Rolland fully cooperated and approved in supplying information to be listed on these websites and only recently asked for deletion. All such uses have been discontinued, without forfeit of title held by SFAB.

69.    Mr. Rolland perpetrated a further fraud on the U.S. Trademark Office (USTO), claiming he personally used and owned BENOIT ROLLAND and B. ROLLAND on bows in France and the U.S. when he knew use was by SBR and PPS/SFAB.

70.    Mr. Rolland has no quality control right because such is vested in the trademark owner (SBR in France and PPS/SFAB in the U.S.). Because PPS/SFAB bought the customers, it acquired the good will. Trademarks are inseparable from good will, which is inseparable from customers.

71.    Because successor SFAB's quality need only equal the quality of SBR's synthetic bows, substantial evidence of SBR's quality standard exists, i.e.:

(a)    SBR, over three years, had about 250 defective synthetic bows in its museum of rejects ($350,000 value).

(b)    the museum rejects were caused by Mr. Rolland's lack of expertise in molding and resins and SBR's lack of financial ability.

(c)    SBR had substantial synthetic bow defects, including warpage. A compound camber as with bows at Johnson's is not a defect, not warpage and is preferred by some.

(d)    recently a French SBR defective synthetic bow was referred from the player in Europe to SFAB for replacement.

(e)    defective French SBR synthetic bows was commonplace.

72.    The single cavity molding process purchased by PPS/SFAB from SBR was imprecise, not cost effective and not profitable. SBR's resin was highly toxic.

73.    With the help and approval of Mr. Rolland, multi-cavity technology was designed in 2000/2001, and the resin was changed for profitability and safety purposes.Mr. Rolland falsely claims he only recently learned of SFAB's multi-cavity technology.

74.    To the contrary, Lee Baroldy states:

In the design of the multi-cavity mold for SFAB, I sat , in late Winter or early Spring 2001, with Benoit Rolland, a man from Viewpoint, Paul Prier and Jon Hatch in front of a design computer. Mr. Rolland actively participated in designing the curvature of the mold cavities for what became SFAB's multi-cavity mold. Mr.

26

> Rolland specifically instructed us as to the cavity
> curvature needed to produce the correct camber in
> resinous bows to be  produced in the multi-cavity
> mold. Mr. Rolland knew the multi-cavity mold was
> being designed and would be fabricated for use by
> SFAB in the production of synthetic bows, in lieu of
> the single cavity mold system earlier in use. Mr.
> Rolland was cooperative, helpful as an active
> participant, a co-designer and made no objection.

75.    Being a co-designer of the multi-cavity technology and a reviewer of prototypes in

2000/2001, Mr. Rolland can not be heard to say he recently discovered the multi-cavity molding

technology or that use thereof was not approved by him.

76.    Mr. Rolland never had a legal right to control the quality of SFAB's bows because

he was never the trademark owner.

77.    Even if it were determined that Mr. Rolland had some right to control SFAB's

quality, it was not exclusive.

78.    Any right to control SFAB's quality was forfeited and waived because control was

never meaningfully exercised by Mr. Rolland. Mr. Rolland was in Salt Lake City only 16-17

months of the 84 months of Salt Lake manufacture. During these 16-17 months he taught in the

PPS wooden bow making school and did little in the business of SFAB. Mr. Rolland orally

conceded the synthetic bows from SFAB were of higher quality than SBR's. Mr. Rolland never

complained of lack of quality while in Salt Lake.

79.    Knowledgeable third parties attest to the high quality of Utah synthetic bows,

including Lee Baroldy, Wayne Burak, Nick Hoffman and Susan Horkan.

27

80.    Mr. Rolland's "high quality and right to control" position was concocted in Boston.

81.    Mr. Rolland never personally possessed good will because good will is inseparably limited to trademark ownership.

82.    Peter, an expert in string instruments, after Mr. Rolland's recent claim of poor quality, inspected and used the SFAB synthetic bows and found them excellent to play a violin.

83.    Mr. Rolland never had a right to control the advertising of SFAB nor did he ever attempt to do so.

84.    Mr. Rolland's misrepresentations of trademark ownership, a right to control SFAB's quality, false statements as to present bows and that he only recently learned of SFAB's multi-cavity mold technology when he knew in 2000/2001, means he has failed to practice equity and should be denied equitable standing.

85.    Because use of the name and image of Mr. Rolland is not commercially important and for other reasons, SFAB and PPS have elected to voluntarily discontinue all previously approved references to Benoit Rolland and his image, including relinquishment of unused domain names, removal from both websites, removal from literature and removal from SFAB's synthetic bows. SFAB does not relinquish its ownership of these marks.

86.    No false statements or misleading use by any Defendants ever occurred, None of the Defendants compete with the Plaintiff because Mr. Rolland does not make and sell synthetic bows.

87.    Each individual Defendants has always acted within the scope of his authority as an agent and representative of PPPI/PPS and/or SFAB.

28

88.    There has been no commingling of assets, liabilities or business by PPPI/PPS, SFAB, Peter, Paul and/or Jon.

89.    When the factory in Salt Lake City began production and thereafter, PPS/SFAB understood no royalties would be paid on the first $40,000 royalties due, no royalties would be due until SPICCATO production in Salt Lake City became profitable and, thereafter, if the license is found to be valid, six percent (6%) of net invoice would be paid.

### FIRST COUNTERCLAIM-BREACH OF WARRANTY

90.    Counterclaim paragraphs 1-89 are incorporated by reference.

91.    Mr. Rolland warranted his ownership of the trademarks at issue, and his right to license the same to PPS/SFAB exclusively and has breached that warranty to the injury and damage of PPS and SFAB.

93.    PPS and SFAB are entitled to an award of damages and attorneys' fees for past breaches of warranty by Mr. Rolland and for injunctive relief against any further false warranty claims of trademark ownership or the right to license the trademarks at issue in the field of synthetic bows.

### SECOND COUNTERCLAIM-BREACH OF FIDUCIARY DUTY

94.    Counterclaim paragraphs 1-93 are incorporated by reference.

95.    Mr. Rolland placed himself in a position of trust and undertook a fiduciary relationship with the Defendants.

96.    Mr. Rolland has breached his fiduciary duties owed to the Defendants and each of them in that he has falsely claimed trademark ownership, falsely claimed the right to license the trademarks at issue, falsely claimed that synthetic bows recently manufactured by SFAB are

29

defective and inferior, falsely claimed an exclusionary right to his name and image after mandating the use thereof by PPS and SFAB.

97.    The Defendants are entitled to an injunction against any further breaches of fiduciary duty by Mr. Rolland and for damages, attorneys' fees and punitive damages for Mr. Rolland's past breaches of fiduciary duty.

## THIRD COUNTERCLAIM-BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

98.    Counterclaim paragraphs 1-97 are incorporated by reference.

99.    There is implied in all agreements, both oral and written, a duty of good faith and fair dealing.

100.    Mr. Rolland has breached his duty of good faith and fair dealing in the manner set forth above.

101.    PPS and SFAB are entitled to the damages and attorneys' fees for past breaches by Mr. Rolland of his duty of good faith and fair dealing and for an injunction from the Court against any further breaches of this duty by Mr. Rolland.

## FOURTH COUNTERCLAIM-NO PARTNERSHIP

102.    Counterclaim paragraphs 1-101 are incorporated by reference.

103.    Mr. Rolland falsely claims there is some type of an informal partnership between the Plaintiff and each of the Defendants, for which he submits no evidence. As set forth above there is conclusive evidence that no partnership has ever existed between the Plaintiff and the Defendants or any of them.

104. The Defendants are entitled to an order declaring that Mr. Rolland has never been in partnership with the Defendants or any of them and for an award of damages in the nature of the Defendant's legal fees and for injunctive relief preventing Mr. Rolland from further claiming that he was in partnership with the Defendants or any of them.

## FIFTH COUNTERCLAIM-BREACH OF CONTRACT

105. Counterclaim paragraphs 1-104 are incorporated by reference.

106. Mr. Rolland purportedly licensed PPS and SFAB on an exclusive basis to utilize the trademarks at issue and has wrongfully attempted to repudiate and has breached the proclaimed license, claiming falsely, among other things, that the bow quality using the multi-cavity molding technology, which he co-designed and approved, produces bows of unacceptable quality causing Mr. Rolland reputation injury.

107. In so doing, Mr. Rolland has breached the proclaimed license granted to PPS and SFAB.

108. PPS and SFAB are entitled to their damages and attorneys' fees for past breaches of contract and for injunctive relief against any further breaches by Mr. Rolland.

## SIXTH COUNTERCLAIM-STATUTE OF LIMITATIONS

109. Counterclaim paragraphs 1-108 are incorporated by reference.

110. All activities of the Defendants and any of them which took place more than four years prior to the filing of the Complaint and which relate to Mr. Rolland's claim for relief are barred by the applicable Statute of Limitations.

111. The Defendants and each of them are entitled to an order that any claim by Mr. Rolland which pertains to conduct by the Defendants or any of them four years prior to the filing

of the Complaint are barred by the Statute of Limitations.

## SEVENTH COUNTERCLAIM-STATUTE OF FRAUDS

112.    Counterclaim paragraphs 1-111 are incorporated by reference.

113.    Mr. Rolland's claim for compensation is barred by the statute of frauds.

## EIGHT COUNTERCLAIM-CANCELLATION OF FEDERAL TRADEMARK REGISTRATIONS

114.    Counterclaim paragraphs 1-113 are incorporated by reference.

115.    PPS and SFAB are entitled to an order cancelling the Plaintiff's Federal

Registrations of B. ROLLAND and BENOIT ROLLAND, fraudulently obtained from the United

States Patent and Trademark Office by Mr. Rolland.

## NINTH COUNTERCLAIM-ACCORD AND SATISFACTION/NOVATION/RATIFICATION

116.    Counterclaim paragraphs 1-115 are incorporated by reference.

117.    Mr. Rolland's co-designing, assistance, approval and lack of objection to the

multi-cavity molding technology and bows produced using that technology over a 3-4 year period

of time constitute an accord and satisfaction, novation and/or ratification of the multi-cavity

molding technology by which Mr. Rolland is bound.

118.    SFAB is entitled to an order declaring that the proclaimed trademark license from

Mr. Rolland to SFAB has been amended and modified through the above-identified accord and

satisfaction, novation and/or ratification so as to constitute a binding and enforceable obligation

by which ongoing use of the multi-cavity molding technology and bows produced using this

technology constitute an acceptable part of the proclaimed license agreement between Mr.

Rolland and SFAB.

## TENTH COUNTERCLAIM-ESTOPPEL

119.     Counterclaim paragraphs 1-118 are incorporated by reference.

120.     Given the long passage of time, the expenditure of over one-half million dollars by SFAB to address its business need, the lack of objection from Mr. Rolland over a seven year span of time and the damage which would be done to the SFAB business and reputation, Mr. Rolland is estopped to obtain any injunctive relief and any monetary relief based upon his excessively delayed claim of poor bow quality and the Defendants are entitled to an order to this effect.

## PRAYER FOR RELIEF-COUNTERCLAIMS

WHEREFORE, the Defendants pray for judgment against the Plaintiff on the counterclaims as follows:

1.     An award of damages in favor of the Defendants and against the Plaintiff for actual damages attributable to the counterclaims and any of them as set forth above.

2.     An award in favor of the Defendants and against the Plaintiff of all of the Defendant's costs and attorneys fees attributable to the counterclaims.

3.     A declaration that SFAB is the owner of the trademarks at issue and the Plaintiff's U.S. Registration of B. ROLLAND and BENOIT ROLLAND are invalid because of fraud and that the Plaintiff is not and never was the user/owner for synthetic bows and cancelling the registration.

4.     An award to the Defendants of an injunction against the Plaintiff, and any directors, officers, agents, servants, employees, and all other persons in active concert or privity or in participation with the Plaintiff, prohibiting further claims of trademark ownership, and

prohibiting further breaches of contract, breaches of warranty, breaches of fiduciary duties and breaches of the implied covenant of good faith and fair dealing.

5.    A declaration that there is not and never was a partnership of any type between Mr. Rolland and the Defendants or any of them.

6.    A declaration that Mr. Rolland is entitled to no financial compensation for the proclaimed license because of fraud and failure to comply with the statute of frauds.

7.    A declaration that any act by any Defendant more than four years prior to the filing of the Complaint is barred by the statute of limitations.

8.    An order confirming that Mr. Rolland and SFAB reached an accord and satisfaction, a novation and/or ratification concerning the multi-cavity molding technology and bows produced using that technology.

9.    An order preventing any injunctive relief in favor of the Plaintiff due to principles of unclean hands, estoppel, long delay, detrimental reliance and prejudice.

10.    An award of damages, enhanced or punitive damages and attorneys fees and costs for the bad faith and fraud of Mr. Rolland.

11.    An award of damages in such sum as the proof at trial will show, but in no event less than the amount of attorneys fees, costs and/or expenses incurred by the Defendant caused by the wrongful initiation and/or continuation of meritless theories in the SPICCATO opposition proceeding and respecting the fraudulent registration by Mr. Rolland of B. ROLLAND and BENOIT ROLLAND, together with any and all incidental and consequential damages, including general damages as may appear just and proper under the proof.

34

12.  For such other, further, and different relief as the Court deems proper under the

circumstances.

DATED this _28th_ day of October, 2004.

Respectfully Submitted,

Lynn G. Foster
Lynn G. Foster L.C.
602 East 300 South
Salt Lake City, UT 84102
Telephone: (801) 364-5633
Attorney for Defendants

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail on October 28, 2004.

_____/s/ Mary K. Murray_____
        Mary K. Murray